## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **MATCH GROUP, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **MUZMATCH LIMITED,** | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| **MUZMATCH LIMITED,** | § | |
| | § | **Case No. 6:21-CV-00147** |
| Counter-Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **MATCH GROUP, LLC,** | § | |
| | § | |
| Counter-Defendant. | § | |

## DEFENDANT'S COUNTERCLAIMS

Defendant/Counterclaimant Muzmatch Limited ("Counterclaimant" or "Muzmatch") brings counterclaims against Plaintiff/Counterclaim Defendant Match Group, LLC ("Counterclaim Defendant" or "Match") as follows:

### JURISDICTION

1.      This court has subject-matter jurisdiction over Counterclaimant's claims under 28 U.S.C. §§ 1331 and 1338.  This action includes requests for declaratory-judgment relief under 28 U.S.C. §§ 2201 and 2202.

2.      This court also has subject-matter jurisdiction over Counterclaimant's claims under 15 U.S.C. § 1121, since this action involves questions arising under the Trademark Laws

of the United States, Lanham Act § 43(a), 15 U.S.C. §§ 1119, 1125.

3.     This Court has personal jurisdiction over Counterclaim Defendant because Counterclaim Defendant transacts business in this District and has its principal place of business located at 8750 North Central Expressway, Suite 1400, Dallas, Texas.

4.     Venue is proper under 28 U.S.C. § 1391(c) because Counterclaim Defendant is subject to personal jurisdiction in this District and Counterclaim Defendant filed its Complaint in this District.

## PARTIES

5.     Defendant/Counterclaimant Muzmatch Limited is a company existing under the laws of the United Kingdom with a principal place of business of 249 Cranbrook Road, Ilford, England, IG1 4TG.

6.     Upon information and belief, Plaintiff/Counterclaim Defendant Match Group, LLC is a Delaware limited-liability company with a principal place of business at 8750 North Central Expressway, Suite 1400, Dallas, Texas.

## BACKGROUND

7.     Based in the United Kingdom, Muzmatch is a dating company dedicated to promoting marriage in the Muslim community.

8.     Muzmatch was born out of a desire to provide an alternative to mainstream dating services to members of the Muslim community, with an emphasis on empowering Muslim individuals in the search for a marriage partner and a focus on ensuring compatibility with Islamic values.

9.     Since April 2011, Muzmatch has provided online matchmaking services for members of the Muslim community in the UK who are looking for marriage, via the website at www.muzmatch.com (the "Muzmatch Website").

10. Since at least as early as June 2011, Muzmatch has continuously provided its dating services in the United States through the Muzmatch Website and in connection with the MUZMATCH trademark.

11. Since launching in 2011, the Muzmatch Website has received over 7 million global visits.

12. In April 2015, Muzmatch launched the Muzmatch dating app (the "Muzmatch App") that allowed users to meet potential mates via a downloadable app.

13. Since launching in April 2015, the Muzmatch App has been downloaded globally over 7.75 million times.

14. The Muzmatch App has over 3.8 million users registered worldwide.

15. The Muzmatch Website and Muzmatch App have continuously and exclusively used the MUZMATCH mark in connection with matchmaking and introduction services for members of the Muslim community who are looking for marriage, in accordance with Islamic values.

16. Muzmatch users have come to recognize the MUZMATCH mark as synonymous for matchmaking services within the Muslim community.

17. Since its inception, Muzmatch has focused on creating a dating service with specific features designed to better facilitate marriage within the Muslim community.

18. Many design features of the Muzmatch Website and Muzmatch App have been curated specifically for the Muslim community and to align with some Islamic values.

19. For example, when a user sets up an account via either the Muzmatch Website or the Muzmatch App, the user is asked for detailed information regarding marital status, religion, ethnicity, and marriage plans.

20. Muzmatch enables users to filter along religious, ethnicity, sect, and prayer lines.

21. Muzmatch users can also include a chaperone in their search. The chaperone receives a weekly transcript of all conversations made by the user.

22. Muzmatch users are blocked if their profile reveals that they are looking for casual dating or where they are reported as looking for casual dating by others, and sexual conversations are prohibited.

23. All Muzmatch users must agree to a religious oath of conduct before proceeding, which is designed to promote Muzmatch's values.

24. As part of Muzmatch's App, from March 2015 to August 2016 and from January 2020 to the present, Muzmatch users swiped left to indicate "no" and swiped right to indicate "yes."

## THE PARTIES' HISTORY

25. Upon information and belief, Counterclaim Defendant is the largest global online-dating company in the world, with a portfolio of online-dating services and mobile apps, including Tinder, Match.com, OkCupid, Hinge, and Plenty of Fish.

26. Upon information and belief, Counterclaim Defendant has primarily achieved its market position through an aggressive acquisition strategy.

27. Upon information and belief, Counterclaim Defendant's aggressive acquisition strategy also includes litigation as a stronghold tactic.

28. Upon information and belief, Counterclaim Defendant has a history of suing potential dating companies after failed acquisitions.

29. Due to Muzmatch's popularity and market position within the Muslim-dating space, Counterclaim Defendant initially contacted Muzmatch in 2016 alleging trademark infringement based on the use of the MUZMATCH mark.

30. In 2017, Counterclaim Defendant approached Muzmatch attempting to acquire Muzmatch.

31. For a few years, the parties were engaged in active acquisition discussions.

32. During the entire course of acquisition discussions, Muzmatch continued to offer its matchmaking and dating services in connection with the MUZMATCH mark.

33. In July 2018, the parties entered into a nondisclosure agreement ("NDA") to facilitate the sharing of confidential information to inform the ongoing acquisition discussions. The NDA had a one-year term and has expired.

34. After execution of the NDA, Counterclaim Defendant made several offers to acquire Muzmatch. Muzmatch rejected each offer.

35. In January 2019, acquisition negotiations fell apart.

36. During this time, Counterclaim Defendant launched a series of trademark oppositions in the EU and the UK against Muzmatch, despite years of knowing about Muzmatch and its attempt to acquire the company.

37. In early 2021, Counterclaim Defendant filed this lawsuit in the US as a counterpart to the other proceedings taking place globally, ostensibly either to coerce Muzmatch into accepting Counterclaim Defendant's previous offers or to entirely push Muzmatch out of the online-dating space.

38. Upon information and belief, Counterclaim Defendant has a well-documented history of resorting to litigation after failed acquisition attempts.

39. Upon information and belief, Counterclaim Defendant famously attempted to acquire Bumble Inc. ("Bumble") and failed. After which Counterclaim Defendant sued Bumble in this very Court for highly similar trademark- and patent-infringement claims.

## COUNTERCLAIM DEFENDANT'S
## ALLEGED SWIPE-FORMATIVE TRADEMARKS

40.     Counterclaim Defendant alleges rights to the SWIPE, SWIPE RIGHT, SWIPE LEFT, and other SWIPE-formative trademarks.

41.     Counterclaim Defendant filed a Complaint against Muzmatch alleging, among other things, infringement of Counterclaim Defendant's claimed trademark SWIPE and variations thereof.  Counterclaim Defendant uses the terms "swipe," "swipe right," "swipe left," and other variations of "swipe" as trademarks in connection with the Tinder app.

42.      Upon information and belief, on June 5, 2013, Counterclaim Defendant's predecessor in interest Chirpme, Inc. ("Chirpme") filed Application Serial No. 85/950,991 for the mark SWIPE in connection with "computer application software for mobile devices, namely, software for social introduction and dating services" in class 9 (the "SWIPE Application").

43.     Upon information and belief, at the time that the SWIPE Application was filed, Chirpme was using "SWIPE" as the name of a mobile application that enabled users to locate and chat with other nearby users.

44.     Upon information and belief, Chirpme's application functioned by showing users photographs of prospective nearby users and allowing users to swipe left to indicate disinterest or swipe right to indicate interest in the user.  SWIPE was used to refer to the touchscreen gesture of the app.

45.     Upon information and belief, on December 30, 2013, Chirpme assigned its trademark rights in "SWIPE," including the SWIPE Application, to SpeedDate.com, LLC.

46.     Upon information and belief, on January 14, 2014, the SWIPE Application matured to Registration No. 4,465,926 (the "Registration").

47.      Upon information and belief, on February 24, 2015, SpeedDate.com, LLC

assigned the SWIPE mark and Registration to Tinder, Inc.

48.    Upon information and belief, on July 13, 2017, Tinder, Inc. merged with Match Group, Inc. and also on July 13, 2017, Match Group, Inc. assigned its trademark rights in "SWIPE," including the Registration, to Counterclaim Defendant.

49.    Upon information and belief, on or about April 24, 2015, Counterclaim Defendant filed trademark applications for SWIPE RIGHT (Serial No. 86/608,899) and SWIPE LEFT (Serial No. 86/608,903) in connection with "downloadable software in the nature of a mobile application for internet-based dating and matchmaking; downloadable software in the nature of a mobile application in the field of social media, namely, for sending status updates to subscribers of web feeds, uploading and downloading electronic files to share with others" in class 9.

50.    Upon information and belief, on July 1, 2015, Counterclaim Defendant filed trademark applications for SWIPE (Serial No. 86/680,914), SWIPE LEFT (Serial No. 86/680,923) and SWIPE RIGHT (Serial No. 86/680,927) in connection with "dating services; internet-based social networking, introduction and dating services" in class 45.

51.    Upon information and belief, on August 12, 2015, the United States Patent and Trademark Office ("USPTO") refused registration of the SWIPE RIGHT (Serial No. 86/608,899) and SWIPE LEFT (Serial No. 86/608,903) applications on the ground that SWIPE RIGHT and SWIPE LEFT merely describe a feature of the applied-for goods. The USPTO also cited prior-filed Application Serial Nos. 86/363,987 and 86/363,993 for the mark JSWIPE, Serial No. 86/439,621 for the mark CHRISTIAN SWIPE, and Serial No. 86/366,708 for the mark SWIPEQ (collectively, the "Cited Applications"), all for dating app–related services, as potential bars to registration because of a likelihood of confusion. Counterclaim Defendant requested suspension of the applications pending the registration or abandonment of

the Cited Applications. On February 16, 2016, application Serial Nos. 86/608,899 and 86/608,903 were suspended.

52.     Upon information and belief, on August 12, 2015, the SWIPE (Serial No. 86/680,914), SWIPE LEFT (Serial No. 86/680,923), and SWIPE RIGHT (Serial No. 86/680,927) applications were suspended pending the registration or abandonment of the Cited Applications.

53.     Upon information and belief, on September 9, 2015, Counterclaim Defendant filed a trademark application for SWIPE UP (Serial No. 86/751,974) in connection with "downloadable software in the nature of a mobile application for internet-based dating and matchmaking; downloadable software in the nature of a mobile application in the field of social media, namely, for sending status updates to subscribers of web feeds, uploading and downloading electronic files to share with others" in class 9.

54.     On information and belief, on October 15, 2015, the USPTO refused registration of the SWIPE UP mark on the grounds that SWIPE UP merely describes a feature of the applied-for goods. On April 15, 2016, Counterclaim Defendant responded to the merely descriptive refusal claiming that SWIPE UP is inherently distinctive. As part of its response, Counterclaim Defendant raised arguments based on its alleged trademark rights in the SWIPE mark (Registration No. 4,465,926). On May 4, 2016, the USPTO maintained its refusal to register the purported mark SWIPE UP on the ground that the term is merely descriptive. In addition, the USPTO raised the cited prior-pending Application Serial Nos. 86/363,987, 86/366,708, and 86/363,993 as potential bars to registration.

55.     Upon information and belief, on October 18, 2018, Counterclaim Defendant filed trademark applications for SWIPE SESSIONS (Serial No. 88/160,784) and SWIPE SESSIONS

& Design (Serial No. 88/160,907) in connection with "entertainment services; educational and entertainment services, namely, programs accessible by means of Internet streaming, video on demand, web-based applications, mobile phone applications, computer networks, and other forms of transmission media; entertainment, namely, live music concerts, arranging and conducting of concerts" in class 41 and "Dating services; Internet-based dating, social introduction, and social networking services; providing a web site featuring information in the fields of personal relationships, dating, and fashion" in class 45.

56.     On information and belief, on November 21, 2018, Smooch Labs Inc., owner of the JSWIPE application, filed Cancellation No. 92070035 against Counterclaim Defendant's SWIPE registration at the Trademark Trial and Appeal Board ("TTAB").   Cancellation No. 92070035 is currently suspended at the TTAB.

57.     On information and belief, on January 17, 2019, the USPTO refused registration of the SWIPE SESSIONS mark on the grounds that SWIPE SESSIONS merely describes a feature of the applied-for services.  The USPTO also raised the cited prior-pending Application Serial Nos. 87/119,447, 87/119,452, and 87/226,753 as potential bars to registration.

58.     On information and belief, on July 11, 2019, the SWIPE SESSIONS applications were suspended.

59.     Upon information and belief, on July 12, 2019, Counterclaim Defendant filed a trademark application for SWIPE NIGHT (Serial No. 88/511,870) in connection with "Dating services; Internet based social networking, introduction, and dating services" in class 45.

60.     Upon information and belief, on September 28, 2019, the USPTO issued a suspension notice against the SWIPE NIGHT application (Serial No. 88/511,870) citing prior-pending Application Serial Nos. 86/363,987, 86/363,993, 86/983,877, 87/371,112, and

87/637,835 as potential bars to registration.

61.     Upon information and belief, on September 18, 2019, Counterclaim Defendant filed trademark applications for SWIPE NIGHT (Serial No. 88/621,842) in connection with "Downloadable computer application software, namely, interactive game software; interactive game software for use with mobile devices for the purpose of accessing online dating services; downloadable software in the nature of a mobile application for internet-based dating; downloadable computer software to enable uploading, posting, displaying of images, moving images, film, video recordings, sound recordings, multimedia recordings, animations, and other digital content via global computer and communication networks" in class 9; and SWIPE NIGHT (Serial No. 88/621862) in connection with "Entertainment services, namely, providing on-line non-downloadable interactive game software; entertainment services, namely, providing temporary use of non-downloadable interactive game software for use with personal computers and mobile devices for the purpose of accessing online dating services" in class 41.

62.     Upon information and belief, on December 21, 2019, the USPTO refused registration of SWIPE NIGHT (Serial Nos. 88/621,842 and 88/621,862), citing prior-pending Application Serial Nos. 86/983,877, 86/363,987, and 86/363,993 as potential bars to registration.

63.     Upon information and belief, on June 20, 2020, the SWIPE NIGHT applications (Serial Nos. 88/621,842 and 88/621,862) were suspended.

**GENERIC AND FUNCTIONAL USES OF SWIPE**

64.     Upon information and belief, the term "swipe" is commonly used in connection with mobile-device software applications to identify how a user navigates an app; namely, by "mov[ing] your finger quickly across the screen of an electronic device such as a mobile phone or small computer in order to move text, pictures, etc. or give commands." *See* Exhibit A for a definition of "swipe."

65.     Upon information and belief, Counterclaim Defendant is not the only entity that uses or is entitled to use the term "swipe" in connection with mobile software applications and with dating applications.

66.     Upon information and belief, Google's Material Design System identifies "swipe" as a category of navigational gestures. *See* Ex. B.

67.     Upon information and belief, Google's Material Design System manual indicates that a swiping gesture allows users to "slide elements to complete actions upon passing a threshold."

68.     Upon information and belief, Apple Inc.'s developer guide indicates that "[a] swipe gesture occurs when the user moves one or more fingers across the screen in a specific horizontal or vertical direction." *See* Ex. C. The manual also provides code for the swipe gesture in apps as a category of gestures allowed for apps.

69.     Upon information and belief, the iPhone User Guide lists "swipe" as a "basic gesture" that users use to interact with the iPhone. *See* Ex. D.

70.     Upon information and belief, Counterclaim Defendant and others use the word "swipe" in its functional meaning to convey the touchscreen gesture.

71.     Since the introduction of the iPhone to the public, swiping has been as ubiquitous as touchscreens, and the relevant consuming customers have come to understand "swipe" to identify the touchscreen gesture.

72.     Upon information and belief, "swipe" has a generic meaning within dating to refer to the processing of going through touchscreen gestures of potential matches. These uses are ubiquitous in our day-to-day vocabulary. Some examples include:



# Swiping sucks and even the dating industry knows it

## 'Swiped' matches digital hookups with unforeseen consequences

73.      Upon information and belief, there have been scientific studies conducted on swipe-based dating applications.  *See* Ex. E.

74.      Upon information and belief, swipe-based dating apps have been the basis of an HBO documentary, "Swiped: Hooking Up in the Digital Age."  *See* Ex. F.

75.      Upon information and belief, Counterclaim Defendant uses "swipe" in its generic and functional meaning of a touchscreen gesture of a computer application.   Under the "troubleshooting" tab of the Tinder website, Counterclaim Defendant has a section titled "Trouble with Discovery (*Swiping* on Other Users)" and a specific section for "I'm seeing profiles I've already *swiped* on."  *See* Ex. G (emphasis added).

76.      Upon information and belief, Counterclaim Defendant uses the phrases "swipe right" and "swipe left" in their functional meaning to convey the navigational direction of a

touchscreen gesture.

77.     Upon information and belief, the terms "swipe right" and "swipe left" are also recognized and commonly used as generic terms for "yes" and "no," respectively.   Examples include:





Ad by criteo⌐.

Report this ad

Ad choices ▷

## LIFE

# 7 Types Of People You Should Always Swipe Left On

The New York Times

# 'Love, Guaranteed' Review: Swiping Left on Online Dating

Rachael Leigh Cook stars in this rom-com about a lawyer and her charming new client who wants to sue a dating website for falsely promising love.

# Bustle

Life

# I Swiped Right On Everyone For A Day

78.     Upon information and belief, the terms "swipe right" and "swipe left" are commonly used in memes to mean "yes" and "no," respectively, determined by the direction of

the swipe, and not to indicate source.  Some examples include:







DONT SWIPE RIGHT









79.     Notwithstanding the common understanding and generic use of "swipe," Counterclaim Defendant maintains that the SWIPE Registration is valid, and that Counterclaim-Defendant owns exclusive rights to the terms "SWIPE," "SWIPE RIGHT," "SWIPE LEFT," and variations thereof, in connection with mobile-dating software and related services.

80.     Notwithstanding the common understanding and functional use of "swipe," Counterclaim Defendant maintains that the SWIPE Registration is valid, and that Counterclaim Defendant owns exclusive rights to the terms "SWIPE," "SWIPE RIGHT," "SWIPE LEFT," and variations thereof, in connection with mobile-dating software and related services.

81.     Upon information and belief, the term "swipe," and variations thereof, as used by Counterclaim Defendant and its predecessors in interest has never functioned as a trademark or source identifier.

82.     Upon information and belief, "swipe" is a generic and functional term for a touchscreen gesture.

83.     Upon information and belief, "swipe" and variations thereof are generic and functional terms for touchscreen gestures.

**COUNTERCLAIM DEFENDANT'S**
**PURPORTED MATCH TRADEMARK**

84.     Upon information and belief, Counterclaim Defendant has used several trademarks that incorporate different variations of the word "match" in connection with dating services.

85.     Upon information and belief, on May 20, 2014, Counterclaim Defendant filed a trademark application for MATCH and Design (Serial No. 86/286888), , in class 9 in connection with "Computer application software for use with mobile devices, namely, software for the purpose of accessing online dating services." On January 6, 2015, the MATCH and Design application matured into Registration No. 4,666,847.

86.     Upon information and belief, the MATCH and Design Registration No. 4,666,847 describes the mark as "consist[ing] of the word 'match' in lowercase letters with a heart above it and to the right."

87.     Upon information and belief, a heart is a generic symbol for love.

88.    Upon information and belief, a heart is commonly used for dating services.

89.    Upon information and belief, a heart is generic for dating services.

90.    Upon information and belief, the relevant consumer does not consider a heart design to be a source identifier.

91.    Upon information and belief, many third parties utilize a heart design for dating services.

92.    Upon information and belief, the MATCH and Design Registration No. 4,666,847 is a composite mark of a generic word "match" plus a generic heart design such that the composite mark overall is generic for dating services.

93.    Upon information and belief, Counterclaim Defendant purports to use the standalone word MATCH as a trademark.

94.    Upon information and belief, Counterclaim Defendant purports to assert common-law-trademark rights to the standalone word MATCH as a trademark.

95.    Upon information and belief, the standalone word MATCH is not a federally registered trademark.

96.    Upon information and belief, even though the standalone word MATCH is not a federally registered trademark, Counterclaim Defendant falsely uses the registered symbol ® in connection with the standalone word MATCH.  Some examples include:



**Ad** · http://www.match.com/ ▾

Match.com ¦ Match®¦ - Official Site

Everyone Knows Someone Who's Met on **Match**. Start Now. -- Virtual Events. -- Dating
Experts. -- Personalized **Matches**. -- Video Dates. Types: Single Women, Single Men, Gay
Dating, Lesbian Dating, Christian Dating.

Match.com

https://www.match.com ▾

Online Dating at Match.**com**. Every year, hundreds of thousands of people find love on Match.**com**.
Match.**com** pioneered the Internet dating industry, launching in 1995 and today serves millions of singles
in 24 countries.Match.**com** …

Login

Match® ¦ Login | The Leading Online Dating
Site for ...

Gay Dating

Gay Dating Services — Match.com. If you're …

Boston · Michael

See more ∨

Safety Center

Match® ¦ Safety Center | The Leading Online
Dating Site ...



97.     Upon information and belief, Counterclaim Defendant also uses the registered symbol ® in connection with the standalone word MATCH in the Introduction section of its Complaint.

98.     Upon information and belief, Counterclaim Defendant also uses the registered symbol ® in connection with the standalone word MATCH in the Introduction section of its Complaint.

99.     Upon information and belief, Counterclaim Defendant's use of "Match®" is false, since the word MATCH alone is not a federally registered trademark.

100.    Upon information and belief, Counterclaim Defendant's use of "Match®" is a misuse of the federal notice and constitutes false advertising.

101.    Upon information and belief, Counterclaim Defendant's use of "Match®" harms Muzmatch and others because it purports exclusive trademark rights to the standalone word

MATCH, which is generic for "dating."

102.  Upon information and belief, "match" is a commonly used word in the English language.  It has a known dictionary definition: "a prospective partner in marriage."  *See* Ex. H.

103.  Upon information and belief, the word "match" is commonly used in connection with dating.

104.  Upon information and belief, consumers understand the word "match" to refer to the classification of a mutual romantic interest in dating.

105.  Upon information and belief, various articles, blogs, and YouTube videos use the generic term "match" to reference the classification of a mutual romantic interest in dating.  Some examples include:





CULTURE

**We've Found The Dating App That Lets You Meet Your Match So You Can Stop Swiping And Start Connecting**

#SPONSORED

BY NICK DIMENGO / JULY 16, 2020

FACEBOOK  TWITTER  REDDIT  FLIPBOARD

Michael Tudda  148 Followers  About  Follow

Sign in

Match or die.

**5 Ways to Get More Matches On Dating Apps**

Michael Tudda  Apr 13, 2017 · 8 min read

REFINERY29          DISCOVER ⌄    WATCH ⌄    SHOP ⌄

# How To Turn Your Dating App Match Into An Actual Date

ERIKA W. SMITH

LAST UPDATED OCTOBER 22, 2019, 1:46 PM

  

106.     Upon information and belief, Counterclaim Defendant is not the only entity that

uses or is entitled to use the term "match" in connection with dating services.

107. Upon information and belief, many dating apps and companies use the term "match" in a generic fashion to refer to the classification of a mutual romantic interest in dating, including:



Love Match Deluxe



Craft Match



Panion : Match, Chat & Meet Up with New Friends Nearby
Oct 29, 2019



Are We a Love Match



SINGLE MATCH - FLIRT
DATING GAME BY LOVE
AFFINITY AND FACE MATCH



Asian Dating - Asian Match



Local Match



# Match Dating Online - Find & Meet People Online

**LishaMobile**   **Dating**

★ ★ ★ ★ ✬ 1,631 👤

Ⓜ Mature 17+

⚠ You don't have any devices

🔖 Add to Wishlist

[ Install ]



## OE Match - Date, Chat & Meet Asian Singles

**OE International Dating**   **Dating**

★ ★ ★ ★ ★ 1,086 👤

Ⓜ Mature 17+

**Offers in-app purchases**
⚠ You don't have any devices



## MY Match - Chinese Dating App

**East Asian Dating App**   **Dating**

★ ★ ★ ★ ★ 274 👤

Ⓜ Mature 17+

**Offers in-app purchases**
⚠ You don't have any devices

🔖 Add to Wishlist

**Install**



## Millionaire Match: Meet And Date The Rich Elite

**MillionaireMatch Inc**   **Dating**

★ ★ ★ ★ ★ 4,938 👤

Ⓜ Mature 17+

**Offers in-app purchases**
⚠ You don't have any devices

🔖 Add to Wishlist

**Install**



## W-Match: Video Dating App, Meet & Video Chat

**Waplog Dating Apps    Social**

★ ★ ★ ★ ⯪ 319,905 &#128100;

&#127397; **Mature 17+**

**Contains Ads · Offers in-app purchases**
⚠ You don't have any devices

&#128278; Add to Wishlist

**Install**



## MT Match Chinese Dating

**MT Match Dating Group    Dating**

★ ★ ★ ★ ★ 473 &#128100;

&#127397; **Mature 17+**

**Offers in-app purchases**
⚠ You don't have any devices

&#128278; Add to Wishlist

**Install**



## Age Match - Older Men Younger Women Dating App

**AgeMatch.com since 2002    Dating**

★ ★ ★ ★ ★ 554 &#128100;

&#127397; **Mature 17+**

**Offers in-app purchases**
⚠ You don't have any devices

&#128278; Add to Wishlist

**Install**



## Senior Match: Mature Dating App for Silver Singles

**SeniorMatch.com since 2003**    **Dating**

★ ★ ★ ★ ⯪ 1,719 👤

Ⓜ Mature 17+

**Offers in-app purchases**

⚠ You don't have any devices

🏷 Add to Wishlist           **Install**



## ThaiMatch

**Geekee Company Limited**    **Dating**

★ ★ ★ ⯪ ☆ 881 👤

Ⓜ Mature 17+

**Contains Ads · Offers in-app purchases**

⚠ You don't have any devices

🏷 Add to Wishlist           **Install**



## MatchDate - Virtual Speed Dating Online Matches

**Wesapi**    **Dating**

Ⓜ Mature 17+

⚠ You don't have any devices

🏷 Add to Wishlist           **Install**



108.    Upon information and belief, the relevant consumer understands the term "match" to refer to the classification of a mutual romantic interest in dating and looks to other elements to determine the specific type of dating services that a company caters to.

109.    Upon information and belief, "match" is not a source identifier.

110.    Upon information and belief, the relevant consumer does not associate the term "match" with Counterclaim Defendant.

111.    Upon information and belief, Counterclaim Defendant itself uses the term "match" in a generic and functional manner to refer to the classification of a mutual romantic interest in dating.  Some examples include:





| Account Settings | Billing & Subscription | Member Communication | Paid Features & Power-Ups | Profile & Photos | Searching & Matching | Technical Issues | Contact Us |
|---|---|---|---|---|---|---|---|

## Mutual Matches

**What are Mutual Matches?**

Mutual Match is one of the best ways we have of pairing you up with other members we think you might be interested in. This feature sifts through our impressive database of members (we are the largest dating site out there) to identify those who not only match your criteria, but whose criteria also look an awful lot like you!

**Where can I find them?**

To find your Mutual Matches, just go to the Search page and click on Mutual Match. If you have asked for matches to be sent to your personal email address, Mutual Matches can also be found in those messages. Depending on how broad/narrow your preferences are and how often we send your matches to you, we may not always have new Mutual Matches each time we email you.

## Percent Match

Your matches, whether in your Mutual Matches, in Match.com by Mail, or in Custom Search results, display a percent value that represents how well you match with the member in question based on our Mutual Match algorithm. It's the same percentage value the member sees if they view your profile. Search results that aren't a high value match don't include this value.

**I'm getting too many/too few matches**

Mutual Match is based on your profile, so try to strike the right balance in how you define your ideal date. If your criteria is too narrow, you may not get as many results as you'd like. If it's too broad, you'll get some matches that don't quite pique your interest. We suggest that you edit your profile as needed to find your happy medium. After you make changes, your Mutual Matches page will update the next time you sign in.

112.    Upon information and belief, Counterclaim Defendant's affiliated companies, such as Tinder, Hinge, OkCupid, and Plenty of Fish, prominently use the word "match" to refer to the category of a mutual romantic interest in dating.  Some examples include:





# Messaging a Match

Only once you've matched with someone on Tinder can you start to chat with that person. Send a Bitmoji message or add a GIF to liven up your first message!





## OkCupid: Online Dating App [17+]

Meet new people & find dates

OkCupid

#60 in Social Networking
★★★★★ 4.3 • 195.6K Ratings

Free · Offers In-App Purchases

**iPhone Screenshots**



Get the best dating app for singles and find a match based on who you really are and what you love.

Better dates come from better connections – that's why OkCupid shows off who you are beyond just a photo. Online dating should focus on what makes you. well. you - because you deserve it.



**FIRST CAUSE OF ACTION**
**(Declaration of Invalidity of Registration No. 4,465,926)**

113.     Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

114.     Registration No. 4,465,926 for the mark SWIPE registered on January 14, 2014, to Chirpme, Inc. in international class 9 for "computer application software for mobile devices, namely, software for social introduction and dating services."

115.     Registration No. 4,465,926 is invalid, as the described mark is generic and therefore does not constitute a protectable mark pursuant to 15 U.S.C. § 1064.

116.     Registration No. 4,465,926 is invalid, as the described mark is functional and therefore does not constitute a protectable mark pursuant to 15 U.S.C. § 1064.

117.     Upon information and belief, the relevant purchasing public understands the word "swipe" to be the common term or class name for the touchscreen gesture.

118.     Muzmatch is entitled to a declaration that United States Trademark Registration No. 4,465,926 is invalid.

## SECOND CAUSE OF ACTION
### (Declaration of Invalidity of Registration No. 4,666,847)

119.     Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

120.     Registration No. 4,666,847 for the mark MATCH and Design registered on January 6, 2015, to Match.com, L.L.C. in class 9 for "Computer application software for use with mobile devices, namely, software for the purpose of accessing online dating services." On September 12, 2017, Match.com, L.L.C. assigned the MATCH and Design mark, including Registration No. 4,666,847, to Counterclaim Defendant.

121.     Registration No. 4,666,847 is invalid as the described mark is generic and therefore does not constitute a protectable mark pursuant to 15 U.S.C. § 1064.

122.     The primary significance of the term "match" and the heart design to the relevant public is understood to refer to the classification of a mutual romantic interest in dating, rather than to Counterclaim Defendant or Counterclaim Defendant's services.

123.     The purported MATCH and Design mark does not function as a source identifier.

124.     Muzmatch is entitled to a declaration that United States Trademark Registration No. 4,666,847 is invalid.

## THIRD CAUSE OF ACTION
### (Cancellation of Registration Nos. 4,465,926 and 4,666,847)

125.     Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

126. Pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, this Court may "determine the right to registration, order the cancelation of registrations, in whole or in part, . . . and otherwise rectify the register with respect to the registrations of any party to the action."

127. Counterclaim Defendant's alleged U.S. Registration No. 4,465,926 is invalid, as the term "swipe" is generic and/or functional pursuant to 15 U.S.C. § 1064.

128. Further, because of the generic nature of the purported SWIPE mark covered by Registration No. 4,465,926, if competitors are precluded from using this generic term to describe the touchscreen gesture, then Counterclaim Defendant would obtain a significant non-reputation-related advantage over its competitors.

129. Further, because of the functional nature of the purported SWIPE mark covered by Registration No. 4,465,926 that communicates functional characteristics of the computer application, if competitors are precluded from using this functional term to describe the touchscreen gesture, then Counterclaim Defendant would obtain a significant non-reputation-related advantage over its competitors.

130. Protection of Counterclaim Defendant's purported SWIPE mark under Registration No. 4,465,926 would significantly undermine Muzmatch's ability to compete in the market for online-dating apps by accurately identifying the common touchscreen gesture.

131. The term "swipe" as used by Counterclaim Defendant is generic and functional and cannot function as a source identifier and, therefore, is not entitled to registration.

132. Accordingly, Registration No. 4,465,926 should be canceled.

133. Counterclaim Defendant's alleged U.S. Registration No. 4,666,847 is invalid, as the MATCH and Design mark is generic pursuant to 15 U.S.C. § 1064.

134. Because of the generic nature of the purported MATCH and Design mark covered

by Registration No. 4,666,847, if competitors are precluded from using this generic term and design to refer to the classification of a mutual romantic interest in dating, then Counterclaim Defendant would obtain a significant non-reputation-related advantage over its competitors.

135.    Protection of Counterclaim Defendant's purported MATCH and Design mark under Registration No. 4,666,847 would significantly undermine Muzmatch's ability to compete in the market for online-dating apps by referring to the classification of a mutual romantic interest in dating.

136.    Accordingly, Registration No. 4,666,847 should be canceled.

**FOURTH CAUSE OF ACTION**
**(Declaratory Judgment That the Term "Match" Is Not Protectable)**

137.    Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

138.    When used in its ordinary meaning, the term "match" refers to "a mutual romantic interest in dating" and is not a protectable mark.

139.    The term "match" as used by consumers and dating companies has become a generic and functional reference for "a mutual romantic interest in dating."

140.    The primary significance of the term "match" to the relevant public is understood to refer to "a mutual romantic interest in dating," rather than to Counterclaim Defendant or Counterclaim Defendant's services.

141.    The term "match" does not function as a source identifier.

142.    Muzmatch and other third parties may freely use the term "match" in the ordinary meaning.

143.    Accordingly, the term "match" is generic and/or functional for the classification of a mutual romantic interest in dating.

## FIFTH CAUSE OF ACTION
### (False Advertising in Violation of Section 43(a) of the Lanham Act)

144.    Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

145.    Counterclaim Defendant does not own a federal trademark registration for the standalone word MATCH.

146.    Despite not owning a federal trademark registration for the standalone trademark MATCH, Counterclaim Defendant uses the registered symbol ® in connection with the standalone word MATCH.

147.    Since MATCH alone is not a federally registered trademark, Counterclaim Defendant's use of "MATCH®" is literally false.

148.    Counterclaim Defendant has never owned a federal trademark registration for the word MATCH alone.

149.    Upon information and belief, Counterclaim Defendant's use of "MATCH®" played a substantial role in the decision of Counterclaim Defendant's customers to purchase its services.

150.    Upon information and belief, Counterclaim Defendant's deception is material and likely to influence purchasing decisions.

151.    As a direct and proximate result of Counterclaim Defendant's wrongful conduct, Counterclaim Defendant has caused Muzmatch irreparable harm and injury.

152.    Counterclaim Defendant's acts of false advertising are knowing and willful.

153.    Unless Counterclaim Defendant is enjoined from its wrongful conduct, Muzmatch will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

154.    Counterclaim Defendant's conduct, as described herein, constitutes false

advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## SIXTH CAUSE OF ACTION
### (Denial of Registration for Application Serial Nos. 86/608,899, 86/608,903, 86/680,914, 86/680,923, 86/680,927, and 86/751,974)

155.  Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

156.  Upon information and belief, all the goods and services covered by Application Serial Nos. 86/608,899, 86/608,903, 86/680,914, 86/680,923, 86/680,927, and 86/751,974 relate to mobile-dating apps that are expressly designed around the touchscreen gesture of moving one's finger across the screen.

157.  Upon information and belief, Application Serial Nos. 86/608,899, 86/608,903, 86/680,914, 86/680,923, 86/680,927, and 86/751,974 share a sufficient nexus to the SWIPE Registration (Registration No. 4,465,926).

158.  When used on or in connection with the applicable goods and services set forth in these applications, the purported trademarks SWIPE, SWIPE LEFT, SWIPE RIGHT, and SWIPE UP are understood by consumers to refer to the common touchscreen gesture.

159.  Upon information and belief, the purported trademarks SWIPE, SWIPE LEFT, SWIPE RIGHT, and SWIPE UP are not inherently distinctive and have not become distinctive of Counterclaim Defendant's goods and services.  Counterclaim Defendant has not acquired secondary meaning in the purported marks for its goods and services.

160.  Issuance of registrations in connection with Application Serial Nos. 86/608,899, 86/608,903, 86/680,914, 86/680,923, 86/680,927, and 86/751,974 will unfairly prejudice Muzmatch and other entities in the mobile-application industry from using common terms for touchscreen gestures.

161.  Issuance of registrations in connection with Application Serial Nos. 86/608,899,

86/608,903, 86/680,914, 86/680,923, 86/680,927, and 86/751,974 would therefore violate 15 U.S.C. §§ 1052 and 1064 because the marks are generic, or at least merely descriptive, and/or functional of the goods and services covered by the applications.

### SEVENTH CAUSE OF ACTION
### (Denial of Registration for Application Serial Nos. 88/160,784 and 88/160,907)

162.    Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

163.    Upon information and belief, Application Serial Nos. 88/160,784 and 88/160,907 cover online-dating services, entertainment services, and online-content services concerning mobile-dating apps that are expressly designed around the touchscreen gesture.

164.    Upon information and belief, Application Serial Nos. 88/160,784 and 88/160,907 share a sufficient nexus to the SWIPE Registration (Registration No. 4,465,926).

165.    Upon information and belief, the term SWIPE in SWIPE SESSIONS refers to the common touchscreen gesture of moving one's finger across the screen.

166.    Upon information and belief, the term SESSIONS in SWIPE SESSIONS refers to a period of discussion about the Tinder app.

167.    Counterclaim Defendant's combination of the generic term SWIPE with the descriptive term SESSIONS merely describes Counterclaim Defendant's online-dating services and entertainment services and online-content services.

168.    Upon information and belief, the purported SWIPE SESSIONS mark is merely descriptive and has not become distinctive of Counterclaim Defendant's online-dating services, entertainment services, and online-content services.  Upon information and belief, Counterclaim Defendant has not acquired secondary meaning in the purported mark for such services.

169.    Issuance of registrations in connection with Application Serial Nos. 88/160,784

and 88/160,907 would therefore violate 15 U.S.C. § 1052 because SWIPE SESSIONS is merely descriptive of the services covered by the applications.

## EIGHTH CAUSE OF ACTION
### (Denial of Registration for Application Serial Nos. 88/511870, 88/621842, and 88/621862)

170.     Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

171.     Upon information and belief, Application Serial Nos. 88/511870, 88/621842, and 88/621862 cover online-dating services, entertainment services, and online-content services concerning mobile-dating apps that are expressly designed around the touchscreen gesture.

172.     Upon information and belief, Application Serial Nos. 88/511870, 88/621842, and 88/621862 share a sufficient nexus to the SWIPE Registration (Registration No. 4,465,926).

173.     Upon information and belief, the term SWIPE in SWIPE NIGHT refers to the common touchscreen gesture of moving one's finger across the screen.

174.     Counterclaim Defendant's combination of the generic term SWIPE with the descriptive term NIGHT merely describes Counterclaim Defendant's online-dating services and entertainment services and online-content services.

175.     Upon information and belief, the purported SWIPE NIGHT mark is merely descriptive and has not become distinctive of Counterclaim Defendant's online-dating services, entertainment services, and online-content services.  Upon information and belief, Counterclaim Defendant has not acquired secondary meaning in the purported mark for such services.

176.     Issuance of registrations in connection with Application Serial Nos. 88/511870, 88/621842, and 88/621862 would therefore violate 15 U.S.C. § 1052 because SWIPE NIGHT is merely descriptive of the services covered by the applications.

## DEMAND FOR JURY TRIAL

177.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Muzmatch hereby

demands that the Counterclaims be tried by jury.

## PRAYER FOR RELIEF

178.     WHEREFORE, Muzmatch respectfully requests that this Court:

a)  deny any and all relief requested by Plaintiff;

b)  award Defendant's attorneys' fees and costs incurred in the defense of this action;

c)  award Defendant such further relief as the Court deems just and proper;

d)  enter judgment against Plaintiff on all of its claims of infringement of US Registration
    Nos. 4,465,926 and 4,666,847;

e)  enter judgment in favor of Defendant and against Plaintiff on all of Defendant's
    Counterclaims;

f)  enter declaratory judgment that the term "match" is not a protectable mark;

g)  preliminarily and permanently enjoin Plaintiff's use of the registered symbol ® in
    connection with the standalone word MATCH;

h)  direct the United States Patent and Trademark Office to cancel US Registration Nos.
    4,465,926 and 4,666,847 as invalid;

i)  issue an injunction prohibiting Plaintiff from obtaining trademark registrations in
    connection with Application Serial Nos. 86/608,899, 86/608,903, 86/680,914,
    86/680,923, 86/680,927, 86/751,974, 88/160,784, 88/160,907, 88/511870,
    88/621842, and 88/621862 and order Plaintiff to expressly abandon the applications,
    in whole or in part, under 15 U.S.C. § 1052; and

j)  award Defendant's attorneys' fees and costs of suit in connection with the
    Counterclaims under the Lanham Act as an exceptional case.

Dated: April 8, 2021                     Respectfully submitted,

**WINSTON & STRAWN LLP**

By:    */s/ Rex A. Mann*
       Thomas M. Melsheimer
       State Bar No. 13922550
       tmelsheimer@winston.com
       Rex A. Mann
       State Bar No. 24075509
       rmann@winston.com
       Ahtoosa A. Dale
       State Bar No. 24101443
       adale@winston.com
       2121 N. Pearl Street, Suite 900
       Dallas, TX 75201
       Telephone: (214) 453-6500
       Facsimile: (214) 453-6400

       Irina Lyapis *(Pro Hac Vice Forthcoming)*
       CA Bar No. 298723
       ILyapis@winston.com
       101 California Street
       San Francisco, CA 94111-5840
       Phone: (415) 591-1000
       Fax: (415) 591-1400

       Michael Tomasulo *(Pro Hac Vice Forthcoming)*
       CA Bar No. 179389
       MTomasulo@winston.com
       333 S. Grand Avenue
       Los Angeles, CA 90071-1543
       Phone: (213) 615-1700
       Fax: (213) 615-1750


       *Attorneys for Defendant*
       *Muzmatch Limited*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 8, 2021, a true and correct copy of the foregoing document was filed via ECF and served on all counsel of record registered to receive service through such means.

*/s/ Rex A. Mann*
Rex A. Mann
