# EXHIBIT F
# Part 1 of 4

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

Page 1 of 2

PATENT NO.          : 9,733,811 B2
APPLICATION NO.     : 14/059192
DATED               : August 15, 2017
INVENTOR(S)         : Sean Rad et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In the Claims

Column 25, Line 20, after "enable" insert --initial--.
Column 25, Line 26, after "enable" insert --initial--.
Column 25, Line 28, after second reference of "user", delete "both".
Column 25, Line 31, after "regarding a", delete "second" and insert --third--.
Column 25, Line 34, after "of the", delete "second" and insert --third--.
Column 25, Line 37, after "the", delete "second" and insert --third--.
Column 25, Line 39, delete "determining to prevent" and insert --preventing--.
Column 25, Line 40, delete "in response to" and insert --after--.
Column 25, Line 41, delete "both".
Column 25, Line 41, delete "positive" and insert --negative--.
Column 25, Line 42, after "the", delete "second user and the second".
Column 25, Line 43, delete "user has expressed the positive preference indication".
Column 25, Line 44, delete "regarding the first" and insert --third--.
Column 25, Line 46, after "regarding a", delete "third" and insert --fourth--.
Column 25, Line 49, after "representation of the", delete "third" and insert --fourth--.
Column 25, Line 51, before "potential match", delete "third" and insert --fourth--.
Column 25, Line 53, delete "determining to prevent" and insert --preventing--.
Column 25, Line 54, delete "in response to" and insert --after--.
Column 26, Line 43, after "enable" insert --initial--.
Column 26, Line 49, after "enable" insert --initial--.
Column 26, Line 51, after "first user", delete "both".
Column 26, Line 54, after "regarding a", delete "second" and insert --third--.
Column 26, Line 57, after "representation of the", delete "second" and insert --third--.
Column 26, Line 60, after "the", delete "second" and insert --third--.
Column 26, Line 62, delete "determine to".
Column 26, Line 63, delete "in response to" and insert --after--.
Column 26, Line 64, delete "both".

Signed and Sealed this
Twenty-first Day of November, 2017

*Joseph Matal*

Joseph Matal
*Performing the Functions and Duties of the*
*Under Secretary of Commerce for Intellectual Property and*
*Director of the United States Patent and Trademark Office*

Column 26, Line 64, delete "positive" and insert --negative--.

Column 26, Line 65, delete "second user and the second".

Column 26, Line 66, delete "user has expressed the positive preference indication".

Column 26, Line 67, delete "regarding the first" and insert --third--.

Column 27, Line 2, delete "third" and insert --fourth--.

Column 27, Line 5, delete "third" and insert --fourth--.

Column 27, Line 6, delete "third" and insert --fourth--.

Column 27, Line 8, delete "determine to".

Column 27, Line 9, delete "in response to" and insert --after--.

Column 27, Line 19, after "first user and the" delete ",".

Column 27, Line 33, delete "electronically receive a plurality of user online-dating".

Column 27, Line 34, delete "profiles, each profile comprising traits of a respective".

Column 27, Line 35, delete "user and associated with a social networking platform;".

Column 28, Line 6, after "enable", insert --initial--.

Column 28, Line 12, after "enable", insert --initial--.

Column 28, Line 14, after "first user", delete "both".

Column 28, Line 17, after "regarding a", delete "second" and insert --third--.

Column 28, Line 20, after "representation of the", delete "second" and insert --third--.

Column 28, Line 23, after "gesture, the", delete "second" and insert --third--.

Column 28, Line 25, delete "determine to".

Column 28, Line 26, delete "in response to" and insert --after--.

Column 28, Line 27, delete "both".

Column 28, Line 27, after "expressed the", delete "positive" and insert --negative--.

Column 28, Line 28, delete "second user and the second".

Column 28, Line 29, delete "user has expressed the positive preference indication".

Column 28, Line 30, delete "regarding the first" and insert --third--.

Column 28, Line 32, delete "third" and insert --fourth--.

Column 28, Line 35, delete "third" and insert --fourth--.

Column 28, Line 36, delete "third" and insert --fourth--.

Column 28, Line 38, delete "determine to".

Column 28, Line 39, delete "in response to" and insert --after--.

Column 28, Line 50, after "control enabling", delete "the" and insert --a--.

ATTORNEY'S DOCKET:                                          PATENT NO:
083523.0118                                                   9,733,811

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patentee:             Sean Rad et al.

U.S. Patent No.:      9,733,811

Issue Date:           August 15, 2017

Serial No.:           14/059,192

Filing Date:          October 21, 2013

Confirmation No.:     1044

Title:                MATCHING PROCESS SYSTEM AND METHOD

Commissioner for Patents
Office of Data Management Attention:  Certificates of Correction Branch
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### REQUEST FOR EXPEDITED ISSUANCE OF
### CERTIFICATE OF CORRECTION UNDER 37 CFR § 1.322

It is respectfully requested that a Certificate of Correction be issued in accordance with the enclosed Form PTO-1050.  The errors involved are Patent Office errors and supporting documentation is included that support this request.  These documents are (1) Response Accompanying Request for Continued Examination dated May 26, 2016 that includes amendments to the claims; and (2) Notice of Allowance with Examiner's Amendment dated March 31, 2017 that includes further amendments to the claims.

No fee is due in association with this request for a Certificate of Correction.  However, the Commissioner is hereby authorized to charge any fees or credit any overpayments to Deposit Account No. 02-0384 of Baker Botts L.L.P.

It is respectfully submitted that significant errors are present in the printed patent, that correction thereof in accordance with the enclosed Form PTO-1050 is required in order that no misunderstanding will occur.

Respectfully submitted,
BAKER BOTTS L.L.P.
Attorneys for Applicant

/Chad C. Walters/

Chad C. Walters
Reg. No. 48,022

Date:  October 23, 2017
Customer No.: 05073
Phone: (214) 953-6511

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

Patent No.: 9,733,811
Dated: August 15, 2017
Inventor(s): Sean Rad, Todd M. Carrico, Kenneth B. Hoskins, James C. Stone, Jonathan Badeen

It is certified that errors appear in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Col. 25, line 20, after "enable" insert --initial--.
Col. 25, line 26, after "enable" insert --initial--.
Col. 25, line 28, after second reference of "user", delete "both".
Col. 25, line 31, after "regarding a", delete "second" and insert --third--.
Col. 25, line 34, after "of the", delete "second" and insert --third--.
Col. 25, line 37, after "the", delete "second" and insert --third--.
Col. 25, line 39, delete "determining to prevent" and insert --preventing--.
Col. 25, line 40, delete "in response to" and insert --after--.
Col. 25, line 41, delete "both".
Col. 25, line 41, delete "positive" and insert --negative--.
Col. 25, line 42, after "the", delete "second user and the second".
Col. 25, line 43, delete "user has expressed the positive preference indication".
Col. 25, line 44, delete "regarding the first" and insert --third--.
Col. 25, line 46, after "regarding a", delete "third" and insert --fourth--.
Col. 25, line 49, after "representation of the", delete "third" and insert --fourth--.
Col. 25, line 51, before "potential match", delete "third" and insert --fourth--.
Col. 25, line 53, delete "determining to prevent" and insert --preventing--.
Col. 25, line 54, delete "in response to" and insert --after--.
Col. 26, line 43, after "enable" insert --initial--.
Col. 26, line 49, after "enable" insert --initial--.
Col. 26, line 51, after "first user", delete "both".
Col. 26, line 54, after "regarding a", delete "second" and insert --third--.
Col. 26, line 57, after "representation of the", delete "second" and insert --third--.
Col. 26, line 60, after "the", delete "second" and insert --third--.
Col. 26, line 62, delete "determine to".
Col. 26, line 63, delete "in response to" and insert --after--.
Col. 26, line 64, delete "both".
Col. 26, line 64, delete "positive" and insert --negative--.
Col. 26, line 65, delete "second user and the second".
Col. 26, line 66, delete "user has expressed the positive preference indication".
Col. 26, line 67, delete "regarding the first" and insert --third--.

**Mailing Address of Sender:**                    **Patent No.**      9,733,811
Baker Botts L.L.P.
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980

Form PTO-1050

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

Patent No.:   9,733,811
Dated:        August 15, 2017
Inventor(s):  Sean Rad, Todd M. Carrico, Kenneth B. Hoskins, James C. Stone,
              Jonathan Badeen

  It is certified that errors appear in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Col. 27, line 2, delete "third" and insert --fourth--.
Col. 27, line 5, delete "third" and insert --fourth--.
Col. 27, line 6, delete "third" and insert --fourth--.
Col. 27, line 8, delete "determine to".
Col. 27, line 9, delete "in response to" and insert --after--.
Col. 27, line 19, after "first user and the" delete ",".
Col. 27, line 33, delete "electronically receive a plurality of user online-dating".
Col. 27, line 34, delete "profiles, each profile comprising traits of a respective".
Col. 27, line 35, delete "user and associated with a social networking platform;"
Col. 28, line 6, after "enable", insert --initial--.
Col. 28, line 12, after "enable", insert --initial--.
Col. 28, line 14, after "first user", delete "both".
Col. 28, line 17, after "regarding a", delete "second" and insert --third--.
Col. 28, line 20, after "representation of the", delete "second" and insert --third--.
Col. 28, line 23, after "gesture, the", delete "second" and insert --third--.
Col. 28, line 25, delete "determine to".
Col. 28, line 26, delete "in response to" and insert --after--.
Col. 28, line 27, delete "both".
Col. 28, line 27, after "expressed the", delete "positive" and insert --negative--.
Col. 28, line 28, delete "second user and the second".
Col. 28, line 29, delete "user has expressed the positive preference indication".
Col. 28, line 30, delete "regarding the first" and insert --third--.
Col. 28, line 32, delete "third" and insert --fourth--.
Col. 28, line 35, delete "third" and insert --fourth--.
Col. 28, line 36, delete "third" and insert --fourth--.
Col. 28, line 38, delete "determine to".
Col. 28, line 39, delete "in response to" and insert --after--.
Col. 28, line 50, after "control enabling", delete "the" and insert --a--.

---

**Mailing Address of Sender:**      **Patent No.**  9,733,811
Baker Botts L.L.P.
2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2980

Form PTO-1050



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 5073 | 7590 | 06/21/2017 |

BAKER BOTTS L.L.P.
2001 ROSS AVENUE
SUITE 700
DALLAS, TX 75201-2980

| EXAMINER |
|---|
| CHOI, YUK TING |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2153 | |

DATE MAILED: 06/21/2017

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/059,192 | 10/21/2013 | Sean Rad | 083523.0118 | 1044 |

TITLE OF INVENTION: Matching Process System And Method

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 09/21/2017 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.   THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.   SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.   THIS STATUTORY PERIOD CANNOT BE EXTENDED.   SEE 35 U.S.C. 151.   THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.   IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

## HOW TO REPLY TO THIS NOTICE:

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>   Mail Stop ISSUE FEE
   **Commissioner for Patents**
   **P.O. Box 1450**
   **Alexandria, Virginia 22313-1450**
**or** <u>Fax</u>   **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

    5073      7590      06/21/2017
    BAKER BOTTS L.L.P.
    2001 ROSS AVENUE
    SUITE 700
    DALLAS, TX 75201-2980

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/059,192 | 10/21/2013 | Sean Rad | 083523.0118 | 1044 |

TITLE OF INVENTION: Matching Process System And Method

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 09/21/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHOI, YUK TING | 2153 | 707-005000 |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363). | 2. For printing on the patent front page, list |
|---|---|
| ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached. | (1) The names of up to 3 registered patent attorneys or agents OR, alternatively,   1 _____ |
| ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.** | (2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.   2 _____   3 _____ |

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

| 4a. The following fee(s) are submitted: | 4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)** |
|---|---|
| ☐ Issue Fee | ☐ A check is enclosed. |
| ☐ Publication Fee (No small entity discount permitted) | ☐ Payment by credit card. Form PTO-2038 is attached. |
| ☐ Advance Order - # of Copies _____ | ☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form). |

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

☐ Applicant asserting small entity status. See 37 CFR 1.27

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

☐ Applicant changing to regular undiscounted fee status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

Page 2 of 3



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/059,192 | 10/21/2013 | Sean Rad | 083523.0118 | 1044 |

| 5073          7590       06/21/2017 | EXAMINER |
|---|---|
| BAKER BOTTS L.L.P. | CHOI, YUK TING |
| 2001 ROSS AVENUE | |

| SUITE 700 | ART UNIT | PAPER NUMBER |
|---|---|---|
| DALLAS, TX 75201-2980 | 2153 | |

DATE MAILED: 06/21/2017

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| ***Examiner-Initiated Interview Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 14/059,192 | RAD ET AL. |
| | Examiner | Art Unit | |
| | YUK TING CHOI | 2153 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *YUK TING CHOI*.                    (3) _____.

(2) *CHAD C. Walters*.                  (4) _____.

Date of Interview: *08 June 2017*.

Type:  ☒ Telephonic  ☐ Video Conference
       ☐ Personal [copy given to: ☐ applicant   ☒ applicant's representative]

Exhibit shown or demonstration conducted:  ☐ Yes   ☒ No.
   If Yes, brief description: _____.

Issues Discussed  ☐101 ☐112 ☐102 ☒103 ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: *23*.

Identification of prior art discussed: *NONE*.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

*The Examiner suggested Applicant to amend claims 23, 30 and 37 to narrow the matches are retrieved from a plurality of user online-dating profiles to expedite the prosecution process. Also, the Examiner also suggested Applicant to call OPAP (800-786-9199) to correct the inventorship of this application.  Applicant agreed and authorized the Examiner to make changes through the Examiner's Amendment.*.

**Applicant recordation instructions**:  It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /YUK TING CHOI/ Primary Examiner, Art Unit 2153 | |
|---|---|

| *Notice of Allowability* | Application No. 14/059,192 | Applicant(s) RAD ET AL. | |
|---|---|---|---|
| | Examiner YUK TING CHOI | Art Unit 2153 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MEPP 1308.

1. ☒ This communication is responsive to *Non-Final Rejection mailed on 02/28/2017.*

  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *23,25,26,30,32,33,37,39 and 40.* As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

  **Certified copies:**

  a) ☐ All    b) ☐ Some   *c) ☐ None of the:

  1. ☐ Certified copies of the priority documents have been received.

  2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

  3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

  * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

  ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

  **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☒ Interview Summary (PTO-413), Paper No./Mail Date *20170608* .

5. ☒ Examiner's Amendment/Comment

6. ☒ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____.

/YUK TING CHOI/
Primary Examiner, Art Unit 2153

Application/Control Number: 14/059,192                                    Page 2
Art Unit: 2153

## DETAILED ACTION

1.      This office action is in response to applicant's communication filed on 05/30/2017

in response to PTO Office Action mailed on 02/28/2017.

2.      In response to the previous Office Action, no claims have been amended, added

or canceled.  A declaration of prior Invention under 37 CFR 1.31 filed on 5/30/2017 has

been considered.  The inventor Johnathan Baden who signed the declaration of prior

Invention was not one of the original inventors listed in the application.  Applicant has

paid the fee set forth in 37 CFR. 1.17 (i) on 5/30/2017 and 37 CFR. 1.17 (d) on

06/07/2017 and filed a request under Rule 48 correcting inventorship on 06/07/2017.

The inventor Mr. Jonathan Badeen has been updated in the system.


## EXAMINER'S AMENDMENT

3.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312.  To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

        Authorization for this examiner's amendment was given in a telephone interview

with Chad C. Walters on 06/07/2017.  During the interview, the Examiner suggested

Applicant to amend claims 23, 30 and 37 to narrow the matches are retrieved from a

plurality of user online-dating profiles to expedite the prosecution process. Also, the

Examiner also suggested Applicant to call OPAP (800-786-9199) to correct the inventorship

Application/Control Number: 14/059,192                           Page 3
Art Unit: 2153

of this application.  Applicant agreed and authorized the Examiner to make changes through the

Examiner's Amendment.


        The application has been amended as follows:


**In the claim:**

    **Claim 23**. (Currently Amended)  A computer implemented method of profile

    matching, comprising:

        electronically receiving a plurality of user online-dating profiles, each profile

comprising traits of a respective user and associated with a social networking platform;

    electronically receiving a first request for matching, the first request electronically

submitted by a first user using a first electronic device;

    determining a set of potential matches from the plurality of user online-dating profiles

for the first user in response to receiving the first request;

    causing the display of a graphical representation of a first potential match of the set of

potential matches to the first user on a graphical user interface of the first electronic

device, the first potential match corresponding to a second user;

    determining that the first user expressed a positive preference indication regarding the

first potential match at least by determining that the first user performed a first swiping

gesture associated with the graphical representation of the first potential match on the

graphical user interface;

Application/Control Number: 14/059,192                                        Page 4
Art Unit: 2153

in response to determining that the first user expressed the positive preference indication regarding the first potential match, automatically causing the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determining that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determining to enable initial communication between the first user and the second user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to determining to enable initial communication between the first user and the second user, causing the graphical user interface to display to the first user the graphical representation of the first potential match;

determining that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

Application/Control Number: 14/059,192                                    Page 5
Art Unit: 2153

preventing communication between the first user and the third user after determining

that the first user has expressed the negative preference indication regarding the third

user;

determining that the first user expressed a positive preference indication regarding a

fourth potential match of the set of potential matches at least by determining that the

first user performed the first swiping gesture associated with a graphical representation

of the fourth potential match on the graphical user interface, the fourth potential match

corresponding to a fourth user; and

preventing communication between the first user and the fourth user after determining

that the fourth user has expressed a negative preference indication regarding the first

user.

30.   (Currently Amended)  A non-transitory computer-readable medium comprising

instructions that, when executed by a processor, are configured to:

electronically receive a plurality of user online-dating profiles, each profile comprising

traits of a respective user and associated with a social networking platform;

electronically receive a first request for matching, the first request electronically

submitted by a first user using a first electronic device;

determine a set of potential matches from the plurality of user online-dating profiles for

the first user in response to receiving the first request;

Application/Control Number: 14/059,192                                          Page 6
Art Unit: 2153

cause the display of a graphical representation of a first potential match of the set of

potential matches to the first user on a graphical user interface of the first electronic

device, the first potential match corresponding to a second user;

determine that the first user expressed a positive preference indication regarding the

first potential match at least by determining that the first user performed a first swiping

gesture associated with the graphical representation of the first potential match on the

graphical user interface;

in response to the determination that the first user expressed the positive preference

indication regarding the first potential match, automatically cause the graphical user

interface to display a graphical representation of a second potential match of the set of

potential matches instead of the graphical representation of the first potential match;

determine that the second user has expressed a positive preference indication

regarding the first user after determining that the first user expressed the positive

preference indication regarding the first potential match;

determine to enable initial communication between the first user and the second user

in response to the determination that both the first user has expressed the positive

preference indication regarding the second user and the second user has expressed the

positive preference indication regarding the first user;

in response to the determination to enable initial communication between the first user

and the second user, cause the graphical user interface to display to the first user the

graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a

third potential match of the set of potential matches at least by determining that the first

user performed a second swiping gesture associated with a graphical representation of

the third potential match on the graphical user interface, the second swiping gesture

different than the first swiping gesture, the third potential match corresponding to a third

user;

prevent communication between the first user and the third user after determining that

the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a

fourth potential match of the set of potential matches at least by determining that the

first user performed the first swiping gesture associated with a graphical representation

of the fourth potential match on the graphical user interface, the fourth potential match

corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining that

the fourth user has expressed a negative preference indication regarding the first user.

37.   (Currently Amended)  A system for profile matching, comprising:

an interface operable to:

electronically receive a plurality of user online-dating profiles, each profile comprising

traits of a respective user and associated with a social networking platform;

electronically receive a first request for matching, the first request electronically

submitted by a first user using a first electronic device; and

Application/Control Number: 14/059,192                                    Page 8
Art Unit: 2153

a processor coupled to the interface and operable to:

determine a set of potential matches <u>from the plurality of user online-dating profiles</u> for the first user in response to receiving the first request;

cause the interface to display a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the interface has received a positive preference indication from the first user regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

automatically cause the interface to remove the presentation of the first potential match from the graphical user interface in response to detecting the gesture and cause the interface to present, on the graphical user interface, a second potential match of the set of potential matches to the first user;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match; and

determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

Application/Control Number: 14/059,192                                    Page 9
Art Unit: 2153

in response to the determination to enable initial communication between the first user

and the second user, cause the graphical user interface to display to the first user the

graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a

third potential match of the set of potential matches at least by determining that the first

user performed a second swiping gesture associated with a graphical representation of

the third potential match on the graphical user interface, the second swiping gesture

different than the first swiping gesture, the third potential match corresponding to a third

user;

prevent communication between the first user and the third user after determining that

the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a

fourth potential match of the set of potential matches at least by determining that the

first user performed the first swiping gesture associated with a graphical representation

of the fourth potential match on the graphical user interface, the fourth potential match

corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining

that the fourth user has expressed a negative preference indication regarding the first

user.

Application/Control Number: 14/059,192                                    Page 10
Art Unit: 2153

## Reason for Allowance

4.      The following is an examiner's statement of reasons for allowance:

A declaration of prior Invention under 37 CFR 1.31 filed on 5/30/2017 has been

considered.  Applicant submitted the claimed technology was invented prior to

08/06/2012, which has priority date earlier than the primary reference: Janssens (US

2014/0040368 A1).  The Examiner has submitted the declaration to TQAS 2100

Brannon Smith and confirmed the declaration has an actual reduction to practice, and it

antedates the Janseens reference. However, Applicant has to correct the inventorship

of this application to add Johnathan Baden, who signed the declaration of prior

Invention.  On 06/07/2017 Applicant has corrected and updated the inventorship of the

current application, the Janssens reference and the 35 USC 103 rejections in the Non-

Final Rejection mailed on 02/28/2017 rejecting claims 23, 25, 26, 30, 32, 33, 35, 37, 39

and 40 are hereby withdrawn.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to YUK TING CHOI whose telephone number is (571)270-

1637.  The examiner can normally be reached on 8:30 AM - 5:30 PM EST.

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Heather Herndon can be reached on (571) 272-4136.  The fax phone

Application/Control Number: 14/059,192                                           Page 11
Art Unit: 2153

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/YUK TING CHOI/
Primary Examiner, Art Unit 2153

| ***Examiner-Initiated Interview Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 14/059,192 | RAD ET AL. |
| | **Examiner** | **Art Unit** | |
| | YUK TING CHOI | 2153 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *YUK TING CHOI*.                              (3) _____ .

(2) *CHAD C. Walters*.                            (4) _____ .

Date of Interview: *08 June 2017*.

Type:    ☒  Telephonic    ☐  Video Conference
         ☐  Personal [copy given to: ☐ applicant    ☒ applicant's representative]

Exhibit shown or demonstration conducted:    ☐ Yes    ☒ No.
   If Yes, brief description: _____ .

Issues Discussed    ☐101 ☐112 ☐102 ☒103 ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: *23*.

Identification of prior art discussed: *NONE*.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

*The Examiner suggested Applicant to amend claims 23, 30 and 37 to narrow the matches are retrieved from a plurality of user online-dating profiles to expedite the prosecution process. Also, the Examiner also suggested Applicant to call OPAP (800-786-9199) to correct the inventorship of this application.  Applicant agreed and authorized the Examiner to make changes through the Examiner's Amendment.*.

**Applicant recordation instructions**:  It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /YUK TING CHOI/ | |
|---|---|
| Primary Examiner, Art Unit 2153 | |

U.S. Patent and Trademark Office
PTOL-413B (Rev. 8/11/2010)                    **Interview Summary**                    Paper No. 20170608

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

1

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:       Sean Rad et al.

Serial No.:                 14/059,192

Filing Date:                October 21, 2013

Group Art Unit:             2164

Examiner:                   Yuk Ting Choi

Confirmation No.:           1044

Title:                      MATCHING PROCESS SYSTEM AND METHOD

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

### Request for Continued Examination

Applicants respectfully request the Examiner to reconsider this application in view of this Request for Continued Examination (RCE).  Please amend the application as follows:

25742049

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

2

**In the Claims**:

1.-22. **(Canceled)**

23. **(Currently Amended)** A computer implemented method of profile matching, comprising:

electronically receiving a first request for matching, the first request electronically submitted by a first user using a first electronic device;

determining a set of potential matches for the first user in response to receiving the first request;

causing the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determining that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

in response to determining that the first user expressed the positive preference indication regarding the first potential match, automatically causing the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determining that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determining to enable communication between the first user and the second user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to determining to enable communication between the first user and the second user, causing the graphical user interface to display to the first user ~~both~~ the graphical representation of the first potential match;

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

3

determining that the first user expressed a negative preference indication regarding a ~~second~~ **third** potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the ~~second~~ **third** potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the ~~second~~ **third** potential match corresponding to a third user;

~~determining to prevent~~ **preventing** communication between the first user and the third user ~~in response to~~ **after** determining that ~~both~~ the first user has expressed the ~~positive~~ **negative** preference indication regarding the ~~second~~ **third** ~~user and the second user has expressed the positive preference indication regarding the first~~ user;

determining that the first user expressed a positive preference indication regarding a ~~third~~ **fourth** potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the ~~third~~ **fourth** potential match on the graphical user interface, the ~~third~~ **fourth** potential match corresponding to a fourth user; and

~~determining to prevent~~ **preventing** communication between the first user and the fourth user ~~in response to~~ **after** determining that the fourth user has expressed a negative preference indication regarding the first user.

24.     **(Canceled)**

25.     **(Currently Amended)** The method of Claim 23, further comprising:

in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, causing the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling ~~the~~ **a** text area to be presented to the first user.

ATTORNEY DOCKET NO.:                                      PATENT APPLICATION
076533.0146                                                        14/059,192

4

26.    **(Previously Presented)** The method of Claim 23, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

27.    **(Canceled)**

28.    **(Canceled)**

29.    **(Canceled)**

25742049

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

5

30.　　**(Currently Amended)**　A non-transitory computer-readable medium comprising instructions that, when executed by a processor, are configured to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device;

determine a set of potential matches for the first user in response to receiving the first request;

cause the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

in response to the determination that the first user expressed the positive preference indication regarding the first potential match, automatically cause the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determine to enable communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable communication between the first user and the second user, cause the graphical user interface to display to the first user ~~both~~ the graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a ~~second~~ **third** potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the ~~second~~ **third** potential match on the graphical user interface, the second swiping gesture

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

6

different than the first swiping gesture, the ~~second~~ **third** potential match corresponding to a third user;

~~determine to~~ prevent communication between the first user and the third user ~~in response to~~ **after** determining that ~~both~~ the first user has expressed the ~~positive~~ **negative** preference indication regarding the ~~second~~ **third** ~~user and the second user has expressed the positive preference indication regarding the first~~ user;

determine that the first user expressed a positive preference indication regarding a ~~third~~ **fourth** potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the ~~third~~ **fourth** potential match on the graphical user interface, the ~~third~~ **fourth** potential match corresponding to a fourth user; and

~~determine to~~ prevent communication between the first user and the fourth user ~~in response to~~ **after** determining that the fourth user has expressed a negative preference indication regarding the first user.


31.     **(Canceled)**


32.     **(Currently Amended)** The medium of Claim 30, further comprising instructions configured to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling ~~the~~ **a** text area to be presented to the first user.


33.     **(Previously Presented)** The medium of Claim 30, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

7

34.    **(Canceled)**

35.    **(Canceled)**

36.    **(Canceled)**

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

8

37.    **(Currently Amended)** A system for profile matching, comprising:

an interface operable to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device; and

a processor coupled to the interface and operable to:

determine a set of potential matches for the first user in response to receiving the first request;

cause the interface to display a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the interface has received a positive preference indication from the first user regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

automatically cause the interface to remove the presentation of the first potential match from the graphical user interface in response to detecting the gesture and cause the interface to present, on the graphical user interface, a second potential match of the set of potential matches to the first user;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match; and

determine to enable communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable communication between the first user and the second user, cause the graphical user interface to display to the first user ~~both~~ the graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a ~~second~~ **third** potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

9

representation of the ~~second~~ **third** potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the ~~second~~ **third** potential match corresponding to a third user;

~~determine to~~ prevent communication between the first user and the third user ~~in response to~~ **after** determining that ~~both~~ the first user has expressed the ~~positive~~ **negative** preference indication regarding the ~~second~~ **third** ~~user and the second user has expressed the positive preference indication regarding the first~~ user;

determine that the first user expressed a positive preference indication regarding a ~~third~~ **fourth** potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the ~~third~~ **fourth** potential match on the graphical user interface, the ~~third~~ **fourth** potential match corresponding to a fourth user; and

~~determine to~~ prevent communication between the first user and the fourth user ~~in response to~~ **after** determining that the fourth user has expressed a negative preference indication regarding the first user.

38.    **(Canceled)**

39.    **(Currently Amended)** The system of Claim 37, the processor further operable to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling ~~the~~ **a** text area to be presented to the first user.

40.    **(Previously Presented)** The system of Claim 37, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

41.    **(Canceled)**

25742049

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

10

    42.    **(Canceled)**

    43.    **(Canceled)**

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

11

## REMARKS

Applicants attempted to revise the claims after noting certain unintentional errors and submitted an amendment under 37 C.F.R. § 1.312 on May 11, 2016. This request was rejected by the Examiner on May 19, 2016. Thus, Applicants submit the present RCE amending Claims 23, 25, 30, 32, 37, and 39.

Previously, U.S. Patent Publication No. 2014/0040368 A1 by Janssens ("*Janssens*") and U.S. Patent Publication No. 2011/0087974 A1 by Kulas ("*Kulas*") had been used to reject the application. The claims as amended here are allowable over these references. For example, neither the cited portions *Janssens* nor *Kulas* disclose the particular manner of expressing preferences and enabling communication as recited in the limitations of amended Claim 23.

*Janssens* discloses a social interaction system that includes a way for a user to find people of interest. *Janssens* at ¶ 0004. A card-feed pane displays "cards," which may display profiles of users. *Id.* at ¶ 0046. A left (backward) arrow and right (forward) enable the user to view other cards within the card-feed. *Id.* at ¶ 0047. Additionally, clicking, mouse dragging, hovering, swiping, and gesturing, may indicate to the system to display a new card. *Id.* The card-feed also includes a "like" button that records an indication that the current user is interested in the user whose card is being displayed. *Id.* at ¶ 0052.

The Examiner has relied on *Janssens* at paragraphs 64 and 95 as allegedly disclosing enabling communication between the first user and the second user in response to determining that the second user has expressed approval for the first user. These paragraphs, however, merely disclose updating a user's contact list or chat list. For example, paragraph 64 discloses that when a user links with another user (e.g., where both users indicated they liked the other user), a small image (e.g., a thumbnail picture) of the linked user previously or newly presented in the chat list or elsewhere may be highlighted or otherwise identified on the user interface (e.g., relative to images of other users in the chat list that are not a link). Thus, upon forming a link the user's chat list images are updated. There is no disclosure in paragraph 64 of *Janssens* of enabling communication in the manner claimed. In fact, as shown above, *Janssens* teaches away from the claim limitations identified above because it discloses that users exist in the chat list (and communicate with each other) before they are linked. Paragraph 95 of *Janssens* merely discloses that a contact may be automatically added

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

12

to a given user's contact list when two users are linked and suggests that users could communicate before being linked.

Other portions of *Janssens* previously cited by the Examiner are also deficient. Paragraphs 52-53 of *Janssens* suggests that users can freely communicate unless they are prevented once a user requests. This teaches away from the claimed manner of enabling communication as users are prevented from communicating until the conditions specified in the claim are met. *See also id.* at ¶ 5. Paragraph 56 of *Janssens*, which addresses communication in the system, fails to disclose the claimed manner of enabling communication. Rather, consistent with the teachings of *Janssens*, it merely discloses users setting preferences but otherwise open communication between users of the system. Paragraph 178 addresses a "speed dating" situation where users who have expressed no preference for other users are forced to chat with another for a specified period of time. This again teaches away from the claimed manner of enabling communication which require a particular set of factors to allow for communication between users.

*Kulas* discloses controls in a graphical user interface where a user's touch or swipe of the control indicates the user's state of mind. *Kulas* at ¶ 0005. The cited portions of *Kulas* do not address when communication is allowed between users. As such, the cited portions of *Kuals* do not remedy the deficiencies of *Janssens*.

For at least these reasons, the proposed *Janssens-Kulas* combination at least fails to disclose, teach or suggest the above cited element of Claim 23. Thus, the proposed combination fails to disclose, teach or suggest each element of independent Claim 23. Accordingly, Claim 23 and each of its dependent claims are in condition for allowance.

For analogous reasons, Applicants respectfully submit that Claim 30 is patentable over the cited art used in its rejection and request that the rejection of this claim be withdrawn. The elements of Claim 30 are not shown by *Janssens* or *Kulas* for reasons analogous to those discussed above regarding Claim 23. Thus, for at least the reasons discussed with respect to Claim 23, Applicants respectfully request allowance of Claim 30 and its dependent claims.

For analogous reasons, Applicants respectfully submit that Claim 37 is patentable over the cited art used in its rejection and request that the rejection of this claim be withdrawn. The elements of Claim 37 are not shown by *Janssens* or *Kulas*, for reasons

ATTORNEY DOCKET NO.:                                        PATENT APPLICATION
076533.0146                                                            14/059,192

13

analogous to those discussed above regarding Claim 23.   Thus, for at least the reasons discussed with respect to Claim 23, Applicants respectfully request that Claim 37 and its dependent claims be allowed.

ATTORNEY DOCKET NO.:
076533.0146

PATENT APPLICATION
14/059,192

14

## **CONCLUSION**

Applicants have made an earnest attempt to place this case in condition for allowance. For the foregoing reasons and for other reasons clearly apparent, Applicants respectfully request reconsideration and full allowance of all pending claims.

If the Examiner feels that a telephone conference would advance prosecution of this application in any manner, the Examiner is invited to contact Roshan Mansinghani, Attorney for Applicants, at the Examiner's convenience at (214) 953-6737.

As indicated on the accompanying RCE Transmittal form, the Commissioner is authorized to charge the amount of $1,700.00 for the RCE fee to Deposit Account No. 02-0384 of BAKER BOTTS L.L.P. Although Applicants believe no other fees are due, the Commissioner is authorized to charge any necessary additional fees and credit any overpayments to Deposit Account No. 02-0384 of BAKER BOTTS L.L.P.

Respectfully submitted,

BAKER BOTTS L.L.P.
Attorneys for Applicants

Roshan S. Mansinghani
Reg. No. 62,429
(214) 953-6737

Date: 5/26/2016

**Correspondence Address:**
**Customer No:    106095**

25742049

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 30732483 |
| **Application Number:** | 14059192 |
| **International Application Number:** | |
| **Confirmation Number:** | 1044 |
| **Title of Invention:** | Matching Process System And Method |
| **First Named Inventor/Applicant Name:** | Sean  Rad |
| **Customer Number:** | 5073 |
| **Filer:** | Chad Christian Walters/Karen Langford |
| **Filer Authorized By:** | Chad Christian Walters |
| **Attorney Docket Number:** | 083523.0118 |
| **Receipt Date:** | 23-OCT-2017 |
| **Filing Date:** | 21-OCT-2013 |
| **Time Stamp:** | 16:16:03 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Certificate of Correction | 118coc.PDF | 1575677 <br> d7072d0d86183d915146a55853dd88142 0b7bff | no | 34 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 1575677 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/059,192 | 08/15/2017 | 9733811 | 083523.0118 | 1044 |

5073     7590     07/26/2017
BAKER BOTTS L.L.P.
2001 ROSS AVENUE
SUITE 700
DALLAS, TX 75201-2980

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 121 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Sean Rad, Los Angeles, CA;
TINDER INC., West Hollywood, CA;
Todd M. Carrico, Melissa, TX;
Kenneth B Hoskins, Plano, TX;
James C. Stone, Addison, TX;
Jonathan Badeen, North Hollywood, CA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or <u>Fax</u>   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

5073      7590      06/21/2017
BAKER BOTTS L.L.P.
2001 ROSS AVENUE
SUITE 700
DALLAS, TX 75201-2980

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/059,192 | 10/21/2013 | Sean Rad | 083523.0118 | 1044 |

TITLE OF INVENTION: Matching Process System And Method

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 09/21/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHOI, YUK TING | 2153 | 707-005000 |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).<br>☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.<br>☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.** | 2. For printing on the patent front page, list<br>(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,<br>(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed. | 1 Baker Botts L.L.P.<br><br>2 _____<br><br>3 _____ |

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

Tinder, Inc.

(B) RESIDENCE: (CITY and STATE or COUNTRY)

West Hollywood, California

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☒ Corporation or other private group entity   ☐ Government

| 4a. The following fee(s) are submitted:<br>☒ Issue Fee<br>☐ Publication Fee (No small entity discount permitted)<br>☐ Advance Order - # of Copies _____ | 4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**<br>☐ A check is enclosed.<br>☐ Payment by credit card. Form PTO-2038 is attached.<br>☒ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number  02-0384  (enclose an extra copy of this form). |

| 5. **Change in Entity Status** (from status indicated above)<br>☐ Applicant certifying micro entity status. See 37 CFR 1.29<br>☐ Applicant asserting small entity status. See 37 CFR 1.27<br>☐ Applicant changing to regular undiscounted fee status. | NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.<br>NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.<br>NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable. |

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature   /Chad C. Walters/ _____   Date   July 12, 2017 _____

Typed or printed name   Chad C. Walters _____   Registration No. ____48,022____

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

ATTORNEY DOCKET NO.                                   PATENT APPLICATION
083523.0118                                                      14/059,192

1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:          Sean Rad et al.

Serial No.:                    14/059,192

Filed:                         October 21, 2013

Group No.:                     2153

Examiner:                      Yuk Ting Choi

Notice of Allowance Mailed: June 21, 2017

Confirmation No.:              1044

Title:                         MATCHING PROCESS SYSTEM AND METHOD

**Mail Stop Issue Fee**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA   22313-1450

Dear Sir:

<u>**RESPONSE TO REASONS FOR ALLOWANCE**</u>

Applicant appreciates the Examiner's allowance of Claims 23, 25, 26, 30, 32, 33, 37, 39 and 45.  Pursuant to 37 C.F.R. § 1.104, Applicant respectfully issues a statement commenting on the Examiner's reasons for allowance.  Applicant respectfully disagrees with the Examiner's reasons for allowance to the extent that they are inconsistent with applicable case law, statutes, and regulations.  Furthermore, Applicant does not admit to any characterization or limitation of the claims or to any characterization of a reference by the Examiner, particularly any that are inconsistent with the language of the claims considered in their entirety and including all of their constituent limitations.

Respectfully submitted,
BAKER BOTTS L.L.P.
Attorneys for Applicant

/Chad C. Walters/

Chad C. Walters
Registration No. 48,022

Date:  July 12, 2017
**CUSTOMER NO. 05073**

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14059192 |
| **Filing Date:** | 21-Oct-2013 |
| **Title of Invention:** | Matching Process System And Method |
| **First Named Inventor/Applicant Name:** | Sean Rad |
| **Filer:** | Chad Christian Walters/Karen Langford |
| **Attorney Docket Number:** | 083523.0118 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 1501 | 1 | 960 | 960 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **960** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29757933 |
| **Application Number:** | 14059192 |
| **International Application Number:** | |
| **Confirmation Number:** | 1044 |
| **Title of Invention:** | Matching Process System And Method |
| **First Named Inventor/Applicant Name:** | Sean  Rad |
| **Customer Number:** | 5073 |
| **Filer:** | Chad Christian Walters/Karen Langford |
| **Filer Authorized By:** | Chad Christian Walters |
| **Attorney Docket Number:** | 083523.0118 |
| **Receipt Date:** | 12-JUL-2017 |
| **Filing Date:** | 21-OCT-2013 |
| **Time Stamp:** | 12:18:32 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $960 |
| RAM confirmation Number | 071217INTEFSW00009939020384 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 118if.PDF | 133579<br><br>2bac2bdeae10d890bdd39710a401982a3d985492 | yes | 2 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | Document Description | Start | | End |
| | Issue Fee Payment (PTO-85B) | 1 | | 1 |
| | Post Allowance Communication - Incoming | 2 | | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30310<br><br>6b6895f1133a64c2a6403aa3049c5864ffabd896 | no | 2 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 163889 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 5073 7590 06/21/2017 | | EXAMINER |
| BAKER BOTTS L.L.P. | | CHOI, YUK TING |
| 2001 ROSS AVENUE | | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2153 | |

SUITE 700
DALLAS, TX 75201-2980

DATE MAILED: 06/21/2017

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/059,192 | 10/21/2013 | Sean Rad | 083523.0118 | 1044 |

TITLE OF INVENTION: Matching Process System And Method

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 09/21/2017 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**      Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

or **Fax**   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

```
5073        7590        06/21/2017
BAKER BOTTS L.L.P.
2001 ROSS AVENUE
SUITE 700
DALLAS, TX 75201-2980
```

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

|  |
|---|
| (Depositor's name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/059,192 | 10/21/2013 | Sean Rad | 083523.0118 | 1044 |

TITLE OF INVENTION: Matching Process System And Method

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 09/21/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| CHOI, YUK TING | 2153 | 707-005000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and State OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____      Date _____

Typed or printed name _____      Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/059,192 | 10/21/2013 | Sean Rad | 083523.0118 | 1044 |

5073        7590        06/21/2017

BAKER BOTTS L.L.P.
2001 ROSS AVENUE
SUITE 700
DALLAS, TX 75201-2980

| EXAMINER |
|---|
| CHOI, YUK TING |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2153 | |

DATE MAILED: 06/21/2017

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| ***Examiner-Initiated Interview Summary*** | Application No. 14/059,192 | Applicant(s) RAD ET AL. | |
|---|---|---|---|
| | Examiner YUK TING CHOI | Art Unit 2153 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *YUK TING CHOI*.                                        (3) _____.

(2) *CHAD C. Walters*.                                     (4) _____.

Date of Interview: *08 June 2017*.

Type:   ☒ Telephonic   ☐ Video Conference
        ☐ Personal [copy given to: ☐ applicant   ☒ applicant's representative]

Exhibit shown or demonstration conducted:   ☐ Yes   ☒ No.
If Yes, brief description: _____.

Issues Discussed   ☐101 ☐112 ☐102 ☒103 ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: *23*.

Identification of prior art discussed: *NONE*.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

*The Examiner suggested Applicant to amend claims 23, 30 and 37 to narrow the matches are retrieved from a plurality of user online-dating profiles to expedite the prosecution process. Also, the Examiner also suggested Applicant to call OPAP (800-786-9199) to correct the inventorship of this application.  Applicant agreed and authorized the Examiner to make changes through the Examiner's Amendment..*

**Applicant recordation instructions**:  It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /YUK TING CHOI/ Primary Examiner, Art Unit 2153 | |
|---|---|

| *Notice of Allowability* | Application No. 14/059,192 | Applicant(s) RAD ET AL. | |
|---|---|---|---|
| | Examiner YUK TING CHOI | Art Unit 2153 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *Non-Final Rejection mailed on 02/28/2017.*
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *23,25,26,30,32,33,37,39 and 40.* As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All   b) ☐ Some   *c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☒ Interview Summary (PTO-413), Paper No./Mail Date *20170608* .

5. ☒ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/YUK TING CHOI/
Primary Examiner, Art Unit 2153

Application/Control Number: 14/059,192                                        Page 2
Art Unit: 2153

## DETAILED ACTION

1.      This office action is in response to applicant's communication filed on 05/30/2017 in response to PTO Office Action mailed on 02/28/2017.

2.      In response to the previous Office Action, no claims have been amended, added or canceled.  A declaration of prior Invention under 37 CFR 1.31 filed on 5/30/2017 has been considered.  The inventor Johnathan Baden who signed the declaration of prior Invention was not one of the original inventors listed in the application.  Applicant has paid the fee set forth in 37 CFR. 1.17 (i) on 5/30/2017 and 37 CFR. 1.17 (d) on 06/07/2017 and filed a request under Rule 48 correcting inventorship on 06/07/2017. The inventor Mr. Jonathan Badeen has been updated in the system.

## EXAMINER'S AMENDMENT

3.      An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312.  To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

        Authorization for this examiner's amendment was given in a telephone interview with Chad C. Walters on 06/07/2017.  During the interview, the Examiner suggested Applicant to amend claims 23, 30 and 37 to narrow the matches are retrieved from a plurality of user online-dating profiles to expedite the prosecution process. Also, the Examiner also suggested Applicant to call OPAP (800-786-9199) to correct the inventorship

Application/Control Number: 14/059,192                                          Page 3
Art Unit: 2153

of this application.  Applicant agreed and authorized the Examiner to make changes through the
Examiner's Amendment.


        The application has been amended as follows:


**In the claim:**

**Claim 23**. (Currently Amended)  A computer implemented method of profile

 matching, comprising:

        electronically receiving a plurality of user online-dating profiles, each profile

comprising traits of a respective user and associated with a social networking platform;

        electronically receiving a first request for matching, the first request electronically

submitted by a first user using a first electronic device;

        determining a set of potential matches from the plurality of user online-dating profiles

for the first user in response to receiving the first request;

        causing the display of a graphical representation of a first potential match of the set of

potential matches to the first user on a graphical user interface of the first electronic

device, the first potential match corresponding to a second user;

        determining that the first user expressed a positive preference indication regarding the

first potential match at least by determining that the first user performed a first swiping

gesture associated with the graphical representation of the first potential match on the

graphical user interface;

Application/Control Number: 14/059,192                                    Page 4
Art Unit: 2153

in response to determining that the first user expressed the positive preference indication regarding the first potential match, automatically causing the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determining that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determining to enable initial communication between the first user and the second user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to determining to enable initial communication between the first user and the second user, causing the graphical user interface to display to the first user the graphical representation of the first potential match;

determining that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

Application/Control Number: 14/059,192                               Page 5
Art Unit: 2153

preventing communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determining that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

preventing communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.

30.   (Currently Amended)  A non-transitory computer-readable medium comprising instructions that, when executed by a processor, are configured to:

electronically receive a plurality of user online-dating profiles, each profile comprising traits of a respective user and associated with a social networking platform;

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device;

determine a set of potential matches from the plurality of user online-dating profiles for the first user in response to receiving the first request;

Application/Control Number: 14/059,192                                    Page 6
Art Unit: 2153

  cause the display of a graphical representation of a first potential match of the set of

potential matches to the first user on a graphical user interface of the first electronic

device, the first potential match corresponding to a second user;

  determine that the first user expressed a positive preference indication regarding the

first potential match at least by determining that the first user performed a first swiping

gesture associated with the graphical representation of the first potential match on the

graphical user interface;

  in response to the determination that the first user expressed the positive preference

indication regarding the first potential match, automatically cause the graphical user

interface to display a graphical representation of a second potential match of the set of

potential matches instead of the graphical representation of the first potential match;

  determine that the second user has expressed a positive preference indication

regarding the first user after determining that the first user expressed the positive

preference indication regarding the first potential match;

  determine to enable initial communication between the first user and the second user

in response to the determination that both the first user has expressed the positive

preference indication regarding the second user and the second user has expressed the

positive preference indication regarding the first user;

  in response to the determination to enable initial communication between the first user

and the second user, cause the graphical user interface to display to the first user the

graphical representation of the first potential match;

Application/Control Number: 14/059,192                                    Page 7
Art Unit: 2153

determine that the first user expressed a negative preference indication regarding a

third potential match of the set of potential matches at least by determining that the first

user performed a second swiping gesture associated with a graphical representation of

the third potential match on the graphical user interface, the second swiping gesture

different than the first swiping gesture, the third potential match corresponding to a third

user;

prevent communication between the first user and the third user after determining that

the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a

fourth potential match of the set of potential matches at least by determining that the

first user performed the first swiping gesture associated with a graphical representation

of the fourth potential match on the graphical user interface, the fourth potential match

corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining that

the fourth user has expressed a negative preference indication regarding the first user.

37.   (Currently Amended)  A system for profile matching, comprising:

an interface operable to:

electronically receive a plurality of user online-dating profiles, each profile comprising

traits of a respective user and associated with a social networking platform;

electronically receive a first request for matching, the first request electronically

submitted by a first user using a first electronic device; and

Application/Control Number: 14/059,192                                    Page 8
Art Unit: 2153

a processor coupled to the interface and operable to:

determine a set of potential matches from the plurality of user online-dating profiles for the first user in response to receiving the first request;

cause the interface to display a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the interface has received a positive preference indication from the first user regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

automatically cause the interface to remove the presentation of the first potential match from the graphical user interface in response to detecting the gesture and cause the interface to present, on the graphical user interface, a second potential match of the set of potential matches to the first user;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match; and

determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable initial communication between the first user

and the second user, cause the graphical user interface to display to the first user the

graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a

third potential match of the set of potential matches at least by determining that the first

user performed a second swiping gesture associated with a graphical representation of

the third potential match on the graphical user interface, the second swiping gesture

different than the first swiping gesture, the third potential match corresponding to a third

user;

prevent communication between the first user and the third user after determining that

the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a

fourth potential match of the set of potential matches at least by determining that the

first user performed the first swiping gesture associated with a graphical representation

of the fourth potential match on the graphical user interface, the fourth potential match

corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining

that the fourth user has expressed a negative preference indication regarding the first

user.

Application/Control Number: 14/059,192                                                           Page 10
Art Unit: 2153

## Reason for Allowance

4.      The following is an examiner's statement of reasons for allowance:

A declaration of prior Invention under 37 CFR 1.31 filed on 5/30/2017 has been

considered.  Applicant submitted the claimed technology was invented prior to

08/06/2012, which has priority date earlier than the primary reference: Janssens (US

2014/0040368 A1).  The Examiner has submitted the declaration to TQAS 2100

Brannon Smith and confirmed the declaration has an actual reduction to practice, and it

antedates the Janseens reference. However, Applicant has to correct the inventorship

of this application to add Johnathan Baden, who signed the declaration of prior

Invention.  On 06/07/2017 Applicant has corrected and updated the inventorship of the

current application, the Janssens reference and the 35 USC 103 rejections in the Non-

Final Rejection mailed on 02/28/2017 rejecting claims 23, 25, 26, 30, 32, 33, 35, 37, 39

and 40 are hereby withdrawn.

        Any inquiry concerning this communication or earlier communications from the

examiner should be directed to YUK TING CHOI whose telephone number is (571)270-

1637.  The examiner can normally be reached on 8:30 AM - 5:30 PM EST.

        Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Heather Herndon can be reached on (571) 272-4136.  The fax phone

Application/Control Number: 14/059,192                                      Page 11
Art Unit: 2153

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/YUK TING CHOI/
Primary Examiner, Art Unit 2153

| ***Examiner-Initiated Interview Summary*** | **Application No.** 14/059,192 | **Applicant(s)** RAD ET AL. | |
|---|---|---|---|
| | **Examiner** YUK TING CHOI | **Art Unit** 2153 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *YUK TING CHOI*.                                    (3)_____.

(2) *CHAD C. Walters*.                                  (4)_____.

Date of Interview: *08 June 2017*.

Type:    ☒ Telephonic    ☐ Video Conference
         ☐ Personal [copy given to: ☐ applicant    ☒ applicant's representative]

Exhibit shown or demonstration conducted:    ☐ Yes    ☒ No.
    If Yes, brief description: _____.

Issues Discussed    ☐101  ☐112  ☐102  ☒103  ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: *23*.

Identification of prior art discussed: *NONE*.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

   *The Examiner suggested Applicant to amend claims 23, 30 and 37 to narrow the matches are retrieved from a plurality of user online-dating profiles to expedite the prosecution process. Also, the Examiner also suggested Applicant to call OPAP (800-786-9199) to correct the inventorship of this application.  Applicant agreed and authorized the Examiner to make changes through the Examiner's Amendment..*

**Applicant recordation instructions**:  It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /YUK TING CHOI/ Primary Examiner, Art Unit 2153 | |
|---|---|

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14059192 | RAD ET AL. |
| | **Examiner** | **Art Unit** |
| | YUK TING CHOI | 2164 |

**CPC**

| Symbol | | | Type | Version |
|---|---|---|---|---|
| G06F | 3 | 04842 | F | 2013-01-01 |
| G06F | 17 | 30554 | I | 2013-01-01 |
| G06F | 17 | 30657 | I | 2013-01-01 |
| G06Q | 10 | 10 | I | 2013-01-01 |
| G06Q | 30 | 02 | I | 2013-01-01 |
| G06Q | 50 | 10 | I | 2013-01-01 |
| G06Q | 50 | 01 | I | 2013-01-01 |
| G06F | 3 | 0482 | I | 2013-01-01 |
| G06F | 3 | 0488 | I | 2013-01-01 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**CPC Combination Sets**

| Symbol | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| | | 9 | |
| (Assistant Examiner) | (Date) | | |
| /YUK TING CHOI/ Primary Examiner.Art Unit 2164 | 06/08/2017 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 23 | Figure 6 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14059192 | RAD ET AL. |
| | Examiner | Art Unit |
| | YUK TING CHOI | 2164 |

| US ORIGINAL CLASSIFICATION | | INTERNATIONAL CLASSIFICATION | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | **NON-CLAIMED** | | | | | | |
| | | G | 0 | 6 | F | 17 / 30 (2006.01.01) | | | | | | | |

| CROSS REFERENCE(S) | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 9 | |
| /YUK TING CHOI/ Primary Examiner.Art Unit 2164 | 06/08/2017 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 23 | Figure 6 |

| *Issue Classification* | Application/Control No. | | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | 14059192 | | RAD ET AL. |
| | **Examiner** | | **Art Unit** |
| | YUK TING CHOI | | 2164 |

| ☐ | **Claims renumbered in the same order as presented by applicant** | ☐ CPA | ☐ T.D. | ☐ R.1.47 |

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 17 | 6 | 33 | | | | | | | | | | |
| | 2 | | 18 | | 34 | | | | | | | | | | |
| | 3 | | 19 | | 35 | | | | | | | | | | |
| | 4 | | 20 | | 36 | | | | | | | | | | |
| | 5 | | 21 | 7 | 37 | | | | | | | | | | |
| | 6 | | 22 | | 38 | | | | | | | | | | |
| | 7 | 1 | 23 | 8 | 39 | | | | | | | | | | |
| | 8 | | 24 | 9 | 40 | | | | | | | | | | |
| | 9 | 2 | 25 | | 41 | | | | | | | | | | |
| | 10 | 3 | 26 | | 42 | | | | | | | | | | |
| | 11 | | 27 | | 43 | | | | | | | | | | |
| | 12 | | 28 | | | | | | | | | | | | |
| | 13 | | 29 | | | | | | | | | | | | |
| | 14 | 4 | 30 | | | | | | | | | | | | |
| | 15 | | 31 | | | | | | | | | | | | |
| | 16 | 5 | 32 | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| | | 9 | |
| (Assistant Examiner) | (Date) | | |
| /YUK TING CHOI/ Primary Examiner.Art Unit 2164 | 06/08/2017 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 23 | Figure 6 |

U.S. Patent and Trademark Office

Part of Paper No.

| *Search Notes*  | Application/Control No. 14059192 | Applicant(s)/Patent Under Reexamination RAD ET AL. |
|---|---|---|
| | **Examiner** YUK TING CHOI | **Art Unit** 2164 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| G06F17/30867 OR G06F17/3053 OR G06F17/30386 | 6/8/2017 | YC |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| G06F17/30867 OR G06F17/3053 OR G06F17/30386 and east text search, see attached search history | 6/8/2017 | YC |
| East text search, see attached search history | 6/8/2017 | YC |
| Assignee and inventor search | 6/8/2017 | YC |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | G06F17/30867 OR G06F17/3053 OR G06F17/30386 and East Text search | 6/8/2017 | YC |
| | Assignee and inventor search | 6/8/2017 | YC |

| | /YUK TING CHOI/ Primary Examiner.Art Unit 2164 |
|---|---|

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L11 | 0 | (swip$3 near10 direction) same (approv$3 like disappro$5 dislike) and profil$3 and (tinder match).as. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/08 15:00 |
| L13 | 135 | (tinder ("match.com")).as. | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/08 15:00 |
| L14 | 1 | (tinder ("match.com")).as. and profil$3 and swip$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/08 15:00 |
| L8 | 211 | (start$3 initiat$3 establish$3) near10 (communication message chat contact) same (indicat$3 select$3 swip$4) near10 (positive up left right upward interest$3 love$3 like$3) and (indicat$3 select$3 swip$4) near10 (negative dislike$3 "no" ("not" near4 (interest$3 love$3 lik$3) down left right downard)) and (match$3) near10 (profile$3 users) and (matchmak$3 love dating ) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/08 14:58 |
| L9 | 107 | (swip$3 near10 direction) same (approv$3 like disappro$5 dislike) and profil$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/08 14:58 |
| L7 | 176 | (start$3 initiat$3 establish$3 open) near10 (communication message chat contact) same (indicat$3 select$3 swip$4) near10 (positive up left right upward interest$3 love$3 like$3) and (indicat$3 select$3 swip$4) near10 (negative dislike$3 ("not" near4 (interest$3 love$3 lik$3)) down left right downard) and (match$3) near10 (profile$3 users) and (matchmak$3 dating ) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/08 14:57 |
| L2 | 32 | ((sean near5 rad) (johnathan near5 badeen)(todd near5 carrico)(kenneth near5 hoskin) (james near5 stone)).in. | US-PGPUB; USPAT; USOCR; | OR | OFF | 2017/06/08 14:53 |

| | | and match$3 near10 profil$3 | FPRS; EPO; JPO; DERWENT; IBM_TDB | | | |
|---|---|---|---|---|---|---|
| L1 | 54 | (user) near20 (dislike$3 disapprov$3 negative) near20 (matches profiles) and (avoid$3 prevent$3) near10 (communication connection contact) and social | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/08 14:52 |
| S203 | 2 | "14059192" and social near5 platform | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/05 15:50 |
| S201 | 2 | "14059192" and dating | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/05 15:49 |
| S202 | 2 | "14059192" and network near5 platform | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/06/05 15:49 |

**6/8/2017 3:07:44 PM**
**C:\Users\cchoi\Documents\EAST\Workspaces\14059192_matching_process_system_method.wsp**



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/059,192 | 10/21/2013 | Sean Rad | 083523.0118 |

**CONFIRMATION NO. 1044**

5073
BAKER BOTTS L.L.P.
2001 ROSS AVENUE
SUITE 700
DALLAS, TX 75201-2980

**37 CFR 1.48 ACKNOWLEDGEMENT LETTER**


*OC000000092097902*

Date Mailed: 06/15/2017

## NOTICE OF ACCEPTANCE OF REQUEST UNDER 37 CFR 1.48(a)

This is in response to the applicant's request under 37 CFR 1.48(a) submitted on 06/07/2017.

The request under 37 CFR 1.48(a) to correct the inventorship, to correct or update the name of an inventor, or to correct the order of names of joint inventors is accepted.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/byemane/
_____



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/059,192 | 10/21/2013 | 2153 | 1820 | 083523.0118 | 21 | 3 |

**CONFIRMATION NO. 1044**
**UPDATED FILING RECEIPT**

5073
BAKER BOTTS L.L.P.
2001 ROSS AVENUE
SUITE 700
DALLAS, TX 75201-2980


OC000000092097901

Date Mailed: 06/15/2017

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Sean Rad, Los Angeles, CA;
Todd M. Carrico, Melissa, TX;
Kenneth B Hoskins, Plano, TX;
James C. Stone, Addison, TX;
Jonathan Badeen, North Hollywood, CA;

**Applicant(s)**

TINDER INC., West Hollywood, CA;

**Power of Attorney:** The patent practitioners associated with Customer Number 05073

**Domestic Priority data as claimed by applicant**

This appln claims benefit of 61/793,866 03/15/2013
and is a CIP of 12/339,301 12/19/2008 PAT 8566327

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** No

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

page 1 of 3

**Projected Publication Date:** Not Applicable

**Non-Publication Request:** No

**Early Publication Request:** No
**Title**

      Matching Process System And Method

**Preliminary Class**

      707

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** Yes

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                USSN 14/059,192

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:           Sean RAD et al.

Serial No.:                     14/059,192

Filing Date:                    October 21, 2013

Group Art Unit:                 2153

Confirmation No.:               1044

Examiner:                       Yuk Ting Choi

Title:                          MATCHING PROCESS SYSTEM AND METHOD

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## CORRECTION OF INVENTORSHIP AFTER FIRST ACTION

On December 9, 2016, Applicant filed a Declaration and corrected Application Data Sheet adding new inventor, Jonathan Badeen.  On May 30, 2017, Applicant submitted the $140.00 processing surcharge, but has yet to submit the additional required fee of $600.00 under 37 C.F.R. 1.17(d).  The Commissioner is hereby authorized to charge the $600.00 fee to correct inventorship after first action and, to the extent necessary, any necessary additional fees and credit any overpayments to Deposit Account No. 02-0384 of BAKER BOTTS L.L.P.  Applicant respectfully requests that inventor, Jonathan Badeen, be added.

Respectfully submitted,

BAKER BOTTS L.L.P.
Attorneys for Applicants

Chad C. Walters
Reg. No. 48,022
(214) 953-6511

Date:   June 7, 2017
**Correspondence Address:**
**Customer No:    05073**

35617488

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14059192 |
| **Filing Date:** | 21-Oct-2013 |
| **Title of Invention:** | Matching Process System And Method |
| **First Named Inventor/Applicant Name:** | Sean Rad |
| **Filer:** | Chad Christian Walters/Wendy Flottman |
| **Attorney Docket Number:** | 083523.0118 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| CORRECTION OF INVENTORSHIP ON MERITS | 1819 | 1 | 600 | 600 |
| **Total in USD ($)** | | | | **600** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29424871 |
| **Application Number:** | 14059192 |
| **International Application Number:** | |
| **Confirmation Number:** | 1044 |
| **Title of Invention:** | Matching Process System And Method |
| **First Named Inventor/Applicant Name:** | Sean  Rad |
| **Customer Number:** | 5073 |
| **Filer:** | Chad Christian Walters/Wendy Flottman |
| **Filer Authorized By:** | Chad Christian Walters |
| **Attorney Docket Number:** | 083523.0118 |
| **Receipt Date:** | 07-JUN-2017 |
| **Filing Date:** | 21-OCT-2013 |
| **Time Stamp:** | 15:39:34 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $600 |
| RAM confirmation Number | 060817INTEFSW00002466020384 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Miscellaneous Incoming Letter | Correction_of_inventorship.pdf | 78083<br><br>e8a3442d65f5cd92abb5cacce237bb5b8a2973f2 | no | 1 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30132<br><br>7d09fc64a5a2fa083ec236b3a52e17ba5c14baa5 | no | 2 |

**Warnings:**

**Information:**

| | | | Total Files Size (in bytes): | 108215 | |
|---|---|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Document code:  WFEE

United States Patent and Trademark Office
Sales Receipt for Accounting Date:  06/09/2017

VVAN11       SALE  #00000018      Mailroom Dt:  06/07/2017      020384    14059192
                        01      FC : 1830                 140.00  DA

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14059192 |
| **Filing Date:** | 21-Oct-2013 |
| **Title of Invention:** | Matching Process System And Method |
| **First Named Inventor/Applicant Name:** | Sean Rad |
| **Filer:** | Chad Christian Walters/Janet Daddona |
| **Attorney Docket Number:** | 083523.0118 |

Filed as Large Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| LATE FILING FEE FOR OATH OR DECLARATION | 1051 | 1 | 140 | 140 |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **140** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29340199 |
| **Application Number:** | 14059192 |
| **International Application Number:** | |
| **Confirmation Number:** | 1044 |
| **Title of Invention:** | Matching Process System And Method |
| **First Named Inventor/Applicant Name:** | Sean  Rad |
| **Customer Number:** | 5073 |
| **Filer:** | Chad Christian Walters/Janet Daddona |
| **Filer Authorized By:** | Chad Christian Walters |
| **Attorney Docket Number:** | 083523.0118 |
| **Receipt Date:** | 30-MAY-2017 |
| **Filing Date:** | 21-OCT-2013 |
| **Time Stamp:** | 14:36:08 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $140 |
| RAM confirmation Number | 053117INTEFSW00000995020384 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Fee Worksheet (SB06) | fee-info.pdf | 30156<br><br>657454f2eabecc30f664c215621bdc7911e2df9fd | no | 2 |

**Warnings:**

**Information:**

| | | |
|---|---|---|
| **Total Files Size (in bytes):** | | 30156 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

ATTORNEY DOCKET NO.:                          PATENT APPLICATION
083523.0118                                          USSN 14/059,192

1

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of:         Sean RAD et al.

Serial No.:                   14/059,192

Filing Date:                  October 21, 2013

Group Art Unit:               2153

Confirmation No.:             1044

Examiner:                     Yuk Ting Choi

Title:                        MATCHING PROCESS SYSTEM AND METHOD

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

**RESPONSE TO OFFICE ACTION PURSUANT TO 37 C.F.R. § 1.111**

In response to the Office Action dated February 28, 2017 (the "Office Action"),
Applicants respectfully request the Examiner to reconsider the rejection of the claims in view
of the following remarks.

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                             USSN 14/059,192

2

**In the Claims**:

For the convenience of the Examiner, all pending claims are set forth below, whether or not an amendment is made.  Please amend the claims as follows:

1.-22.  (Canceled)

23.    (Previously Presented)  A computer implemented method of profile matching, comprising:

electronically receiving a first request for matching, the first request electronically submitted by a first user using a first electronic device;

determining a set of potential matches for the first user in response to receiving the first request;

causing the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determining that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

in response to determining that the first user expressed the positive preference indication regarding the first potential match, automatically causing the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determining that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determining to enable initial communication between the first user and the second user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
USSN 14/059,192

3

in response to determining to enable initial communication between the first user and the second user, causing the graphical user interface to display to the first user the graphical representation of the first potential match;

determining that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

preventing communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determining that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

preventing communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.


24.     (Canceled)


25.     (Previously Presented)  The method of Claim 23, further comprising:

in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, causing the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user.

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
USSN 14/059,192

4

26.     (Previously Presented)  The method of Claim 23, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

27.     (Canceled)

28.     (Canceled)

29.     (Canceled)

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                    USSN 14/059,192

5

30.    (Previously Presented)    A non-transitory computer-readable medium comprising instructions that, when executed by a processor, are configured to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device;

determine a set of potential matches for the first user in response to receiving the first request;

cause the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

in response to the determination that the first user expressed the positive preference indication regarding the first potential match, automatically cause the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable initial communication between the first user and the second user, cause the graphical user interface to display to the first user the graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                    USSN 14/059,192

6

potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

prevent communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.

31.    (Canceled)

32.    (Previously Presented)   The medium of Claim 30, further comprising instructions configured to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user.

33.    (Previously Presented)  The medium of Claim 30, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

34.    (Canceled)

35.    (Canceled)

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
USSN 14/059,192

7

36.    (Canceled)

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                      USSN 14/059,192

8

37.      (Previously Presented)  A system for profile matching, comprising:

an interface operable to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device; and

a processor coupled to the interface and operable to:

determine a set of potential matches for the first user in response to receiving the first request;

cause the interface to display a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the interface has received a positive preference indication from the first user regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

automatically cause the interface to remove the presentation of the first potential match from the graphical user interface in response to detecting the gesture and cause the interface to present, on the graphical user interface, a second potential match of the set of potential matches to the first user;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match; and

determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable initial communication between the first user and the second user, cause the graphical user interface to display to the first user the graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                      USSN 14/059,192

9

potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

prevent communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.

38.    (Canceled)

39.    (Previously Presented)   The system of Claim 37, the processor further operable to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user.

40.    (Previously Presented)  The system of Claim 37, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

41.    (Canceled)

42.    (Canceled)

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
USSN 14/059,192

10

43.     (Canceled)

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                             USSN 14/059,192

11

## REMARKS

This Application has been carefully reviewed in light of the Office Action. Applicants appreciate the Examiner's consideration of the Application. In order to advance prosecution of this Application, Applicants have responded to each notation by the Examiner. Applicants respectfully request reconsideration and favorable action in this case.

### 35 U.S.C. § 103 Rejections

The Office Action rejects Claims 23, 25-26, 30, 32-33, 35, 37, and 39-40 under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Publication No. 2014/0040368 A1 by Janssens ("*Janssens*") in view of U.S. Patent Publication No. 2008/0196094 A1 by Benschop et al. ("*Benschop*"). Applicants respectfully traverse these rejections.

### *The claims predate* **Janssens.**

The claimed technology was invented prior to August 6, 2012, which is the priority date of *Janssens*. As evidence, Applicant submits the declaration of inventor Jonathan Badeen and its accompanying exhibits. Applicants previously added Mr. Badeen as an inventor and have since paid the associated fee. Thus, pursuant to MPEP § 715, the Section 103 rejection using *Janssens* is overcome. Applicant respectfully requests reconsideration and allowance of all pending claims.

35394189

ATTORNEY DOCKET NO.:                                        PATENT APPLICATION
083523.0118                                                      USSN 14/059,192

12

## CONCLUSION

Applicant has made an earnest attempt to place this case in condition for allowance. For the foregoing reasons and for other reasons clearly apparent, Applicant respectfully request reconsideration and full allowance of all pending claims.

If the Examiner feels that a telephone conference would advance prosecution of this application in any manner, the Examiner is invited to contact Chad Walters, Attorney for Applicant, at the Examiner's convenience at (214) 953-6511.

Although Applicants believe no fees are currently due, the Commissioner is authorized to charge any necessary additional fees and credit any overpayments to Deposit Account No. 02-0384 of BAKER BOTTS L.L.P.

Respectfully submitted,

BAKER BOTTS L.L.P.
Attorneys for Applicants

Chad C. Walters
Reg. No. 48,022
(214) 953-6511

Date:   May 30, 2017

**Correspondence Address:**
**Customer No:    05073**

35394189

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                        14/059,192


## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE


In re Application of:          Sean Rad et al.

Serial No.:                    14/059,192

Filing Date:                   October 21, 2013

Group Art Unit:                2164

Examiner:                      Yuk Ting Choi

Confirmation No.:              1044

Title:                         MATCHING PROCESS SYSTEM AND METHOD


Commissioner for Patents
PO Box 1450
Alexandria, VA 22313-1450


Dear Sir:


### DECLARATION PURSUANT TO 37 C.F.R. § 1.131


I, the undersigned, declare and state that:

1.      I am over the age of 21 years, of sound mind, and competent in all respects to make this Declaration.

2.      I am an inventor of the subject matter of the above-referenced application (the "Application").

3.      Prior to August 6, 2012 (the "Effective Date"), I gained a full understanding of the subject matter of at least the current version of the claims of the Application (attached as Exhibit A).

4.      Attached as Exhibit B are screenshots and accompanying descriptions of a working application developed prior to the Effective Date.   The application presented potential matches to a candidate and could use geographic proximity to determine which potential matches to present.   The application enabled text-based communication between two users once they both expressed approval for each other and notified the users of the

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                      14/059,192


match and possibility of communicating.  If one user did not express approval (or expressed disapproval) for another user, the application would prevent communication between the users.  The application was tested, prior to the Effective Date, to confirm that the functionality discussed above worked.

5.     Prior to the Effective Date, I developed code that implemented using swiping gestures to express approval and disapproval of a potential match.  Attached as Exhibit C are portions of that source code.

6.     All of the work in conceiving and reducing to practice the subject matter of the current version of the claims in the Application occurred in the United States.

7.     I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true.  Further, I declare that these statements are made with the knowledge that willful false statements, and the like so made, are punishable by fine or imprisonment, or both, under Section 1001, Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the Application or any patent issuing thereon.


Signed this   30th   day of    January, 2017   , 2016.


_____
Jonathan Badeen

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

# Exhibit A

ATTORNEY DOCKET NO.:                          PATENT APPLICATION
083523.0118                                                    14/059,192

**Currently Pending Claims:**

1.-22.        (Canceled)

23. (Previously Presented) A computer implemented method of profile matching, comprising:

electronically receiving a first request for matching, the first request electronically submitted by a first user using a first electronic device;

determining a set of potential matches for the first user in response to receiving the first request;

causing the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determining that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

in response to determining that the first user expressed the positive preference indication regarding the first potential match, automatically causing the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determining that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determining to enable initial communication between the first user and the second user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to determining to enable initial communication between the first user and the second user, causing the graphical user interface to display to the first user the graphical representation of the first potential match;

ATTORNEY DOCKET NO.:                                      PATENT APPLICATION
083523.0118                                                          14/059,192

determining that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

preventing communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determining that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

preventing communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.


24. (Canceled)


25. (Previously Presented)  The method of Claim 23, further comprising:

in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, causing the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user.

ATTORNEY DOCKET NO.:                                     PATENT APPLICATION
083523.0118                                                          14/059,192

26. (Previously Presented)  The method of Claim 23, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

27. (Canceled)

28. (Canceled)

29. (Canceled)

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                              14/059,192

30. (Previously Presented)   A non-transitory computer-readable medium comprising instructions that, when executed by a processor, are configured to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device;

determine a set of potential matches for the first user in response to receiving the first request;

cause the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

in response to the determination that the first user expressed the positive preference indication regarding the first potential match, automatically cause the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable initial communication between the first user and the second user, cause the graphical user interface to display to the first user the graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                           14/059,192

potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

prevent communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.

31. (Canceled)

32. (Previously Presented)   The medium of Claim 30, further comprising instructions configured to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user.

33. (Previously Presented)  The medium of Claim 30, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

34. (Canceled)

35. (Canceled)

ATTORNEY DOCKET NO.:                           PATENT APPLICATION
083523.0118                                          14/059,192


36. (Canceled)

ATTORNEY DOCKET NO.:                          PATENT APPLICATION
083523.0118                                            14/059,192

37. (Previously Presented)  A system for profile matching, comprising:

an interface operable to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device; and

a processor coupled to the interface and operable to:

determine a set of potential matches for the first user in response to receiving the first request;

cause the interface to display a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the interface has received a positive preference indication from the first user regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

automatically cause the interface to remove the presentation of the first potential match from the graphical user interface in response to detecting the gesture and cause the interface to present, on the graphical user interface, a second potential match of the set of potential matches to the first user;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match; and

determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable initial communication between the first user and the second user, cause the graphical user interface to display to the first user the graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                              14/059,192

potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

prevent communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.

38. (Canceled)

39. (Previously Presented)  The system of Claim 37, the processor further operable to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user.

40. (Previously Presented)  The system of Claim 37, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

41. (Canceled)

42. (Canceled)

ATTORNEY DOCKET NO.:                                          PATENT APPLICATION
083523.0118                                                                    14/059,192

43. (Canceled)

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

# Exhibit B

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192



ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192



ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192



ATTORNEY DOCKET NO.:                                PATENT APPLICATION
083523.0118                                                        14/059,192

  

Alexa



 25 Shared Friends    16 Shared Interests

  

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192



**.ıl.. AT&T 🛜        5:17 PM        ⌁ ＊ 🔋**



### Sean
matched on 7/17

 

 **4** Shared Friends     **2** Shared Interests

### Jonathan
matched on 7/17

 

 **3** Shared Friends     **3** Shared Interests

### Alexa
matched on 7/17

 

 **4** Shared Friends     **0** Shared Interests

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192



**Block this User**

July 17, 2012 5:16 PM

Hey! Nice meeting you. We should go out sometime

For sure...it seems like we have a lot in common.  How about some organic coffee?.  I know a great place!

Sounds great! See you soon



ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192





ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

# Exhibit C

```
                        MBGameViewController ABRIDGED
//
//  MBGameViewController.m
//  matchbox
//
//  Created by Jonathan Badeen on 6/6/12.
//  Copyright (c) 2012 Hatch Labs. All rights reserved.
//

...

@implementation MBGameViewController

#pragma mark - Game & Cards

- (void)updateGame
{
    ...

    for (UIGestureRecognizer *gestureRecognizer in
self.currentCard.gestureRecognizers) {
        gestureRecognizer.enabled = gameButtonsEnabled;
    }
}

- (MBCardView *)dequeueReusableCard
{
    MBCardView *card = [self.reusableCards lastObject];
    if (!card) {
        card = [[MBCardView alloc] init];
        ...
        [card addGestureRecognizer:[[UIPanGestureRecognizer alloc]
initWithTarget:self action:@selector(cardPanned:)]];
    } ...

    for (UIGestureRecognizer *gestureRecognizer in card.gestureRecognizers) {
        gestureRecognizer.enabled = NO;
    }

    return card;
}

- (void)cardPanned:(UIPanGestureRecognizer *)gestureRecognizer
{
    static CGPoint startLocation;
    static UIImageView *dislikeImageView;
    static UIImageView *likeImageView;

    CGFloat confirmedXTranslation = 100.0;
    CGFloat minConfirmedVelocity = 2000.0;
    CGPoint translation = [gestureRecognizer translationInView:self.currentCard];

    switch (gestureRecognizer.state) {
        case UIGestureRecognizerStatePossible:

            break;
        case UIGestureRecognizerStateBegan:
            startLocation = [gestureRecognizer locationInView:self.currentCard];
            likeImageView = [[UIImageView alloc] initWithImage:[UIImage
imageNamed:@"MBLikedStamp"]];
            likeImageView.transform = CGAffineTransformMakeRotation(M_PI_4 / 2.0 *
-1);
            likeImageView.center =
CGPointMake(CGRectGetMidX(self.currentCard.bounds) - 45.0,
                                Page 1
```

```
                        MBGameViewController ABRIDGED
CGRectGetMidY(self.currentCard.bounds) - 85.0);
        likeImageView.alpha = 0;
        [self.currentCard addSubview:likeImageView];

        dislikeImageView = [[UIImageView alloc] initWithImage:[UIImage
imageNamed:@"MBNopeStamp"]];
        dislikeImageView.transform = CGAffineTransformMakeRotation(M_PI_4 / 2.0
* 1);
        dislikeImageView.center =
CGPointMake(CGRectGetMidX(self.currentCard.bounds) + 45.0,
CGRectGetMidY(self.currentCard.bounds) - 85.0);
        dislikeImageView.alpha = 0;
        [self.currentCard addSubview:dislikeImageView];

        self.nextCard.hidden = NO;
    case UIGestureRecognizerStateChanged:
    {
        CGFloat rotationDirection = startLocation.y /
CGRectGetHeight(self.currentCard.bounds) < 0.5 ? 1 : -1;
        CATransform3D translationTransform =
CATransform3DMakeTranslation(translation.x, translation.y, 0);
        CATransform3D rotationTransform = CATransform3DMakeRotation((M_PI * 2) *
(translation.x / 5000.0), 0, 0, rotationDirection);
        CATransform3D transform = CATransform3DConcat(translationTransform,
rotationTransform);
        self.currentCard.layer.transform = transform;

        CGFloat startStampShowX = 30.0;
        likeImageView.alpha = (translation.x - startStampShowX) /
(confirmedXTranslation - startStampShowX);
        dislikeImageView.alpha = (translation.x + startStampShowX) /
(-confirmedXTranslation + startStampShowX);
    }
        break;
    case UIGestureRecognizerStateEnded:
    case UIGestureRecognizerStateCancelled:
        if (fabsf(translation.x) < confirmedXTranslation && [gestureRecognizer
velocityInView:self.currentCard].x < minConfirmedVelocity) {
            [UIView animateWithDuration:0.2 delay:0
options:UIViewAnimationCurveEaseOut animations:^{
                self.currentCard.transform = CGAffineTransformIdentity;
                likeImageView.alpha = 0;
                dislikeImageView.alpha = 0;
            } completion:^(BOOL finished) {
                self.nextCard.hidden = YES;
                [likeImageView removeFromSuperview];
                [dislikeImageView removeFromSuperview];
            }];
        } else {
            NSTimeInterval maxDuration = 0.2;
            NSTimeInterval adjustedDuration = maxDuration;
            [UIView animateWithDuration:adjustedDuration delay:0
options:UIViewAnimationCurveEaseOut animations:^{
                CGFloat direction = 1.0;
                if (translation.x > 0) {

                } else {
                    direction = -1.0;
                }
                //CGFloat rotationDirection = startLocation.y /
CGRectGetHeight(self.currentCard.bounds) < 0.5 ? -1 : 1;
                CGFloat xPos = 400.0;
                CGAffineTransform translationTransform =
                            Page 2
```

```
                        MBGameViewController ABRIDGED
CGAffineTransformMakeTranslation(xPos * direction, [(NSNumber
*)[self.currentCard.layer valueForKeyPath:@"transform.translation.y"] floatValue]);
                    //CGAffineTransform rotationTransform =
CGAffineTransformMakeRotation((M_PI * 2) * (xPos / 5000.0) * rotationDirection);
                    self.currentCard.transform = translationTransform;
//CGAffineTransformConcat(translationTransform, rotationTransform);
                } completion:^(BOOL finished) {
                    [likeImageView removeFromSuperview];
                    [dislikeImageView removeFromSuperview];

                    MBUser *user = self.currentCard.user;
                    [self updateGame];
                    if (translation.x < 0) {
                        [[MBMatchboxAPI sharedMatchboxAPI] dislikeUser:user];
                    } else {
                        [[MBMatchboxAPI sharedMatchboxAPI] likeUser:user
completion:^(BOOL success, MBUser *user, BOOL isMatch) {
                            if (success && isMatch) {
                                MBNewMatchViewController *vc =
[[MBNewMatchViewController alloc] init];
                                vc.matchedUser = user;
                                vc.backgroundScreenshot = [UIImage
imageWithView:self.view];
                                [self presentViewController:vc animated:NO
completion:^{

                                }];
                            }
                        }];
                    }
                }];
            }
            break;
        case UIGestureRecognizerStateFailed:

            break;
        default:
            break;
    }

}

...

@end
```

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29342872 |
| **Application Number:** | 14059192 |
| **International Application Number:** | |
| **Confirmation Number:** | 1044 |
| **Title of Invention:** | Matching Process System And Method |
| **First Named Inventor/Applicant Name:** | Sean Rad |
| **Customer Number:** | 5073 |
| **Filer:** | Chad Christian Walters/Wendy Flottman |
| **Filer Authorized By:** | Chad Christian Walters |
| **Attorney Docket Number:** | 083523.0118 |
| **Receipt Date:** | 30-MAY-2017 |
| **Filing Date:** | 21-OCT-2013 |
| **Time Stamp:** | 16:01:17 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | Response.pdf | 115271 <br> e719e0e9633446c7febe81df5340419f0ecc6bfb | yes | 12 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 10 |
| Applicant Arguments/Remarks Made in an Amendment | 11 | 12 |

**Warnings:**

**Information:**

| 2 | Oath or Declaration filed | Declaration_w_exhibits.pdf | 1553056<br>943684cd3eb9f93732f35f9c9e25bf242ef4baa6c | no | 24 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 1668327 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/059,192 | Filing Date<br>10/21/2013 | ☐ To be Mailed |
|---|---|---|---|

ENTITY: ☒ LARGE  ☐ SMALL  ☐ MICRO

### APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| **AMENDMENT** | **05/30/2017** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 9 | Minus | ** 21 | = 0 | x $80 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $420 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
YOLANDA CHADWICK

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Document code: WFEE

United States Patent and Trademark Office
Sales Receipt for Accounting Date:  06/09/2017

VVAN11      ADJ #00000004       Mailroom Dt: 05/30/2017
            Seq No:        995   Sales Acctg Dt: 05/31/2017   020384   14059192
            01   FC : 1051                  140.00  CR



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/059,192 | 10/21/2013 | Sean Rad | 083523.0118 | 1044 |

5073          7590          02/28/2017
BAKER BOTTS L.L.P.
2001 ROSS AVENUE
SUITE 600
DALLAS, TX 75201-2980

| EXAMINER |
|---|
| CHOI, YUK TING |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2153 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/28/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ptomail1@bakerbotts.com
ptomail2@bakerbotts.com

| **Office Action Summary** | **Application No.**<br>14/059,192 | **Applicant(s)**<br>RAD ET AL. | |
|---|---|---|---|
| | **Examiner**<br>YUK TING CHOI | **Art Unit**<br>2153 | **AIA (First Inventor to File)**<br>**Status**<br>No |

| *-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --* |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>*1/31/2017*</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.      2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) *23,25,26,30,32,33,37,39 and 40* is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) *23, 25, 26, 30, 32, 33, 37, 39, 40* is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

  **Certified copies:**
    a)☐ All  b)☐ Some**  c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
    Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

4) ☐ Other: _____.

Application/Control Number: 14/059,192                                             Page 2
Art Unit: 2153

## DETAILED ACTION

### *Continued Examination Under 37 CFR 1.114*

1.      A request for continued examination under 37 CFR 1.114, including the fee set forth in
37 CFR 1.17(e), was filed in this application after final rejection.  Since this application is eligible
for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e) has
been timely paid, the finality of the previous Office action has been withdrawn pursuant to 37
CFR 1.114.  Applicant's submission filed on 01/3/2017 has been entered.

### Response to Amendment

2.      In response to the last Office Action, claims no claims have been amended,
added or canceled. As a result, claims 23, 25, 26, 30, 32, 33, 37, 39, 40 are pending in
this office action.

3.      The declaration of prior Invention under 37 CFR 1.131 filed on 01/31/2017 has been
considered but is ineffective to overcome the Janssens reference (US 2014/0040368 A1).   The
affidavit filed on 1/31/2017 was signed by Mr. Jonathan Baden on Jan. 30, 2017.  Mr. Jonathan
Baden was not one of the original inventors listed in the application.  Applicant has not pay the
fee set forth in 37 CFR 1.17 (i) for correction of inventorship.  SEE MPEP 602.1 (c) for more
information.

### *Response to Arguments*

4.       Applicant's arguments with respect to claims 23, 25, 26, 30, 32, 33, 37, 39 and 40 have
been fully considered but are not persuasive and the details are as follow:

        Applicant's argument states as "Not only Janssens teaches away from the argued
limitations, but numerous passages in Janssens teach the opposite and allows users to

Application/Control Number: 14/059,192                                              Page 3
Art Unit: 2153

communicate before the "linking" feature... The cited portion of Benschop are directed to an

emailed system wherein users can only email each other if they are in each other's address

books.  Benschop seeks to allow messaging between users that already known each other, but

as detailed above, Janssens teaches away from enabling initial communication in the manner

claimed because Janssens is directed to facilitating communication between users who do not

know each other".

        In response to Applicant's argument, the Examiner disagrees because the Janssens

discloses a bidirectional interaction or communication is created or enabled when two users

indicate a "like" for the other.  Both users can enable communication such as adding each

other on their contact lists and/or they can sent a notification message, sound, graphic or the

like (See para. [0053], para. [0064] and para. [0065] and para. [0094]).    For instance, if user A

"likes" user B, user B likes user A back, a link is created.  User A and user B can communicate

with each other by adding each other to the contact list and the system would send a message

to both users saying "you both link" (See para. [0094] and para. [0095]). User A and user B can

start their first or initial bidirectional interaction or communication after both of them received a

message "you both link".  The Janssens reference may not limit the users to initiate a

communication only when both users indicate a "like" for each other, but that does not mean

the Janssens reference teaches the opposite because it allows users to communicate before

the "linking" feature. The Janssens reference still can allow user A and user B to start their first

or initial bidirectional interaction or communication after both of them received a message "you

both link" (See para. [0094] and para. [0095]). Thus, the Janssens reference still read on the

argued features.  The Benschop is only added to further support the argued feature

"determining to enable initial communication between the first user and the second user in

response to determining that both users have expressed interests or approvals".  The

Application/Control Number: 14/059,192                                    Page 4
Art Unit: 2153

Benschop reference discloses an approval module allows to establish or exchange a communication between a sender, e.g. the user of the first user device I, and an addressee, e.g. the user of the second user device IIA only if both the sender and the addressee have signaled approval for the communication (See para. [0060]). Applicant further argues in para. [0060] of Benschop that the users can only email each other if they are in each other's address books. The Examiner disagrees because in para. [0060], the entries in the address book can be created or made only in response to mutual approval of users to exchange electronic messages, and the users do not know each other if they have not been engaged in electronic message exchange before (See Benschop, para. [0049] and para.[0057]).  Therefore, it would have been obvious to one having ordinary skill in the art at the time of invention was made to modify the enabling communication module of Janssens's system to include an approval module, as taught by Benschop, in order to filter out unwanted messages from users who do not have mutual approval of establishing a communication (**See Benschop, para. [0060] and abstract**).

    Applicant's argument states as "Multiples articles from different publications attest to the overwhelming success of Applicant's system that embodies the independent claims and the claimed inventions of the present application have been commercially successful, copied by others, and have received industry praise as the objective evidence discussed between demonstrates".

    In response to Applicant's argument, as mentioned in the communication mailed on 12/07/2016, the Examiner found that the evident does not provide a proper nexus between the claimed invention and commercial success. See MPEP 716.03(a).  Objective evidence of nonobviousness including commercial success must be commensurate in scope with the claims.

Application/Control Number: 14/059,192                                    Page 5
Art Unit: 2153

 First the independent claim 23 recites "performing a first swiping gesture" and determining a

positive or negative preference.  The evidence Applicant provided, however, is about specifically

swiping left and right.

Secondly,  MPEP 716.06 indicates  "…more than the mere fact of copying is necessary to make

that action significant because copying may be attributable to other factors such as a lack of

concern for patent property or contempt for the patentee's ability to enforce the patent. […]

Evidence of copying was persuasive of nonobviousness when an alleged infringer tried for a

substantial length of time to design a product or process similar to the claimed invention, but

failed and then copied the claimed invention instead. […] copying is not persuasive of

nonobviousness when the copy is not identical to the claimed product, and the other

manufacturer had not expended great effort to develop its own solution."

Finally, the articles in question represent the opinions of journalists, and have neither the weight

of factual evidence nor expert opinion. Therefore, Applicant has not provide enough evidence to

demonstrate that the claims are not obvious.


### Claim Rejections - 35 USC § 103


        The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness

rejections set forth in this Office action:

        A patent for a claimed invention may not be obtained, notwithstanding that the claimed
        invention is not identically disclosed as set forth in section 102 of this title, if the differences
        between the claimed invention and the prior art are such that the claimed invention as a whole
        would have been obvious before the effective filing date of the claimed invention to a person
        having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not
        be negated by the manner in which the invention was made.

Application/Control Number: 14/059,192                                  Page 6
Art Unit: 2153

5.      Claims 23, 25, 26, 30, 32, 33, 35, 37, 39 and 40 are rejected under 35 U.S.C. 103 as

being unpatentable by Janssens (US 2014/0040368 A1) and in view of Benschop et al. (US

2008/0196094 A1).


        **Referring to claims 23, 30 and 37**, Janssens discloses a computer implemented

method of profile matching (***See para. [0005], a matching system identifies a plurality of***

***matching users from a plurality users based at least in part on the received profile***

***information***) , comprising:

        electronically receiving a first request for matching, the first request electronically

submitted by a first user using a first electronic device (***See Figure 9,  para. [0041] and para.***

***[0112] and para. [0113], receiving a request for a new card from a user device, a request***

***for a profile card***);

        determining a set of potential matches for the first user in response to receiving the first

request (***See para. [0115] and Figure 9, item 906, identifying a set of available cards by***

***the system as potentially interesting to the viewing user***);

        causing the display of a graphical representation of a first potential match of the set of

potential matches to the first user on a graphical user interface of the first electronic device, the

first potential match corresponding to a second user (***See para. [0115]-para. [0117] and***

***Figure 9, selecting and displaying a card from the set of available cards that is***

***estimated or determined to be the highest rank or greater interest to the user***);

        determining that the first user expressed a positive preference indication regarding the

first potential match at least by determining that the first user performed a first swiping gesture

associated with the graphical representation to the first potential match on the graphical user

interface (***See Figure 5, para. [0005], para. [0052], para. [0053], para. [0064] and para.***

*[0095], the system receives "like" expression from the first user or the A user on the card-feed pane, also See para. [0047] and para. [0068] and Figure 4, swiping across the interface using a finger on the card, user can swipe on the "like " feature, and the system maintain a history of which cards a given user has viewed and the user's interaction with a given card*);

in response to determining that the first user expressed the positive preference indication regarding the first potential match, automatically causing the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match (***See para. [0047] and para. [0118], the user of the card-feed may cycle through various cards or other potential matches beside the first potential match, the system records different forms of user interactions such as clicking, mouse dragging, hovering, swiping, gesturing and so on are used to indicate whether a new potential match or previously viewed potential match is to be displayed to the user, the feed of potential matches is automatically cycled periodically and the system uses information such as user settings and past interactions between users, e.g., the interactions such as a user liked another user and/or gave a gift to another user to determine and select which card to show next from a set of cards or potential matches, the user may go forward in the feed by selecting the forward control and the process may select the next card to display to the user in the card-feed, also when another user likes the user's profile card, the user may go forward in the feed by selecting the forward control, and the system automatically selects the card of the person that liked that user as the next card to display to the user in the card feed***);

determining that the second user has expressed a positive preference indication

regarding the first user after determining that the first user expressed the positive preference

indication regarding the first potential match (***See para. [0053], para. [0064], para. [0065] and***

***para. [0094] and para. [0095], a bidirectional interaction or communication is created or***

***enabled when two users indicate a "like" for the other, both users can enable***

***communication such as adding each other on their contact lists and/or they can sent a***

***notification message, sound, graphic or the like , for instance, if user A "likes" user B,***

***user B likes user A back, a link is created, user A and user B can communicate with***

***each other by adding each other to the contact list and the system would send a***

***message to both users saying "you both link")***;

determining to enable […] communication between the first user and the second user in

response to determining that both the first user has expressed the positive preference

indication regarding the second user and the second user has expressed the positive

preference indication regarding the first user (***See para. [0053], para. [0064], para. [0065] and***

***para. [0094] and para. [0095], a bidirectional interaction or communication is created or***

***enabled when two users indicate a "like" for the other, both users can enable***

***communication such as adding each other on their contact lists and/or they can sent a***

***notification message, sound, graphic or the like , for instance, if user A "likes" user B,***

***user B likes user A back, a link is created, user A and user B can communicate with***

***each other by adding each other to the contact list and the system would send a***

***message to both users saying "you both link"***);

in response to determining to enable […] communication between the first user and the

second user, causing the graphical user interface to display to the first user the graphical

representation of the first potential match (***See Figure 3, para. [0045] and para. [0056], if***

**user A "likes" user B and user B "likes" user A back, a link is created, and the system adds user A to the contact list of user B and user B to the contact list of user A, user A enables communication with user B by clicking the chat button once the system has successfully placed user B on the contract list of user A after user A has indicated a positive indication such as the liked indication, clicking the chat button opens the chat pane is a text area enable the user to chat other users)**;

determining that the first user expressed a negative preference indication regarding that the third potential match at least by determining that the first user performed a second swiping gesture associated with the graphical representation of the third potential match on the user interface, the second swiping gesture different than the first swiping gesture (**See para. [0052], the system also provides a control via which the user can indicate a disinterest in another user which is different than the "like" gesture**).

prevent communication between the first user and the third after determining that the first user has expressed the negative preference indication regarding the third user ( **See para. [0052], preventing communication between the first user and the other user, e.g. if user B is a third potential match, user B is automatically be placed in ignored state and or any future communication because the first user dislikes the profile card for user B**);

determining that the first user expressed a positive preference indication regarding fourth potential match of the set of potential matches at least by determine that the first user performed the first swiping gesture associated with a graphical representation of a fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user (**See para. [0047] and para. [0118], the user of the card-feed may cycle through various cards or other potential matches beside the first potential match, the system records different forms of user interactions such as clicking, mouse dragging,**

*hovering, swiping, gesturing and so on are used to indicate whether a new potential match or previously viewed potential match is to be displayed to the user, the feed of potential matches is automatically cycled periodically and the system uses information such as user settings and past interactions between users, e.g., the interactions such as a user liked another user and/or gave a gift to another user to determine and select which card to show next from a set of cards or potential matches, the user may go forward in the feed by selecting the forward control and the process may select the next card to display to the user in the card-feed, also when another user likes the user's profile card, the user may go forward in the feed by selecting the forward control, and the system automatically selects the card of the person that liked that user as the next card to display to the user in the card feed, also see Figure 5, para. [0005], para. [0047], para. [0052], para. [0053], para. [0064], para. [0068] and para. [0095], the system receives "like" expression from the first user or the A user on the card-feed pane, swiping across the interface using a finger on the card, user can swipe on the "like" feature, and the system maintain a history of which cards a given user has viewed and the user's interaction with a given card*); and

preventing communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user (

*See para. [0052], preventing communication between the fourth user and the first user, e.g. if the first user is a first potential match, the first user is automatically be placed in ignored state and or any future communication because the fourth user dislikes the profile card for the first user*).

In additional to Janssens, Benschop explicitly disclose determining to enable initial communication between the first user and the second user in response to determining that

Application/Control Number: 14/059,192                                    Page 11
Art Unit: 2153

both users have expressed interests or approvals (***See Benschop, para. [0060], the approval module allows to establish or exchange a communication between a sender, e.g. the user of the first user device I, and an addressee ,e.g. the user of the second user device IIA only if both the sender and the addressee have signaled approval for the communication***).

Hence, it would have been obvious to one having ordinary skill in the art at the time of invention was made to modify the enabling communication module of Janssens's system to include an approval module, as taught by Benschop, in order to filter out unwanted messages from users who do not have mutual approval of establishing a communication (***See Benschop, para. [0060] and abstract***).

**As to claims 25, 32 and 39**, Janssens discloses further comprising:

in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, causing the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user (***See Figure 3, text area 312,  para. [0045] and para. [0056], if user A "likes" user B and user B "likes" user A back, a link is created, and the system adds user A to the contact list of user B and user B to the contact list of user A, user A enables communication with user B by clicking the chat button once the system has successfully placed user B on the contract list of user A***

*after user A has indicated a positive indication such as the liked indication, clicking the chat button opens the chat pane is a text area enable the user to chat other users).*

**As to claims 26, 33 and 40**, Janssens discloses the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value (**See para. [0055] and para. [0130], user can set preferences on the types of cards they want to receive, e.g. a user can specify limits on geographic range such as 10 miles from his/ her house, 20 miles from his/her work address and etc.**).

## Conclusion

6.      The examiner requests, in response to this Office action, support be shown for language added to any original claims on amendment and any new claims. That is indicate support for newly added claim language by specifically pointing to page(s) and line no(s) in the specification and/or drawing figure(s).  This will assist the examiner in prosecuting the application.

## Contact Information

Any inquiry concerning this communication or earlier communications from the examiner should be directed to YUK TING CHOI whose telephone number is (571)270-1637.  The examiner can normally be reached on 8:30 AM - 5:30 PM EST.

Application/Control Number: 14/059,192                                        Page 13
Art Unit: 2153

Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Heather Herndon can be reached on (571) 272-4136.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/YUK TING CHOI/
Primary Examiner, Art Unit 2153

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| **Notice of References Cited** | | 14/059,192 | RAD ET AL. |
| | | Examiner | Art Unit | |
| | | YUK TING CHOI | 2153 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-2005/0027707 A1 | 02-2005 | Syed; Omar A. | G06Q30/02 | 707/999.009 |
| * | B | US-2012/0088524 A1 | 04-2012 | Moldavsky; David | G06Q30/02 | 455/456.3 |
| * | C | US-2014/0074824 A1 | 03-2014 | Rad; Sean | G06Q50/01 | 707/722 |
| * | D | US-8,566,327 B2 | 10-2013 | Carrico; Todd M. | G06F17/30657 | 705/319 |
| | E | US- | | | | |
| | F | US- | | | | |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20170217

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L9 | 10 | "8566327" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 16:15 |
| L5 | 1 | "20080196094" and know | US-PGPUB | OR | OFF | 2017/02/17 15:29 |
| L4 | 1 | "20080196094" | US-PGPUB | OR | OFF | 2017/02/17 15:29 |
| L3 | 0 | 2008/0196094 | US-PGPUB | OR | OFF | 2017/02/17 15:29 |
| L2 | 0 | 2008/0196094 and know | US-PGPUB | OR | OFF | 2017/02/17 15:28 |
| L1 | 2 | 2008/0196094 and know | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 15:28 |
| S194 | 199 | (start$3 initiat$3 establish$3) near10 (communication message chat contact) same (indicat$3 select$3 swip$4) near10 (positive up left right upward interest$3 love$3 like$3) and (indicat$3 select$3 swip$4) near10 (negative dislike$3 "no" ("not" near4 (interest$3 love$3 lik$3) down left right downard)) and (match$3) near10 (profile$3 users) and (matchmak$3 dating ) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 13:07 |
| S193 | 28 | swip$4 near10 (positive up left right upward interest$3 loved like$3) and swip$4 near10 (negative down left right downard) and (match$3) near10 (profile$3 users) and (matchmak$3 dating ) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 12:53 |
| S192 | 24 | swip$4 near10 (positive up left right upward interest$3 loved like$3) and swip$4 near10 (negative down left right downard) and (match$3) near10 (profile$3 users) and dating | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 12:36 |
| S191 | 5 | swip$4 near10 (positive up left right upward) near20 (interest$3 loved like$3) and swip$4 near10 (negative down left right downard) and (match$3) near10 | US-PGPUB; USPAT; USOCR; FPRS; | | | 2017/02/17 12:35 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | (profile$3 users) and dating | EPO; JPO; DERWENT; IBM_TDB | | | |
| S190 | 27 | swip$4 near10 (positive up left right upward) near20 (interest$3 loved like$3) and swip$4 near10 (negative down left right downard) and (match$3) near10 (profile$3 users) and dat$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 12:35 |
| S188 | 369 | swip$4 near10 (positive up left right upward) near20 (interest$3 loved like$3) and swip$4 near10 (negative down left right downard) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 12:34 |
| S180 | 10 | "8566327" | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 12:15 |
| S179 | 465 | (initiate$3 enabl$3 allow$3 start$3 begin$3) near10 (communication conversation chat$3 messag$3) and (user$3) near10 (liked approved interested loved positive) near10 (match$3 porfile$3 list$3 result$3) and (click$3 select$3 indicat$3 swip$4) near10 (like$3 positive love$3 interest$3) near10 (profile$3 match$3 result$3 list) and (disallow$3 dissaprove$3 prevent$3 avoid$3) near10 (message communication chat) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 12:11 |
| S178 | 408 | (initiate$3 enabl$3 allow$3 start$3 begin$3) near10 (communication conversation chat$3 messag$3) and (user$3) near10 (liked approved interested loved positive) near10 (match$3 porfile$3 list$3 result$3) and (click$3 select$3 indicat$3 swip$4) near10 (like$3 positive love$3 interest$3) near10 (profile$3 match$3 result$3 list) and (disallow$3 dissaprove$3 prevent$3 avoid$3) near10 (communication chat) | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 12:11 |
| S177 | 8 | (initiate$3 enabl$3 allow$3 start$3 begin$3) near10 (communication conversation chat$3 messag$3) near10 (both users) near10 (liked approved interested) same (match$3 users) and (user$3) near10 (liked approved interested loved positive) and (match$3) near10 (user$3 profile$3) and (click$3 select$3 indicat$3 swip$4) near10 (like$3 positive love$3 interest$3) and (profile) near10 match$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 11:51 |
| S176 | 2292 | (initiate$3 enabl$3 allow$3 start$3 begin$3) near10 (communication conversation chat$3 messag$3) same (match$3 users) and (user$3) near10 | US-PGPUB; USPAT; USOCR; FPRS; | OR | OFF | 2017/02/17 11:50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | (liked approved interested loved positive) and (match$3) near10 (user$3 profile$3) and (click$3 select$3 indicat$3 swip$4) near10 (like$3 positive love$3 interest$3) and (profile) near10 match$3 | EPO; JPO; DERWENT; IBM_TDB | | | | |
| S175 | 96 | (initiate$3 enabl$3 allow$3 start$3 begin$3) near10 (communication conversation chat$3 messag$3) same (match$3 users) near10 (liked approved interested loved positive) and (match$3) near10 (user$3 profile$3) and (click$3 select$3 indicat$3 swip$4) near10 (like$3 positive love$3 interest$3) and (profile) near10 match$3 | US-PGPUB; USPAT; USOCR; FPRS; EPO; JPO; DERWENT; IBM_TDB | OR | OFF | 2017/02/17 11:43 |

2/17/2017 4:16:19 PM
C:\Users\cchoi\Documents\EAST\Workspaces\14059192_matching_process_system_method.wsp

| ***Search Notes***  [barcode] | Application/Control No. 14059192 | Applicant(s)/Patent Under Reexamination RAD ET AL. |
|---|---|---|
| | **Examiner** YUK TING CHOI | **Art Unit** 2164 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| G06F17/30867 OR G06F17/3053 OR G06F17/30386 | 8/18/2016 | YC |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| G06F17/30867 OR G06F17/3053 OR G06F17/30386 and east text search, see attached search history | 8/18/2016 | YC |
| East text search, see attached search history | 2/17/2017 | YC |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| | /YUK TING CHOI/ Primary Examiner.Art Unit 2164 |
|---|---|

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14059192 | RAD ET AL. |
| | Examiner | Art Unit |
| | YUK TING CHOI | 2164 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

☐ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☐ T.D.    ☐ R.1.47

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/12/2015 | 11/30/2015 | 06/14/2016 | 08/18/2016 | 02/17/2017 | | | | |
| | 1 | - | - | - | - | - | | | | |
| | 2 | - | - | - | - | - | | | | |
| | 3 | - | - | - | - | - | | | | |
| | 4 | - | - | - | - | - | | | | |
| | 5 | - | - | - | - | - | | | | |
| | 6 | - | - | - | - | - | | | | |
| | 7 | - | - | - | - | - | | | | |
| | 8 | - | - | - | - | - | | | | |
| | 9 | - | - | - | - | - | | | | |
| | 10 | - | - | - | - | - | | | | |
| | 11 | - | - | - | - | - | | | | |
| | 12 | - | - | - | - | - | | | | |
| | 13 | - | - | - | - | - | | | | |
| | 14 | - | - | - | - | - | | | | |
| | 15 | - | - | - | - | - | | | | |
| | 16 | - | - | - | - | - | | | | |
| | 17 | - | - | - | - | - | | | | |
| | 18 | - | - | - | - | - | | | | |
| | 19 | - | - | - | - | - | | | | |
| | 20 | - | - | - | - | - | | | | |
| | 21 | - | - | - | - | - | | | | |
| | 22 | - | - | - | | | | | | |
| | 23 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 24 | ✓ | - | - | - | - | | | | |
| | 25 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 26 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 27 | ✓ | ✓ | - | - | - | | | | |
| | 28 | ✓ | ✓ | - | - | - | | | | |
| | 29 | ✓ | - | - | - | - | | | | |
| | 30 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 31 | ✓ | - | - | - | - | | | | |
| | 32 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 33 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 34 | ✓ | ✓ | - | - | - | | | | |
| | 35 | ✓ | ✓ | - | - | - | | | | |
| | 36 | ✓ | - | - | - | - | | | | |

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| **_Index of Claims_** | 14059192 | RAD ET AL. |
| | **Examiner** | **Art Unit** |
| | YUK TING CHOI | 2164 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| ☐ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |
|---|---|---|---|---|

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 08/12/2015 | 11/30/2015 | 06/14/2016 | 08/18/2016 | 02/17/2017 | | | | |
| | 37 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 38 | ✓ | - | - | - | - | | | | |
| | 39 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 40 | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |
| | 41 | ✓ | ✓ | - | - | - | | | | |
| | 42 | ✓ | ✓ | - | - | - | | | | |
| | 43 | ✓ | - | - | - | - | | | | |

PTO/SB/30 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# Request
# for
# Continued Examination (RCE)
# Transmittal

Address to:
Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

| Application Number | 14/059,192 |
| --- | --- |
| Filing Date | October 21, 2013 |
| First Named Inventor | Sean Rad |
| Art Unit | 2153      Confirmation No. 1044 |
| Examiner Name | Yuk Ting Choi |
| Attorney Docket Number | 083523.0118 |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. See Instruction Sheet for RCEs (not to be submitted to the USPTO) on page 2.

1. **Submission required under 37 CFR 1.114** Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

   a. ☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

      i. ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

      ii. ☐ Other _____

   b. ☑ Enclosed

      I. ☑ Amendment/Reply          iii. ☐ Information Disclosure Statement (IDS)

      ii. ☑ Affidavit(s)/ Declaration(s)     iv. ☐ Other _____

2. **Miscellaneous**

   a. ☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of _____ months. (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

   b. ☐ Other _____

3. **Fees** The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.

   a. ☑ The Director is hereby authorized to charge the following fees, any underpayment of fees, or credit any overpayments, to Deposit Account No. 02-0384 .

      i. ☑ RCE fee required under 37 CFR 1.17(e)

      ii. ☑ Extension of time fee (37 CFR 1.136 and 1.17)

      iii. ☐ Other _____

   b. ☐ Check in the amount of $ _____ enclosed

   c. ☐ Payment by credit card (Form PTO-2038 enclosed)

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

| Signature | _(signature)_ | Date | January 31, 2017 |
| --- | --- | --- | --- |
| Name (Print/Type) | Roshan S. Mansinghani | Registration No. | 62,429 |

### CERTIFICATE OF MAILING OR TRANSMISSION

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Mail Stop RCE, Commissioner for Patents, P. O. Box 1450, Alexandria, VA 22313-1450 or facsimile transmitted to the U.S. Patent and Trademark Office on the date shown below.

| Signature | |
| --- | --- |
| Name (Print/Type) | Date |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Mail Stop RCE, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

ATTORNEY DOCKET NO.:            PATENT APPLICATION
083523.0118                                           14/059,192

1

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | Sean Rad et al. |
| Serial No.: | 14/059,192 |
| Filing Date: | October 21, 2013 |
| Group Art Unit: | 2164 |
| Examiner: | Yuk Ting Choi |
| Confirmation No.: | 1044 |
| Title: | MATCHING PROCESS SYSTEM AND METHOD |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## RESPONSE ACCOMPANYING REQUEST
## FOR CONTINUED EXAMINATION

        Applicant responded to the final Office Action dated August 29, 2016 ("Office Action") on October 31, 2016 ("Initial Response"). Applicant subsequently filed a Supplemental Response to the Final Office Action ("Supplemental Response") on November 9, 2016. In response to the Advisory Action dated November 9, 2016, Applicants respectfully request that the Examiner consider this Response in further view of the Initial and Supplemental Responses.

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

2

**In the Claims**:

     For the convenience of the Examiner, all pending claims are set forth below, whether or not an amendment is made.  Please amend the claims as follows:

     1.-22.  (Canceled)

     23.    (Previously Presented) A computer implemented method of profile matching, comprising:

     electronically receiving a first request for matching, the first request electronically submitted by a first user using a first electronic device;

     determining a set of potential matches for the first user in response to receiving the first request;

     causing the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

     determining that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

     in response to determining that the first user expressed the positive preference indication regarding the first potential match, automatically causing the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

     determining that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

     determining to enable initial communication between the first user and the second user in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

32793895

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

3

in response to determining to enable initial communication between the first user and the second user, causing the graphical user interface to display to the first user the graphical representation of the first potential match;

determining that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

preventing communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determining that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

preventing communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.

24.     (Canceled)

25.     (Previously Presented)  The method of Claim 23, further comprising:

in response to determining that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, causing the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user.

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                      14/059,192

4

26.     (Previously Presented)  The method of Claim 23, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

27.     (Canceled)

28.     (Canceled)

29.     (Canceled)

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

5

30.    (Previously Presented)    A non-transitory computer-readable medium comprising instructions that, when executed by a processor, are configured to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device;

determine a set of potential matches for the first user in response to receiving the first request;

cause the display of a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the first user expressed a positive preference indication regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

in response to the determination that the first user expressed the positive preference indication regarding the first potential match, automatically cause the graphical user interface to display a graphical representation of a second potential match of the set of potential matches instead of the graphical representation of the first potential match;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match;

determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable initial communication between the first user and the second user, cause the graphical user interface to display to the first user the graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

6

potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

prevent communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.

31.    (Canceled)

32.    (Previously Presented)    The medium of Claim 30, further comprising instructions configured to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user.

33.    (Previously Presented)  The medium of Claim 30, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

34.    (Canceled)

35.    (Canceled)

ATTORNEY DOCKET NO.:
083523.0118

7

36.   (Canceled)

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

8

37.    (Previously Presented)  A system for profile matching, comprising:

an interface operable to:

electronically receive a first request for matching, the first request electronically submitted by a first user using a first electronic device; and

a processor coupled to the interface and operable to:

determine a set of potential matches for the first user in response to receiving the first request;

cause the interface to display a graphical representation of a first potential match of the set of potential matches to the first user on a graphical user interface of the first electronic device, the first potential match corresponding to a second user;

determine that the interface has received a positive preference indication from the first user regarding the first potential match at least by determining that the first user performed a first swiping gesture associated with the graphical representation of the first potential match on the graphical user interface;

automatically cause the interface to remove the presentation of the first potential match from the graphical user interface in response to detecting the gesture and cause the interface to present, on the graphical user interface, a second potential match of the set of potential matches to the first user;

determine that the second user has expressed a positive preference indication regarding the first user after determining that the first user expressed the positive preference indication regarding the first potential match; and

determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user;

in response to the determination to enable initial communication between the first user and the second user, cause the graphical user interface to display to the first user the graphical representation of the first potential match;

determine that the first user expressed a negative preference indication regarding a third potential match of the set of potential matches at least by determining that the first user performed a second swiping gesture associated with a graphical representation of the third

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

9

potential match on the graphical user interface, the second swiping gesture different than the first swiping gesture, the third potential match corresponding to a third user;

prevent communication between the first user and the third user after determining that the first user has expressed the negative preference indication regarding the third user;

determine that the first user expressed a positive preference indication regarding a fourth potential match of the set of potential matches at least by determining that the first user performed the first swiping gesture associated with a graphical representation of the fourth potential match on the graphical user interface, the fourth potential match corresponding to a fourth user; and

prevent communication between the first user and the fourth user after determining that the fourth user has expressed a negative preference indication regarding the first user.

38.     (Canceled)

39.     (Previously Presented)   The system of Claim 37, the processor further operable to, in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user, cause the display of a graphical notification, on the graphical user interface of the first electronic device, that a match exists between the first user and the second user, the graphical notification comprising a user interface control enabling a text area to be presented to the first user.

40.     (Previously Presented)  The system of Claim 37, wherein the set of potential matches for the first user comprises one or more potential matches that are each associated with a geographic location within a threshold distance of a geographic location associated with the first user, the threshold distance being a stored value.

41.     (Canceled)

42.     (Canceled)

ATTORNEY DOCKET NO.:                                    PATENT APPLICATION
083523.0118                                                  14/059,192

10

43.     (Canceled)

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

11

## REMARKS

In the Initial Response, Applicants traversed the Section 103 rejections of the pending claims by, in part, discussing objective evidence demonstrating that the claims are not obvious. Initial Response at 13-16. In particular, Applicants provided evidence that embodiments of the claims were commercially successful and copied by others. *Id.* In the Supplemental Response, Applicants also provided evidence from an article in *The Wall Street Journal* that also demonstrated that the claims were commercially successful and copied by others. Applicants respectfully requests that the Examiner consider the new evidence discussed below that demonstrates that the technology of the application was invented prior to the primary reference used by the Examiner. The arguments used in the Initial Response and the Supplemental Response are included here as well for convenience.

### 35 U.S.C. § 103 Rejections

The Examiner rejects Claims 23, 25, 26, 30, 32, 33, 35, 37, 39, and 40 under 35 U.S.C. § 103 as allegedly being unpatentable over U.S. Patent Publication No. 2014/0040368 A1 by Janssens ("*Janssens*") and in view of U.S. Patent Publication No. 2008/0196094 A1 by Benschop et al. ("*Benschop*"). Applicant respectfully traverses these rejections because (1) the Office Action has not established a prima facie case of obviousness; and (2) objective evidence demonstrates that the claims are not obvious.

### *The claims predate* **Janssens**

The claimed technology was invented prior to August 6, 2012, which is the priority date of *Janssens*. As evidence, Applicant submits the declaration of inventor Jonathan Badeen and its accompanying exhibits. Thus, pursuant to MPEP § 715, the Section 103 rejection using *Janssens* is overcome. Applicant respectfully requests reconsideration and allowance of all pending claims.

### *The claims are not anticipated nor rendered obvious in view of* **Janssens.**

In addition, Applicant disagrees that *Janssens* discloses the following limitations of the independent claims:

- determining to enable initial communication between the first user and the second user in response to determining that both the first user has expressed the positive

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

12

preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user (Claim 23);

- determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user (Claim 30); and

- determine to enable initial communication between the first user and the second user in response to the determination that both the first user has expressed the positive preference indication regarding the second user and the second user has expressed the positive preference indication regarding the first user (Claim 37).

Not only that, *Janssens **teaches away*** from these limitations. This is significant because "[a] Prima Facie case of obviousness may also be rebutted by showing that the art, in any material respect, teaches away from the claimed invention." *In re Geisler*, 116 F.3d 1465, 1471 (Fed. Cir. 1997); *see also* MPEP 2145(X.D.2).

*Janssens* discloses that users can communicate with each other prior to the "linking" cited by the Examiner. *See, e.g., Janssens* at ¶ 95. Paragraphs 52-53 of *Janssens* suggests that users can freely communicate unless they are prevented upon request by a user. This ***teaches away*** from the claimed manner of enabling initial communication as users are prevented from communicating until the conditions specified in the claim are met. *See also id.* at ¶ 5. Paragraph 56 of *Janssens* merely discloses users setting preferences but otherwise allowing open communication between users of the system. Paragraph 178 of *Janssens* addresses a "speed dating" situation where users who have expressed no preference for other users are forced to chat with another for a specified period of time. This again ***teaches away*** from the claimed manner of enabling initial communication which require a particular set of factors to allow for communication between users. Thus, not only has the Examiner failed to identify one passage of *Janssens* that explicitly teaches enabling initial communication in the manner claimed, numerous passages in *Janssens **teach the opposite*** and allow users to communicate before the "linking" feature discussed by the Examiner.

### *The claims are not obvious in view of* **Janssens** *and* **Benschop.**

In the alternative, the Office Action rejects the independent claims as obvious by attempting to remedy the deficiencies of *Janssens* noted above with portions of *Benschop*. Office Action at 8. But this rejection suffers from two legal deficiencies. First, obviousness

13

rejections are inappropriate when a reference teaches away from the claims. *In re Geisler*, 116 F.3d 1465, 1471 (Fed. Cir. 1997); *see also* MPEP 2145(X)(D)(2). Second, obviousness rejections are improper where a proposed modification would render the prior art being modified unsatisfactory for its intended purpose. MPEP 2143.01(V).

*Janssens* teaches away from being combined with *Benschop*. The cited portions of *Benschop* are directed to an e-mail system wherein users can only e-mail each other if they are in each other's address books. *Benschop* at ¶ 60. *Benschop* seeks to allow messaging **between users that already know each other.** *Id.* at ¶ 58. But, as detailed above, *Janssens* **teaches away** from enabling initial communication in the manner claimed because *Janssens* is directed to facilitating communication **between users who do not know each other.**

Incorporating the teachings of *Benschop* would frustrate the purpose of *Janssens*. As explained above, the cited portions *Benschop* is directed to an e-mail system that reduces spam by allowing messaging between users that already know each other. *See Benschop* at ¶¶ 57 & 60. But *Janssens* teaches an electronic dating platform where users **do not know each other** and are using the platform to get acquainted. Thus, combining *Benschop* and *Janssens* in the manner suggested by the Office Action would lead to a system **inoperable for its intended purpose.**

**Objective evidence demonstrates that the claims are not obvious.**

The law establishes that secondary considerations based on objective evidence can rebut that the claims are not obvious. MPEP 2145. One such consideration is the commercial success of an embodiment of the claims; another is whether the claimed invention was copied by others. *Id.* A third consideration is whether the claimed invention has received industry praise. *Id.*; *Vulcan Engineering Co. v. Fata Aluminum Inc.*, 278 F.3d 1366, 1373 (Fed. Cir. 2002) ("Appreciation by contemporaries skilled in the field of the invention is a useful indicator of whether the invention would have been obvious"). The claimed inventions of the present application have been commercially successful, copied by others, and have received industry praise as the objective evidence discussed below demonstrates. Therefore, the obviousness rejection of the claims should be withdrawn.

Multiple articles from different publications attest to the overwhelming success of Applicant's system that embodies the independent claims and specifically cite the claimed

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

14

manner of enabling initial communication as the reason for that success. One publication attributes the commercial success to:

> "the double opt-in": You can only message someone after you've both signaled that you'd be down to talk to the other. Due to this feature, Tinder is succeeding with women turned off by traditional dating sites.

Appendix 1 at 2. Another publication notes Applicant's success in accruing "millions and millions of users" in less than a year noting "the idea of the double opt-in—some establishment of mutual interest that precedes interaction." Appendix 2 at 2-3. Yet another publication highlights that Applicant's system has "over 1.5 billion swipes and 26 million matches per day" and attributed the "success" to the "double opt-in connections[.]" Appendix 3 at 2. In an article titled "How Tinder Solved Online Dating for Women," yet another publication describes the Applicant's system in terms of the claimed functionality after noting its success with users:

> You're served a succession of photos of people who meet your age, gender, and location criteria. You swipe right if you want to meet someone, and swipe left if you don't. If you both swipe right, you can message each other.

Appendix 4 at 1. A fifth publication concurs, noting both the success of Applicant's system and the claimed technology:

> It's the fastest-growing dating application in America, and the flirting device is becoming ubiquitous in Australia among young urban singles. Tinder – more than any other app or website – has managed to suck the stigma out of meeting online. The smartphone app works a little like speed dating, but it's even more rapid-fire. Profiles, which consist of five photos taken from users' Facebook pages and a short description, are stacked on the app like a deck of cards. If someone likes what they see, they swipe right to indicate they're interested. If they don't, they swipe left. If two people swipe right on each other, they're a "match" and can start messaging inside the app. This way, the potential for unwanted attention is eliminated.

Appendix 5 at 1. Finally, a sixth publication provides the same attestation succinctly:

> Downloaded by more than 100 million people, Tinder is responsible for some 1.5 million in-person dates each week, according to its creators. It's helped to normalize "meeting online." Tinder did this with an ingeniously simple swipe "right for like"/ "swipe left for dislike" vetting process, connecting people only when there is mutual interest. Its soaring popularity has helped revolutionize modern dating, shifting us from finding love via chance to finding it via algorithm.

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

15

Appendix 6 at 3.   Thus, overwhelming objective evidence demonstrates the commercial success of Applicant's inventions.

Further, multiple competitors arising after the Applicant's system incorporated the claimed features, and publications have attested to this type of copying.   A product called "The League" "[c]alls itself the 'Tinder for elites[.]'"   Appendix 8 at 1.   "Like Tinder and Hinge, you can swipe right to indicate you're interested in someone or swipe left if you'd like to pass."   *Id.* at 5.   And like Applicant's system, you can communicate once you match.   *Id.* at 13.   These same features are touted by "The League" itself.   Appendix 7 at 1.   "Hinge" is another application that "looks very much like Tinder" (Appendix 9 at 1) and "borrows most of its interface from Tinder" (Appendix 1 at 3).   This application also works like Applicant's system:

> At first glance, they [Tinder and Hinge] look quite similar. Both give you one potential mate at a time that you can swipe right to approve or swipe left to dismiss. If two people approve each other, they're allowed to chat within Hinge.

Appendix 10 at 1.   Indeed, another article notes that Applicant's interface is "widely copied[.]"   Appendix 3 at 2.   Thus, objective evidence demonstrates Applicant's claimed inventions have been copied by others.

In addition, multiple publications have praised Applicant's system based on the technology claimed in the present application.   One publication stated:

> Tinder . . . found another way to cut down on the creep factor, through what its founders call "the double opt-in": You can only message someone after you've both signaled that you'd be down to talk to the other. Due to this feature, Tinder is succeeding with women turned off by traditional dating sites.

Appendix 1 at 2.   Another publication claimed that Tinder has "cracked the code" and has won the "race" of applications in its field.   Appendix 2 at 1; *see id.* at 2-3 (identifying the claimed features as reasons for the system's success).   In an article titled "How Tinder Solved Online Dating for Women," yet another publication praised Applicant's system in terms of the claimed functionality:

> You're served a succession of photos of people who meet your age, gender, and location criteria. You swipe right if you want to meet someone, and swipe left if you don't. If you both swipe right, you can message each other.

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

16

Appendix 4 at 1.  A fifth publication concurs, praising the Applicant's system and the claimed technology:

> Tinder – more than any other app or website – has managed to suck the stigma out of meeting online. The smartphone app works a little like speed dating, but it's even more rapid-fire.  Profiles, which consist of five photos taken from users' Facebook pages and a short description, are stacked on the app like a deck of cards. If someone likes what they see, they swipe right to indicate they're interested. If they don't, they swipe left. If two people swipe right on each other, they're a "match" and can start messaging inside the app. This way, the potential for unwanted attention is eliminated.

Appendix 5 at 1.  A sixth publication praises Applicant's system as "ingenious":

> It's helped to normalize "meeting online." Tinder did this with an ingeniously simple swipe "right for like"/ "swipe left for dislike" vetting process, connecting people only when there is mutual interest. Its soaring popularity has helped revolutionize modern dating, shifting us from finding love via chance to finding it via algorithm.

Appendix 6 at 3.  Thus, overwhelming objective evidence demonstrates industry praise of Applicant's inventions.

On November 3, 2016, *The Wall Street Journal* published an article that discusses embodiments of Applicant's claims.  *The Wall Street Journal* stated:

> For the millennial generation, the lingo of "swiping" is painfully obvious. But it didn't even exist until 2013, when the Tinder app introduced the finger-flicking gesture into its interface for choosing a date. When looking at the profile photo of a potential match, a dismissive swipe to the left moves on to the next prospect, while a swipe to the right indicates interest. And if the right-swipe is mutual, dating rituals can commence via instant messaging.
>
> Tinder's massive success, with users making more than a billion swipes a day, has led to an array of other apps adopting the swipe-to-like approach. "Swiping" has even permeated the language, with "swipe left" used as a general metaphor for rejection and "swipe right" for acceptance and openness.

Appendix 11 at 2.  Notably, the article attributes the commercial success and popularity of Applicant's product to the claimed features at issue in this patent application.  In addition, the article mentions that others have copied the claimed features embodied in Applicant's product.  This new article is in accord with the *ten* other references submitted by Applicant in the Initial Response; this overwhelming, objective evidence demonstrates that the claims are not obvious.

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

17

For at least these reasons, Claims 23, 30, and 37, as well as each of their respective dependent claims are in condition for allowance.  Favorable action is requested.

32793895

ATTORNEY DOCKET NO.:
083523.0118

PATENT APPLICATION
14/059,192

18

## CONCLUSION

Applicant has made an earnest attempt to place this case in condition for allowance. For the foregoing reasons and for other reasons clearly apparent, Applicant respectfully request reconsideration and full allowance of all pending claims.

If the Examiner feels that a telephone conference would advance prosecution of this application in any manner, the Examiner is invited to contact Chad Walters, Attorney for Applicant, at the Examiner's convenience at (214) 953-6511.

As indicated on the accompanying RCE Transmittal form, the Commissioner is authorized to charge the amounts of $1,700.00 (for the RCE fee) and $1,400.00 (for the three-month extension-of-time fee) to Deposit Account No. 02-0384 of BAKER BOTTS L.L.P. Although Applicants believe no other fees are due, the Commissioner is authorized to charge any necessary additional fees and credit any overpayments to Deposit Account No. 02-0384 of BAKER BOTTS L.L.P.

Respectfully submitted,

BAKER BOTTS L.L.P.
Attorneys for Applicant

Roshan S. Mansinghani
Reg. No. 62,429
(214) 953-6737

Date:   January 31, 2017

**Correspondence Address:**
**Customer No:     05073**

32793895

# APPENDIX 1



 People

NEWS   WATCH PEN   PHOTOS   STYLE   ROYALS   FOOD   PREMIUM   SHOP

 SUBSCRIBE NOW

CELEBRITY

# From Tinder to Lulu: A Guide to the Modern World of Dating Apps

BY NATE JONES

POSTED ON MARCH 10, 2014 AT 4:00PM EST

SHARE    TWEET    EMAIL



GETTY IMAGES/GETTY

Dating is, perhaps, the only activity you get a reputation for being good at by being bad at it. (Paradoxically, someone who was great at dating would not need to go on many first dates.) Fortunately for the rest of us, a new generation of Internet entrepreneurs has risen to make finding love – or at least, finding someone to make out with – as easy as firing off a Snapchat.

Like other dating sites, the new phone-based dating apps are their own individual world, with their own subtle rules and social mores. Whether you're an OKCupid addict who can't help writing 5,000-word explanations of your favorite books, or a Tinderholic who swipes left with the unsparing air of a French revolutionary, join us in exploring this brave new world of phone-based seduction.

## Normal Dating Sites



AN OBSCURED DATING PROFILE

When people say "online dating," this is what they mean. The setup of traditional dating sites remains fairly similar across all platforms. Users add their most flattering pictures, fill out profiles they hope fall in the sweet spot between "creative" and "boring," and then answer questionnaires to find people who are similar. Stereotypes remain: OKCupid is for grad students, eHarmony is for people who want to get married, FarmersOnly is for, well, you get it. There are downsides – creepy messages for women, the possibility of obsessing over strangers you will never meet – but there's a reason these sites haven't changed much over the years. (They basically help people find dates.)

There's plenty of advice online on how to "hack" these sites for your own benefit, and you'll likely not have to set up a massive data-mining enterprise to do so. One *Wired* article narrowed it down to a few simple tips. If you're a gay man, pose outdoors. If

## most popular


1. Rob Kardashian Ditches Blac Chyna and His Sisters, Then Blocks Them as He Goes Reclusive Again


2. Michael Douglas Says Val Kilmer Is Battling Cancer: 'Things Don't Look Too Good for Him'


3. Amal Clooney Rocks a Lacy Black Crop Top for Dinner with George


4. Hilary Duff Apologizes for Controversial Halloween Costume: 'It Was Not Properly Thought Through'





you're a straight woman. shoot selfies. Everyone should take up – or at least, be seen taking up – surfing and yoga.

If changing your interests to become more datable sounds strange and inhuman to you, don't worry. Another school of thought, backed up by OKCupid research, says that you really DON'T want *everyone* to like you. Instead, it suggests finding the things that are most distinctive about yourself, whether or not they're considered "conventionally" attractive, and playing them up. A look at *New York* magazine's interviews with the most-



messaged New Yorkers would seem to bear this out: Better to have half the population think you're a 1 and half think you're a 10 than for everyone to agree you're a 6.

Now, what if you don't want to spend hours painstakingly customizing a profile? Then you might need ...

**Tinder**



THE TINDER BROWSING SCREEN

Inspired by the tech industry's continued failure to invent "the straight Grindr," in 2011 the writer Anne Friedman came up with a list of suggestions for making a hookup app that would be popular with women. The main rule? Allow only ladies to search, which would supposedly eliminate the flood of messages that awaits any woman who signals she's interested in casual sex. Tinder doesn't do this exactly, but it found another way to cut down on the creep factor, through what its founders call "the double opt-in": You can only message someone after you've both signaled that you'd be down to talk to the other. Due to this feature, Tinder is succeeding with women turned off by traditional dating sites.

The mechanics are simple: Sign in with Facebook (no need to invent a witty username), upload some cute pictures and choose your location settings – just as those spammy banner ads promise, you'll be greeted with an endless array of sexy singles in your area. If you like the look of someone, all you need to do is swipe right on your smartphone (or left if you're not interested) to get matching. This is another reason Tinder is popular with women: It lets them be just as shallow about online dating as men traditionally have been.

Like Snapchat, Tinder has a reputation for being all about sexting – which is quickly disproven by using it. While a recent *GQ* article detailed all the ways people are using the app for casual sex, the first Tinder date this reporter went on was a perfectly G-rated evening with hot chocolate in a park.

The lack of profiles on Tinder turns out to be its most salient feature. It means there isn't a lot to distract you from your mission of swiping through as many suitors as possible, but it also means when you do get a match, attempts at conversation can prove unfruitful. A brief sampling of the typical first messages on Tinder:

*Hey!*
*How's it going?*
*Hey, how's it going?*
*Hey there, how are you?*

To find any lasting chemistry on Tinder, we have three suggestions. The first two: Message lots of people, and try your darndest to ask interesting questions. The third, born of anecdotal data, is to be one of those users who swipes right on *everyone*. According to the Awl's Tinder glossary, these people are known as "indiscriminate narcissists," but you can't argue with results. Yes, Tinder is all about chemistry, but it turns out chemistry is a volume business.



5. The '90s Are Back! Beyoncé and Blue Ivy Dress Up as Salt-N-Pepa for Halloween

**see also**



The sweatshirt designed by an Apple engineer that's bringing manufacturing back to America.



$125K Global Mobile Data Bill Drops to $120 – Thanks mindWireless



Halle Berry Slams Instagram Troll Who Criticized Photo of Her Kids: 'I'm Not at All Ashamed' of My Children



Rehab Addict Host Nicole Curtis Is Pregnant

But what if you're intimidated by the thought of all those strangers? Then you might need

**Hinge**



THE HINGE IPHONE APP SCREEN

Like many apps, Tinder verifies your identity through Facebook, and you can see how many friends you have in common with each of your prospective matches. Hinge, which borrows most of its interface from Tinder, takes this one step further – you can *only* see people with whom you share a mutual friend. Another difference: instead of an infinite stream of users, you only get a certain number per day. Once you've swiped through them all, you've got to wait another 24 hours for the next batch. (Like a pyramid scheme, you get better rewards – in this case, more matches per day – the more friends you have using the app.)

Born out of technological necessity (in the early stages, most users only had a few friends-of-friends using the app) this limiting factor goes against the general trend of dating apps – and of the infinite stream of the web itself. Whether on purpose or not, Hinge has eliminated one of the downsides of online dating, that sense that, in a bottomless ocean, there is always a better, prettier fish to be found.

Still, this reporter has not yet met anyone who has ever gone on a Hinge date. We have two theories as to why. The first has to do with the social minefield that comes from a dating pool only made up of one's friends-of-friends. It's hard to tell whose friends are off-limits. Are your ex's friends? Your high school crush's friends? Your brother's friends? The kids you haven't spoken to since high school? If someone is theoretically close to you in a network of friends and you haven't met them yet, there might be a good reason why.

The second has to do with Hinge's profile – or lack thereof. Like Tinder, Hinge connects through Facebook, but it takes this connection a step further. Your only pictures are your Facebook profile pictures. Your only interests are the Facebook pages you Like. This has the curious effect of making everyone less attractive: Most people's Facebook profiles, scrubbed by years of exposure to grandparents and employers, are flatter, less interesting than their online dating profiles. In general, everyone is less attractive. Hinge announced in February it would soon roll out greater profile customization, but as of mid-March those changes had not arrived. Once it does, maybe more Hinge users will be able to get their foot in the door.

But what if you want to use a dating app mostly to augment your IRL dating life? Then you might need ...

**Lulu**





A EXAMPLE OF LULU REVIEWS

Lulu is not a dating app, per se. Instead, it's what creator Alexandra Chong calls "a Yelp for boys." Women can sign up to review their male Facebook friends, whether they're platonic BFFs, one-night stands or long-term boyfriends – and the whole thing is anonymous. (Until very recently, men had to opt out of being rated on the app; any dude with a Facebook profile was fair game. Now, because of privacy concerns, Lulu has changed to an opt-in system, wiping many reviews from the app.)

Reviews on Lulu don't take the form of Yelp's exquisitely critical essays, though. Instead, women rate the guys they know on a scale of 1-10, and then assign them labels from a word bank of hashtags, both positive (#RespectsWomen) and negative (#CantTakeAHint). The value for women is obvious, if a little creepy. Who can say no to more information? In its year or so of existence, there's been one pleasant surprise: Most reviewers spend more time recommending date-worthy dudes than anonymously excoriating their exes.

Men can download Lulu, too, though they can't see what's been written about them. (Not even if they spend months painstakingly creating a fake female Facebook account for that express purpose – but perhaps we've given away too much.) However, through Lulu's Sex Ed feature, guys can get their own secret glimpse of information about their female friends (spoiler: 56% say flowers and dinner are the perfect Valentine's Day gift). Men can also add their own voice to their Lulu review pages, adding positive hashtags to their profile (#MothersLoveMe), and describing their turn-ons (#FreakySide) and turn-offs (#GrannyPanties). The easiest way for a guy to get a date on Lulu is clear: Never fill out any of these forms.

👍 Like  Be the first of your friends to like this.

**Like us on Facebook for more stories like this!**

see also ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

# APPENDIX 2

GQ

Style    Grooming    Women    Entertainment    Culture    Video

🔍    ✉ Newsletter    Subscribe Now



ALDO    ALDO

See What's New



## Love Me Tinder


BY EMILY WITT

f ⚲ 15



Until recently, hookup apps were straightforward but sleazy. Then along came Tinder, the dating-hookup hybrid that made things simpler, sexier, and particularly lady-friendly. In just fifteen months, it seems to have cracked the code and caught fire. Here's how Tinder won the sex-app arms race

Photo Tips: How to Make a Tinder Profile


9 Tales from the Tinderverse

That fall, his relationship of two and a half years finally ended, and Eli found himself single again. He was 27 years old, losing the vestigial greenness of his youth. He wanted to have sex with some women, and he wanted some stories to tell. He updated his dating profiles. He compiled his photos. He experimented with taglines. He downloaded all the apps. He knew the downsides—the perfidy of the deceptive head shot, the seductions with the intellect of a fence post—but he played anyway. He joined every free dating service demographically available to him.

Around the same time, somewhere across town, a woman named Katherine shut down her OkCupid account. She had approached Internet dating assertively, had checked the box that read Short-term dating and the one that read Casual sex. Then a casual encounter had turned menacing, and Katherine decided she no longer wanted to pursue sex with total strangers. But she had a problem: She liked the adventure, she had the usual human need for other humans, and she needed the convenience of meeting people online. Katherine was 37, newly single, with family obligations and a full-time job. Most of her friends were married. She needed something new.

When Katherine and Eli downloaded Tinder in October 2013, they joined millions of Americans interested in trying the fastest-growing mobile dating service in the country. Tinder does not give out statistics about the number of its users, but the app has grown from being the plaything of a few hundred Los Angeles party kids to a multinational phenomenon in less than a year. Unlike the robot yentas of yore (Match.com, OkCupid, eHarmony), which out-competed one another with claims of compatibility algorithms and secret love formulas, the only promise Tinder makes is to show you the other users in your immediate vicinity. Depending on your feelings for these people, you swipe them to the left (meaning no thanks) or to the right (yes, please). Two people who swipe each other to the right will match. Your matches accrue in a folder, and often that's the end of the story. Other times you start texting. The swiping phase is as lulling in its eye-glazing repetition as a casino slot machine, the chatting phase ideal for idle, noncommittal flirting. In terms of popularity, Tinder is a massive and undeniable success. Whether it works depends on your idea of working.

For Katherine, still wary from her bad encounter, Tinder offered another advantage. It uses your pre-existing

Facebook network and shows which friends, if any, you have in common with the person in the photo. On October 16, Eli appeared on her phone. He was cute. He could tell a joke. (His tagline made her laugh.) They had one friend in common, and they both liked Louis C.K. (Who *doesn't* like Louis C.K.? Eli says later. Oh, you *also* like the most popular comedian in America?) She swiped him to the right. Eli, who says he would hook up with anybody who isn't morbidly obese or in the middle of a self-destructive drug relapse, swipes everyone to the right. A match!

He messaged first. Sixty-nine miles away?? he asked.

I'm at a wedding in New Jersey, she replied.

So, Eli said to himself, *she's lonely at a wedding in New Jersey.*

TRENDING THIS VERY SECOND



Style
The Best Last-Minute Halloween Costume Ideas



News & Culture
Nevitt [AND] and Russ—This Is Going to Be the NBA's Best New Rivalry



News & Culture
4 Things Conservatives Get Right About Guns

Eli: So why you on Tinder?

Katherine: To date. You?

Eli said it was an esteem thing. It had taught him that women find me more attractive than I think. Unfortunately for Katherine, he told her he didn't have a lot of time to date. He worked two jobs. They wanted different things. It therefore read as mock bravado when Eli wrote, But you ever just want to fuck please please holler at me cool??? He added his number.

Katherine waited an hour to respond. Then: Ha. And then, one minute later: I will. And: I kinda do.

Eli: Please please do. :)

Katherine liked that he was younger. He was funny. He did not, like one guy, start the conversation with Don't you want to touch my abs? He said please. Eli liked that Katherine was older. Katherine wrote: You can't be psycho or I will tell [name of mutual friend]. He sympathized with that, too.

The parameters were clear. They arranged to meet.

I first signed up for Tinder in May but found it skewed too young. (I'm 32.) When I looked again in mid-October, everything had changed. I swiped through people I knew from college, people I might've recognized from the train. I saw it had gone global when a friend in England posted a Tinder-inspired poem on her Facebook page (and here are we, He and Me, our flat-screen selves rendered 3D). I started to check it regularly. The more I used it, the more I considered how much it would have helped me at other times in my life—to make friends in grad school, to meet people after moving to a new city. It seemed possible that one need never be isolated again.

In December, I flew out to Los Angeles, where Tinder is based, to visit the company's offices and meet two of its founders, Sean Rad and Justin Mateen, both 27. (The third is Jonathan Badeen, the engineer who built the app.) Rad is chief executive officer; Mateen is chief marketing officer. They are also best friends, share a resemblance to David Schwimmer, and have been known to show up for work in the same outfit. I was staying only a mile from Tinder's offices in West Hollywood, and within forty-eight hours both founders showed up on my Tinder feed. Other memorable appearances on my feed in Los Angeles included a guy holding a koala bear, a guy and his Yorkshire terrier, in matching sweaters, and a pipe-smoking dandy with a Rasputin beard, horn-rimmed glasses, and a gold ring the exact shape and size of a cicada.

Rad and Mateen are local boys. They both grew up in Beverly Hills, although they attended different private schools. They first encountered each other at 14, when Sean made a play for Justin's girlfriend. (We met because we both liked the same girl—but the girl was my *girlfriend,* says Justin.) They reconnected at USC, and then both started independent companies. Justin's was a social network for celebrities. Sean's was Adly, a platform that allows companies to advertise via celebrities' social networks. He sold the majority of his stake in 2012. I didn't want to be in the ad business, he says. He also didn't want to make things for computers. Computers are going extinct, he says. Computers are just work devices. For people his age, the primary way to interface with the technical world was through a mobile device.

Rad and Mateen have shared business ideas with each other for years, and every idea begins with a problem. The key to solving the problem that interested Tinder: I noticed that no matter who you are, you feel more comfortable approaching somebody if you know they want you to approach them, says Sean. They had both experienced the frustration of sending smoke signals through social media. There are people that want to get to know you who don't know you, so they're resorting to Facebook, explains Justin. When those advances or friendings or followings are unwanted, they say, the overtures can seem a little creepy. (Consider, for example, the long-standing mystery of the Facebook poke.) Sean was interested in the idea of the double opt-in—some

establishment of mutual interest that precedes interaction.

And so Tinder entered a fossilizing industry. Most of the big players (including Match.com, Plenty of Fish, OkCupid, eHarmony, Manhunt, JDate, and Christian Mingle) established themselves before billions of humans carried miniature satellite-connected data processors in their pockets, before most people felt comfortable using their real names to seek companionship online, and before a billion people joined Facebook—before Facebook even existed. Tinder's major advantages come from exploiting each of these recent developments. The company also managed to accrue, in less than a year of existence, the only truly important asset of any dating site: millions and millions of users.



Nicole is 30, a willowy brunette with curly hair who describes herself on Tinder as Dancey, smiley, lovey, tall. Like 6o tall. Since joining Tinder last summer, she has chatted with dozens of guys but only gone on two Tinder

dates. In general, she thinks Tinder is hilarious.

Sometimes she'll start Tindering while on the train and will get so distracted she'll miss her stop. She finds she sometimes falls into a soothing swiping rhythm where she's not really looking at the men, just calming herself with a repetitive pattern of left-right swipes. Getting a match seems to activate some primal-gratification center in her mind. She likes that it's played like a game.

I'm definitely not the type of woman who walks around thinking that everyone thinks I'm hot, Nicole tells me. She does not feel like the people who want to date her are abundant and everywhere, so when a lot of matching happens, it comes as a real boost. It makes me look at my external world in a more favorable way, she says. When she's bored, she goes on Tinder. When she wants validation, she finds it on Tinder. She uses it when she's feeling down. (Tinder gets a slight uptick in use on Sundays, that day of hangovers, boredom, and planning.) Sending screenshots of the most ridiculous photos that come up has become a source of merriment for her and her friends. There seems to be a preponderance of men posing with tigers, she says.

Actually communicating with people is another story. I do a lot of not responding, which is probably horrible, politenesswise, she says. It takes an especially dynamic person to win her over at text messaging. The usual Hi, how are you? bores her. I'm a social worker, and I talk to people all day, she says. I'm not interested in someone's How are you? question. Her two dates both persuaded her to go out by being really solid text conversationalists.

The dates were fine. They did not end in sex, unlike many of her first dates on OkCupid. Part of this was simply that expectations are so much lower on Tinder; all you know about the people in your folder is that your advances are welcome. The lack of stated purpose in each profile can lead to some confusion. In fact, many of the people I interviewed asked me what the site is supposed to be for. Some people, used to reading between the lines in such matters, simply assume casual sex. Not Nicole. I ask how she makes that clear, and she says she does not respond to messages that arrive at 3 A.M.

She has used the site both in New York, where she lives, and in the Bay Area, where she is from. She observes a clear difference. When she signed on in the Bay, she felt a flood of recognition: These are my people! she said. They're on Tinder here! I ask what that means, and she says. More earthy, hipstery thirtysomething folks. She had more matches. They were all so cute and looked so friendly and warm and fun. But how does she distinguish that from people in New York? She describes a typical photo of a New Yorker as a selfie taken in a fancy lounge bathroom while wearing a suit.

<span>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .</span>

As a college student, co-founder Justin Mateen perfected a system of party promotion. He would strike an agreement with a club to ensure a minimum of drink sales. He would hire a performer. Then he would enlist representatives from the fraternities and sororities of USC and UCLA to recruit people, promising a free ticket for every ten tickets sold from their houses and a monetary prize if they brought one hundred partygoers. He took a cut of sales—the more money the bar made, the bigger his cut. It was a good little gig until his parents began to bother him about it: We don't want you to be a party thrower, they said.

But it helped, when Sean and Justin started Tinder, that Justin knew how to populate a party. They had disdain for traditional advertising; they wanted a new challenge. He wanted the app to catch on with the most difficult group of people—college students too young and socially active to need online dating, people who saw it as a stigmatized practice. He wanted people to join Tinder not because they saw an ad on Facebook but because they recognized its social value.

So Justin mined his contacts for models and sorority girls. Whitney Wolfe, Tinder's vice president of marketing, remembers going to the Apple store and telling the guy behind the counter about Tinder and watching his eyes pop out as he began swiping through; there may have been only 200 people, she remembers, but they were 200 of the prettiest girls you've ever seen.

In the beginning, Justin ran individual campaigns to encourage people to sign up. He would text each person personally. He targeted what he called social influencers, avoiding the awkward crowd of people probably most in need of a new way to make friends. Then he hit USC, enlisting the help of his younger brother and sister, who were students there. He launched Tinder on campus with a party for 300 USC students at his parents' house.

He shows me a photo of it from Instagram: a pool in the sunshine, shirtless partygoers, lanterns, an inflatable slide. To his mother's chagrin, he hung a giant Tinder banner from the roof. That was sixty-two weeks ago, he says, using Instagram's preferred metric of time. A year and ten weeks after the pool party, the company claims to have made a half billion matches and registers 450 million swipes a day.

Inspired in part by the path of Facebook, which launched first at elite colleges, Justin turned not just to the Ivy League but to schools known for their good parties. After seeding USC, Justin and Whitney traveled to schools like SMU in Dallas. Whitney might stand on a table in a fraternity and announce that there were 200 hot sorority girls on the app waiting for the men to sign up, then run to the sorority and tell them the reverse. They left a trail of stickers behind them—in the best campus bars, in the most exclusive nightclubs.

I was in a sorority, so I knew how to get into the brains of sorority girls, says Whitney, who is now 24. Justin knew how to get into the brains and the pants of sorority girls. For colleges they did not visit, Justin hired a campus representative, usually the sorores siblings of someone he knew from L.A. A unphue, several of them

campus representative, usually the younger sibling of someone he knew from Los Angeles; several of them actors, all of them the most social and charismatic people he could find.

My interviews with Tinder's employees took place half in their offices, half in the leather interiors of luxury cars or while descending in the elevator from brunch at Soho House or waiting for the valet in the gardenia-scented drive of the Beverly Hills Hotel. Justin and Sean grew up rich and popular in a city of surface and sheen. They have some of the affectations of Hollywood executives. (They wear flannel shirts and sneakers; their shared office is littered with Nerf gun darts.) Still, their acute understanding of the metrics of social status seems a product of their environment. Sean is the homebody of the two, preferring the company of his girlfriend of six months, Alexa, who is the daughter of Michael Dell, the founder and CEO of Dell. They met on Tinder, and her friends call her Tinderella. Things get awkward at family functions when Sean opines that computers are dead.

Justin is more raffish. If he is less interested in having a serious relationship than Sean, it is because what genuinely seems to make him happiest is going out in the world, making new friends, and persuading them to download Tinder. His home, a spacious bungalow on the border of Beverly Hills and West Hollywood, feels like a barely occupied hotel. (He selected his dining-room table because it reminded him of the lobby of the Delano South Beach in Miami.)

One day he had a lunch meeting with the producers of *The Mindy Project*, which will be putting Tinder in an

One day he had a lunch meeting with the producers of *The Mindy Project*, which will be putting Tinder in an upcoming episode, and I rode along with him. As I listened to him chat with his art consultants over Bluetooth in his black Mercedes SUV with its Tinder sticker on the spare tire, I wondered whether L.A.'s VIP-obsessed culture had something to do with the company's exponential growth. It's difficult to imagine Tinder coming from Silicon Valley. The key to Tinder—the downiest opt-in—is an idea born of real-world experience (this is what you want in a bar—to know that the person you want to hit on wants you to hit on him or her) as opposed to sophisticated computer metrics. For once in the tech world, the socially gifted are leading the socially stunted.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Ben messaged me first. He was interesting, because his tagline said, Tall, dominant man seeks submissive girl. Intelligence and humor a must. He agreed to be interviewed, then added, Will still put the moves on you, obviously. Good, I thought, staring with boredom and resentment at my phone. He turned out to be a gentleman, saying he has used the service to make friends as much as he has to facilitate his BDSM fetish. I am not into BDSM, but I did feel happy when Ben kissed me and then when he text-messaged me a week later and called me darling.

I talked to a European who uses Tinder while traveling for work. I noticed when I was in the Midwest that girls were far more approachable, he said. They returned messages more. I talked to a tech consultant in Los Angeles who uses Tinder to enliven a dull or overly male social situation—like the last bachelor party he went to in Las Vegas. The guys just some scemed on Tinder. People coupled off. People got naked. Mayhem ensued. I asked about the women—were they, er, from Las Vegas? They weren't locals, and they weren't hookers, he said. They didn't have to be. The above experience is what people are optimizing for when they're single in Vegas, he says. He said he has friends that start firing up the app as soon as they land at the airport.

One canard is that Tinder disproportionately favors the beautiful. I swiped one guy, David, to the right because his photo made me laugh. He had taken a common trope—the painfully serious selfie—and turned it into a joke.

He messaged a few days later and turned out to be the most overtly sexual person I chatted with on Tinder. Like most heterosexuals, I have spent years watching my gay friends cruise apps like Grindr with muted fascination. How easy it was for willing men to have spontaneous sex with strangers! What was wrong with women like me, equally willing and desirous, at least in theory, but in practice so finicky and inhibited? The idea of a Grindr for straight people took hold in the heterosexual imagination, becoming a sort of holy grail. But it never seemed to work out. Blendr has a pretty sordid feeling to it. Bang With Friends was conceived drunkenly and ended in a lawsuit.

When Tinder appeared, its mimicry of Grindr's location-based approach seemed to indicate that Grindr for straight people had finally arrived. Sean and Justin insist that that's a mischaracterization. (Married people can use it to meet tennis partners!) But like most people, I know the difference between corporate skywriting and what humans are actually like. If Mormons in Utah are using Tinder to find husbands and wives, hedonists in New York are fulfilling their dreams of a futuristic mobile-phone-sex utopia.

I have already had what I would consider some pretty inappropriate thoughts concerning you so far, wrote David. He had used the service for casual sex before. My level of knowledge when it comes to sex, the psychology behind it all and lots of fun stuff is not something I hide. He said several women have taken advantage of his comfort and confidence to use me for sex and ask me to help them experience new things.

I told him I would be interested in meeting up...at some point. This was genuine. He wanted to meet up that night. When I said no, he asked why, I told him I had plans with friends. He offered to pick me up from the party I was going to, I wrote, No, I'm flattered but just want to hang out with friends tonight. He suggested we meet afterward. Not tonight, I wrote. He asked what the real reason was. I was guilty of making an overture I no longer wanted to keep, and things started feeling less like flirtation than unwanted pressure. After a certain point, I knew I would not be having casual sex with David.

I don't agree with the Tinder founders, who say there isn't a straight version of Grindr because girls aren't wired

that way—I know too many women who have used dating services for casual sex. Most mainstream dating companies downplay or ignore the use of their services for casual sex, the philosophy being that people who want that will find it. If casual sex is the main selling point, however, people who don't want it will be alienated.

But sometimes one wishes the geniuses of the tech world would address certain problems even more directly. Beyond proving that users are real because they have a Facebook account, how could a dating app help a sexually adventurous woman both pursue casual encounters and reliably vet potential partners? How could it help her minimize the risk of rape?

I thought also of the party I was headed to, of the problems of creepiness that Tinder purported to solve. There's creepiness, and then there's the stigma of everyday loneliness and desire. But isn't desperation one of the animating forces of life? I hoped my friends would not wait for the double opt-in, that they would creepily ask their crushes to be their Facebook friends, that they would stare at each other, and reveal their vulnerability, and make excruciating overtures that would be met with catastrophically embarrassing rejections. I went to my party, during which David texted twice—and once the next morning, and once the day after that, and twice the following Monday.

<br>

Sarah is the kind of person whose presence on an online dating site convinces everyone else that it's normal to use it. She is a native New Yorker, 28 years old, beautiful and stylish, with a job at a tech company and a large network of friends and family in the city, and she's immediately perceivable as a happy, well-rounded person. Like most people I interviewed, she has tried other dating sites—HowAboutWe, Grouper, OkCupid—but she was most drawn to Tinder because she doesn't have to provide any information. She found most people's self-presentation on OkCupid too calculated; also, you have to write so much. Tinder, she says, is just how you would go about things at a bar, and as easy as a Facebook like. You look at people, pick one who looks nice to you, then try to talk to him.

Sarah seems to prove the theory that Tinder's success has to do with its appeal to women. Rather than a total inundation with messages from strangers on OkCupid, Sarah gets to choose whom she likes. Going through potential dates does not take up all her time—she can easily cover a few dozen in a span of minutes.

She joined Tinder in the middle of September. She was about to switch jobs and was winding things down at a previous job, so she would spend tons of time playing on Tinder. She was the first person I interviewed, though not the only one, who referred to using Tinder with the verb *play*. Contrary to some opinions, Sarah found she could tell more from a person's photos than she could from a carefully thought-out website profile. A picture is something that's taken in the moment, she says. You can't change your smile. Her pet peeve is surfing photos. She always thinks they're some kind of fake stock photo and always says no to people who have them. She also finds it weird when a guy lists his height. I think they're lying to me.

She casts a broad net. If she feels indecisive, she swipes yes. She does not waste time trying to compose lyrical messages: Just say some bullshit. She also doesn't like prolonged messaging: Just go out or not. To do anything else is a waste of one's battery. (Tinder's location-based tech drains phone batteries.) On the casual-sex question, she's not interested. In the beginning, someone messaged her, So if you're on Tinder you're into stranger sex, when are we having stranger sex? Isn't Tinder for that? She replied, Not for me, and blocked him. It's not that she isn't into casual sex. I have people that I can use in that way if I want to, she said. I don't need to find five of them.

Sarah's first four Tinder dates were fine, but the fifth was one of those minor miracles of coincidence that sometimes manifest themselves amid the throngs of New York City. One weekend night, Sarah went to a bar and got very, very drunk. The next morning, her friends asked her about the guy whose number she got. What guy? she asked. Her memory was foggy. Her friends were appalled—only the best-looking guy in the bar! She had no memory of the event. She went on Tinder, swiping despondently. She resumed a chat she'd been having with a man whose photos were cute-ish, whom she had swiped to the right despite the presence of one weird artistic selfie that made the guy look like kind of a douchebag. They chatted with the usual banalities: Hey and How's your day? and How's your weekend? He asked for her number. She gave it to him. Then the magical moment: I have something weird to tell you, he said. He had not been sure until she gave him the proof—her number was already in his phone. It was the guy from the previous night. When I met her, they had gone out five times in two weeks.

<br>

Katherine and Eli, the older woman and the younger man, met at what he remembers as a weird, kind of fancy bar that's in some kind of labyrinth.

Despite the intensity of their texting, they did not start making out right away. Instead, they talked. They shared their recent sexual histories, their past sexual histories, their addiction problems. It seemed like a fair thing to do, says Eli. Maybe it wasn't sexy, but the theme of it was more intimate, like I need to know you better so, like, a safety thing.

They went to her place. They had sex, it was great. (Both parties confirmed this.) Then they had sex again. He left after midnight, because he had to work in the morning. That they haven't met again is more because they live inconveniently far from each other. I might not go out to Bushwick, where he lives with his roommates, says Katherine, but I think our paths will cross again in one way or another.

I ask Eli if he is looking for a girlfriend. He says he would like a partner, sure, but that he still wants to meet people, that he's interested in polyamory. He attributes his flexibility to how he was raised, in a home where acceptance of sexual diversity was seen as the enlightened political position. I'm definitely queer, in a sense, he says. In the sense of being way more open-minded to anything.

Eli is pursuing a sexual narrative that doesn't end in closure, that doesn't bear the expectations of gendered rituals. And whether it's for sex or just for meeting people, maybe Tinder will be the app for the never-ending present, for the idea of one's life not as culminating in a happy ending but a long series of encounters, sexual or otherwise. When I watched the founders of Tinder giving interviews, every reporter they spoke with seemed to ask how many marriages had resulted. After talking to people about their experiences, I realize that to think about marriage is to completely miss the point of Tinder. The app is about the world around you, the people in your immediate vicinity, and the desires of a particular moment.

Eli really likes Tinder. He considers it to be the most honest form of online dating. He loves the feeling of scoring, a high without consequences. When I met him, he had just had an encounter he called awful, but that was, in its own way, a kind of dream.

She messaged at 10 P.M. on Thanksgiving night. She was a woman with whom he had transitioned from Tinder to text messaging, but this posed a problem: He could not remember who she was, what she looked like, and worst of all, her name. He got on a train anyway. He arrived at a glossy doorman building in Lower Manhattan. She had not yet arrived home, which meant Eli called and got her voice mail, from which (with relief) he learned her identity before she arrived. It turned out she's one of the ones who are on Tinder, and I'm like, Why are you talking to me, I'm a chubby Jew, my teeth are yellow because I drink coffee, and you're very successful and pretty.

But the night went downhill from there. They undressed and kissed and got into bed together, but they didn't connect. He spent the night, though she didn't feel like having sex. She talked really fast and mentioned her intention to wean herself off Adderall. Eli felt like perhaps she was disappointed in him, that he failed to meet her expectations. He left in the morning. I ask if the encounter depressed him. He thinks for a minute, tilts his head to the side, then says no: At the end of the day, I got to see her naked.

*1. Obviously these people requested fake names.*

**Emily Witt's** (@emsbbs) *Future Sex, a survey of female sexuality in America, will be published in 2015*

Life     Lifestyle     Relationships     Sex     Women     Tinder     Technology

SPONSORED STORIES                                              Recommended by Outbrain







Dress To Impress: 5 Reasons To Customize     The Glory Behind ManUndies, a Viral     The Simulation Fish Theory from Recont May be
Your Workday Wardrobe                         Underwear Brand People Love               a Reality







This L.A. Startup is Changing the Way People   This Man's Hoodie is Universally Flattering,   American People are Born Between 1935 and
Buy Watches                                    He Tested                                     1958 Are in For A Big Surprise

MORE STORIES LIKE THIS ONE





  

Sarah Paulson's Career Advice?
Don't Succeed So Early

Life On The Move: Look Book

## Magazine



Subscribe now and get a FREE weekender bag and
the GQ Style Guide

Subscribe



FOLLOW US ON

## Instagram

Follow @GQ for photos of celebrities, what to wear
to work, and more

Follow Us



Subscribe  GQ Report  Contact  Press Center  RSS Feeds

Find GQ.com Around the World

Resources

CONDÉ NAST

# APPENDIX 3



Get a tip? Let us know.

Follow us

News ▾   Video ▾   Events ▾   Crunchbase

Message Us    Search

DISRUPT LONDON  Prices Increase For Disrupt London In Just 5 Days  Save £250 On Tickets Now ▶

Next Sto



**Popular Posts**


First Look At Microsoft's Surface Dial


The New MacBook Pro Is Here


A Jana co-founder discusses Tinder's donation to Trump


These are Tesla's stunning new solar roof tiles for homes


It looks like Apple killed its cheapest laptop


Microsoft offers Apple users $650 off to trade a MacBook for a Surface


Magic Leap goes to Finland in pursuit of Nordic VR and AR talent


Founders comment on why shutting down / bans sell your company


A lack of female employee representation down since last diversity report


How to encrypt your Facebook Messages

# Tinder's First Non-Dating Feature Is Speed Networking For Forbes' 30 Under 30

Josh Constine | @joshconstine

   



Tinder is uptaking into the friend zone and the work place. After years of saying "We want to overcome all the issues of meeting new people", not just dating them, today Tinder will announce its first explicitly non-romantic feature. But it won't be in Tinder's app. And it will only be available to the 2,000 or so young movers and shakers who've made Forbes' 30 Under 30 list.

Forbes is building a social networking app exclusively for these millennial leaders, which will launch at its 30 Under 30 Summit in Philadelphia on October 4. The goal is to stoke this community into somewhat of an alumni network that attracts more powerful youngsters to the Forbes empire. It will offer a directory of members, a feed where they can post social media stories or polls, and the option to message each other.

But to break the ice, Forbes worked with Tinder and its co-founder Sean Rad who made the 30 list in 2014 to build a speed-networking feature. Members can swipe through profiles of fellow prodigies of both sexes, see their industry and description, and if both people swipe right, they'll be invited to chat.

The partnership came about because "Tinder was trying to get into the business networking space," says Forbes' Head Of Mobile Products Salah Zalatimo, who came in from its acquisition of the app Camera.ma.

He tells me Tinder's founders are "part of the family...it seemed like a mutually beneficial and symbiotic fit. Tinder gets to figure out and learn about getting into the business networking space and we can help our members."

That doesn't mean Tinder is rushing in to compete with LinkedIn. Rad tells me non-romantic networking is "not core to our strategy right now." Still, he admits "Will this serve be a nice experiment? Sure... We think about meeting people as sort of a general challenge. We don't want to solve it for just one [form of relationship]."





## Crunchbase

**Tinder** —

FOUNDED
2012

OVERVIEW
Tinder is the dispatch meet the most with most popular app for meeting new people and making people yourself you surface. To meet someone there who you might be there are more than 26 million matches made with Tinder through its 100 plus billion swipes you seen lines you push minded members make interesting people friend up and get chance with someone you have in common can be anyone the ...

LOCATION
West Hollywood, CA

CATEGORIES
Internet, Dating, Social Media, Apps

FOUNDERS
Joe Munoz, Jonathan Badeen, Sean...

WEBSITE
http://www.gotinder.com

Full profile for Tinder

**NEWSLETTER SUBSCRIPTIONS**

☐ **The Daily Crunch**


☐ **TC Weekly Roundup**

☐ **Crunchbase Daily**

SUBSCRIBE

**LATEST CRUNCH REPORT**







Apple Unveils New MacBook Pro | Crunch Report

**Watch More Episodes ▶**

Back on its own app, Rad says Tinder Plus, its new monetization feature that limits your right swipes unless you pay, is doing "incredibly well. We're pleasantly surprised." He also tells us that any backlash about changing the rules to prevent people from endlessly liking everyone has died down.

With over 1.5 billion swipes and 26 million matches per day, starting to earn money hasn't extinguished Tinder's wildfire growth. It's up from 10 million matches per day in June 2014. But with the success of double opt-in connections for romance, Tinder's widely copied interface could one day let it ignite new markets and use cases. What it learns from Forbes could fuel a way to eventually find friends, mentors, sales leads, or even co-founders on Tinder.

**UP NEXT**
Amplitude Raises $9M For A New Approach To Analytics And Pricing

## Recommended For You



Apple says no fun allowed on the Touch Bar



9 smart TV reportedly laid off nearly half a dozen staff...



Uber's Otto self-driving truck delivers its first...



Twitter lays off 9% of its workforce as it posts a...



Hands-on with the Surface Dial



Surface Studio is Microsoft's new all-in-one PC

### From the Web

Sponsored Links by Taboola



Unlock the Value of Data With the Right Flash Storage



How to Solve the Top 10 Mistakes When Handling Website Images



Get the Complete Guide to Drip Marketing



**UP NEXT**
Amplitude Raises $9M For A New Approach To Analytics And Pricing



0 Comments

**UP NEXT**
Amplitude Raises $9M For A New Approach To Analytics And Pricing

### CrunchBoard
Job Listings

Platform Engineer @ Pantheon at The Sourcery (San Francisco, CA, United States)

Installation Specialist at Softwarez (Baltimore, MD, United States)

Full Stack Web Engineer @ Shift at The Sourcery (San Francisco, CA, United States)

Backend Generalist Engineer @ Shift at The Sourcery (San Francisco, CA, United States)

C++ Software Developer with Juce
Experience, Full Time at
AudioWorks Inc. (Toronto, ON,
Canada)

More from CrunchBoard





## Crunch Network

News
Video
Events
Crunchbase
TechCrunch Store

## About

Staff
Contact Us
Advertise With Us
Send Us A Tip

## International

China
Europe
Japan

## Follow TechCrunch

f  y  8+  in  a
P  t  a  a  a

## TechCrunch Apps

## Subscribe to The Daily Crunch

Latest headlines delivered to you daily

[ Enter Email Address ]  SUBSCRIBE

© 2013 2016 AOL Inc. All rights reserved.  AdChoices  Privacy Policy  About Our Ads  Ana Harassment Policy  Terms of Service  Powered by WordPress.com VIP  Fonts by Webtype

# APPENDIX 4



nymag.com/thecut/

October 10, 2013 10:01 a.m.

# How Tinder Solved Online Dating for Women

By **Ann Friedman**



In July, most of my single female friends weren't playing around with online dating at all. They were busy with work and friends and not looking to settle down immediately, so why put the time and effort into meticulously constructing a profile, screening dozens of messages, and going on dates with guys who look nothing like their pictures? By August, all they could talk about was Tinder. They were each meeting a couple of men a week. By September, two were exclusively dating guys they'd met via the app. My friend Jenny refers to her boyfriend as her "**Tinderoni** (http://www.dailymotion.com/video/x1vd1k_bobby-brown-tenderoni-live_music) ."

The **app** (http://nymag.com/thecut/2013/03/dating-app-that-truly-appeals-to-all-genders.html) is simple: You're served a succession of photos of people who meet your age, gender, and location criteria. You swipe right if you want to meet someone, and swipe left if you don't. If you both swipe right, you can message each other. It's fast and casual — a far cry from many dating sites' detailed filters for religion or hobbies. Tinder just pulls photos and basic data from Facebook, and in almost no time at all, users get to do exactly what we all do in social settings anyway: judge people based on appearance alone.

This is exactly the sort of scenario that we've been told women don't want. "I think that women more often than not will say that they're looking for something casual, and there's nothing wrong

with any of that. I think deep down, though, most women don't actually believe that," says **Amy Webb** (http://www.ted.com/talks/amy_webb_how_i_hacked_online_dating.html) , author of ***Data: A Love Story*** (*http://www.datalovestory.com/*) , summarizing the conventional wisdom. "Most women do want to be in a long-term relationship." But 45 percent of Tinder users are women — and they seem to be just as comfortable with the app's low-commitment objectification as its male users.

Before Tinder, hetero dating apps were something of a non-starter. Years after the hookup app Grindr had become fully ensconced in gay life, the online dating industry had yet to counter with a version that would **appeal to women** (http://www.newyorker.com/online/blogs/culture/2013/02/dating-app-for-women-that-isnt-awful.html) . Tinder has quickly surpassed previous efforts — like Blendr or OkCupid Locals — and is now the fastest-growing free dating app in the United States, facilitating more than 2 million matches per day. Of roughly 200 million ratings per day, both men and women swipe left about 70 percent the time, and swipe right about 30 percent. Women are using it, and in roughly the same way as men.

Pulling in data from Facebook profiles was once thought of as the third rail of dating sites, betraying the lingering shame users felt about connecting their "real life" with their online courtships. But women like the fact that with Facebook data comes social accountability. Even though a profile picture might still be five years out of date, Facebook is ruthless about cracking down on fake accounts, and Tinder shows you if you have mutual friends, who can offer further vetting.

Then there was the old trope that, unlike superficial men, women need detailed information on a guy before they decide they're interested. This, too, is disproved by Tinder. As a bonus, its non-profile profile circumvents the panic that comes with signing up for most dating sites and carefully answering dozens of questions designed to convey who you are and what you're looking for in a life partner. Webb, who recently gave a **TED Talk** (http://www.ted.com/talks/amy_webb_how_i_hacked_online_dating.html) about her strategic approach to online dating, has gotten 1,300 e-mails in the last week — 80 percent of which, she estimates, are from "people agonizing over what to put in their profile." When the profile goes away, so does much of the stress. "I wasn't really open to the idea of strangers (or even worse, friends) coming across an online profile with me describing in depth," says a 26-year-old woman who lives in Brooklyn. On Tinder, though, "I'm not embarrassed to know that they might have seen five pictures of me and a Simpsons quote, as opposed to my deepest, darkest desires."

Crucially, Tinder also solves the inbox onslaught problem women face on conventional dating sites, where some men send messages en masse, overwhelming female users with the same useless "Hi, what's up? ;)" On Tinder, users only get texts from people they've indicated an interest in. And Tinder doesn't allow people to message each other with photos. This is a perk that gay users have come to appreciate as well. "It's just way more mainstream" than Grindr, one friend told me. "The whole dick pic thing is not part of it."

Perhaps most important, Tinder is a far cry from the exercise in self-flagellation that online

dating has come to signify for many women. "It didn't feel like offering yourself on a plate to a collection of the world's 'lonelies,'" says Natasha Bird, who lives in London. "It also allowed for the more casual type of connection without seeming totally sleazy." Tinder is *fun*. People sign up because they're drunk and a friend dares them. Or their circle of friends gets to chatting about it at a party, and everyone signs up together. Several people they told me they call it "playing Tinder," and a few had even invented drinking games: Take one tequila shot for each bathroom-mirror selfie you come across, and two for each person you know IRL. (Or find your own meme. My friend Kenesha has a large collection of screenshots of men posing with tigers.) If you haven't sunk hours into meticulously creating a profile that you hope conveys the "real you," then you aren't as hurt when you're rejected.

"Tinder was just this funny but also kind of exciting and socially acceptable thing I could do, and with low expectations," says Erin, who lives in Minneapolis and met her boyfriend when they both swiped right. Even online dating veterans crave the serendipity of meeting a partner "organically," without the comparison-shopping pressure to determine whether he or she is soul-mate material. It's hard to feel romantic when you're running through the list of red flags you noticed on someone's profile, or if you've spent the past week obsessively Googling them.

Still, with less information and more spontaneity come a certain amount of confusion. One of the most common complaints I heard about Tinder, especially from men, was "I don't know what it's for." If pay-to-play sites like Match.com are for serious relationships, and free sites like OkCupid are for dating, then what about Tinder? Right now, the answer could be "casual hookups" or "last-minute coffee dates you feel free to flake on." But that may change as use of the app expands. Tinder co-founder Justin Mateen says they've heard of more than 100 marriage proposals among Tinder-matched couples.

Webb thinks most unhappy single people are dissatisfied with dating, online and off, because they rarely stop to think about what they really want. Tinder's popularity offers evidence that even thoughtful singles have no clue as to what's going to make them happy. Both men and women sent me dozens of stories about how they signed up as a joke and planned to use the site for casual hookups, then ended up having meaningful relationships or, in one case, a two-week romantic getaway to South America. Maybe, when it comes to online dating, ignorance leads to bliss.

© 2016, New York Media LLC. **View all trademarks**

# APPENDIX 5

# ELLE
A U S T R A L I A

Saving you money at the checkout



POP CULTURE

ELLE INTERVIEW
*Hot list*
TRAVEL
*Lifestyle*
ELLE BOOK CLUB
*Recipes*
WE ARE WOMEN

| CULTURE •   HOT LIST

# Why Tinder Is Perfect For Women And How To Use It



OCT 11, 2013

**SHARE**

*Your inside guide to the app everyone's talking about, from someone who's been there.*

It's the fastest-growing dating application in America, and the flirting device is becoming ubiquitous in Australia among young urban singles.

Tinder – more than any other app or website – has managed to suck the stigma out of meeting online. The smartphone app works a little like speed dating, but it's even more rapid-fire. Profiles, which consist of five photos taken from users' Facebook pages and a short description, are stacked on the app like a deck of cards. If someone likes what they see, they swipe right to indicate they're interested. If they don't, they swipe left. If two people swipe right on each other, they're a "match" and can start messaging inside the app. This way, the potential for unwanted attention is eliminated.

The fact that no one can contact you unless you've specifically approved them is what makes Tinder such a perfect app for women. In fact, **over 45% of Tinder's users are ladies,** and men and women use Tinder in much the same way. This is the holy grail for online dating, because men are typically, hugely over-represented. When you're a woman on an online dating platform, you also tend to be swamped with messages from men you're not interested in, which can be pretty stressful.

You'd assume something with such a low barrier to entry would be primarily used for casual hook-ups, but Tinder are reporting they've had over 100 marriage proposals from app users, which seems like pretty speedy motion given it's been live for less than a year. Anecdotally, plenty of people have met serious romantic contenders using the app. And just very quietly, when I say "people" I mean me.

*Related links:*

TRENDING

 
 
 
 

INSTAGRAM



 

*Marriage is a man's game*
*How to date now*
*Kate Winslet to sue parental organisation*

In a lot of ways, Tinder feels like a high-tech return to traditional ways of meeting people. You're only shown users who are within a certain distance of you, and you can also see any mutual friends or interests you might have. Because it's plugged in to Facebook — which has a bit of inbuilt social accountability — it feels safer than creating a whole online profile. You don't have to write paragraphs of material explaining who you are and what you want from life: you can just download it and start playing within three minutes because a friend said you should try it.

The process of meeting on Tinder is like locking eyes across a bar, and striking up a conversation. It's immediate, organic and requires very little pre-prep. However, just like meeting in a bar, you need to have a reasonable set of social skills to make it work from there. Although a lot of women I know have signed up for Tinder, the biggest stumbling block they've encountered is knowing what to say when they do have a match. There are also some pretty basic safety things it's important to keep in mind, even if Tinder does have a few in-built measures to keep creeps in check.

**Ask open questions** – If you don't know what to say to someone, ask them what they did on the weekend. If the answer sounds fun, ask them more. Try and be a little more specific than 'What's up?' and if you really want to tease something out of them, say something like 'What's the weirdest thing you've seen this week?'

**Meet quickly** – Texting back and forth with a stranger starts to feel like work pretty fast, so arrange to meet somewhere casual and a bit crowded, so you can tell if their photos are accurate. If you have the same spark in person and can see they don't have a second head.

**Have a friend crash** – When you're going on a Tinder date, always arrange to have a friend stop by within the first half hour. That way, you can see how the guy reacts when they're put on the spot, you can tell whether they have the potential to get along with your friends, and if the date is going badly, it can work as a rescue mission.

**Don't get too drunk** – A calming glass of wine or two (or three) is a good way to bond, but it you get worryingly plastered with someone the first time you go out, it'll be harder to gauge whether or not you actually like them. You also shouldn't go with your date to a second location until after your friend has spent enough time with them to competently pick them out in a police line-up.

**Eliminate at will** – If you weren't vibing on a first date, don't bother with a second. Just because you went to the effort of meeting once does not an obligation make, and as you will notice from the device you're carrying around in the palm of your hand, there are plenty of other potential suitors out there. If you actually like someone, you will know straight away. Forcing the issue is pointless.

**Have fun** – Tinder is basically a game, and dating is meant to be fun. Yes, it's a little bit stressful, but in a butterflies and rollercoasters way, not in a "giving a presentation you're not prepared for" way. Don't take any of it too seriously, and if the whole thing is freaking you out, you can stop at any time.



ONLINE DATING, TINDER, RELATIONSHIPS, SEX

SHARE:



# *talk*
## TO US ...







0 Comments                                        Sort by   Oldest ▼



SWITCH TODAY AND GET
A $200 BILL CREDIT

# YOU MAY ALSO LIKE



Every Celebrity Halloween Costume From 2016
ELLE



Wait… Is Prince Harry Really Dating Meghan Markle?
ELLE



The Cutest Celebrity Kids' Halloween Costumes Of The Year
ELLE



The Eliminated Men From 'The Bachelorette' Seem So Different In Real Life
ELLE



Amy Sherman-Palladino Reveals 7 Minutes Of 'Gilmore Girls' Footage Ahead Of The Revival Release
ELLE



ELLE Interview: Lee From 'The Bachelorette' On Being "Head-Over-Heels In Love With This Girl"
ELLE



ELLE Road-Tests: Can One Product Fix Four Hair Woes?
ELLE



The Best Red Carpet Looks From The Weekend That Was
ELLE



**subscribe**
- Magazine
- iPad
- Android/Google Play
- Facebook
- Instagram
- Twitter

**magazine**
- Contact us
- Privacy Statement
- Advertisers
- Subscriptions

ELLE INNER CIRCLE

*Stay in the know with
the latest news & offers*

✉ JOIN NOW

Advertise with us   Website Terms
©2015 Bauer Media Pty Limited - All rights reserved