**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **MATCH GROUP, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:21-cv-00147-ADA** |
| | § | |
| **MUZMATCH LIMITED** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF/COUNTER DEFENDANT MATCH GROUP, LLC'S**
**MOTION TO DISMISS**
**DEFENDANT MUZMATCH LIMITED'S**
**COUNTERCLAIMS 1-6 UNDER RULE 12(b)(6)**

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE AND STATE OF THE PROCEEDINGS......................................... 1

III.    SUMMARY OF ARGUMENT ......................................................................... 1

IV.     STATEMENT OF FACTS ............................................................................... 3

V.      RELEVANT LEGAL AUTHORITY .............................................................. 5

VI.     ARGUMENTS................................................................................................. 5

   A.    Muzmatch Fails to State a Plausible Claim That SWIPE, the match♥ Mark, and MATCH Are Remotely Close to Generic. ................................................ 5

      1.    Muzmatch Fails to Allege the Most Basic Requirement for Genericness. .............. 8

        a.    Muzmatch Fails to Define any Genus for "SWIPE.".............................. 9

        b.    Muzmatch Fails to Define any Genus for "MATCH" and/or a Heart Design. ... 10

      2.    Muzmatch's Own Allegations Negate Genericness. .............................................. 11

      3.    Muzmatch Fails to Tie Alleged Genericness to Match Group's Goods and Services. 12

      4.    Muzmatch Improperly Dissects the match♥ Mark. .............................................. 12

   B.    Muzmatch Fails to State a Plausible Claim that SWIPE, the match♥ Mark, and MATCH Are Functional................................................................................ 13

   C.    Muzmatch Fails to State a Plausible Claim for False Advertising. ........................... 16

   D.    The Court Should Partially Dismiss Counterclaim Six. ............................................ 19

      1.    Muzmatch Fails to State a Plausible Claim of Genericness for Match Group's Pending Trademarks. ............................................................................................. 19

      2.    Muzmatch Fails to State a Plausible Claim of Functionality for Match Group's Pending Trademarks. ............................................................................................. 19

VII.    CONCLUSION............................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.,*
537 F.2d 4 (2d Cir. 1976) ...................................................................................5, 8

*Am. Auto. Ass'n Inc. v. AAA Ins. Agency, Inc.,*
618 F. Supp. 787 (W.D. Tex. 1985)........................................................................7, 8

*American Council of Certified Podiatric Physicians and Surgeons v. American
Bd. of Podiatric Surgery, Inc.,*
185 F.3d 606 (6th Cir. 1999) ...................................................................................17

*Ass'n of Co-operative Members, Inc. v. Farmland Indus., Inc.,*
684 F.2d 1134 (5th Cir. 1982) .................................................................................12

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.,*
685 F. Supp. 2d 1001 (N.D. Cal. 2009) .................................................................15

*In re Becton, Dickinson and Co.,*
675 F.3d 1368 (Fed. Cir. 2012)...............................................................................14

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007).............................................................................................5, 16

*Bell South Corp. v. Planum Tech Corp.,*
14 USPQ2d 1555 (TTAB 1990) ..........................................................................6, 11

*In re Bose Corp.,*
772 F.2d 866 (Fed. Cir. 1985).................................................................................14

*In re Canadian Pac. Ltd.,*
754 F.2d 992 (Fed. Cir. 1985).................................................................................11

*Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.,*
201 F. Supp. 3d 428 (S.D.N.Y. 2016)....................................................................18

*In Re Colonial Stores, Inc.,*
394 F.2d 549 (C.C.P.A. 1968) ................................................................................11

*Compaq Comp. Corp. v. Procom Tech., Inc.,*
908 F. Supp. 1409 (S.D. Tex. 1995).......................................................................14

*In re Cordua Rests., Inc.,*
823 F.3d 594 (Fed. Cir. 2016)...................................................................................9

*Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH,*
    289 F.3d 351 (5th Cir. 2002) ...................................................................................13, 14

*Icon Health & Fitness, Inc. v. Kelly,*
    No. 1:17-CV-356-LY, 2018 WL 4323950 (W.D. Tex. Sept. 7, 2018) .........................8, 15, 16

*IQ Prods. Co. v. Pennzoil Prods. Co.,*
    305 F.3d 368 (5th Cir. 2002) ...............................................................................................16

*Kellogg Co. v. Nat'l Biscuit Co.,*
    305 U.S. 111 (1938) .............................................................................................................11

*In re MBNA America Bank, N.A.,*
    340 F.3d 1328 (Fed. Cir. 2003) .............................................................................................6

*Metro-Goldwyn-Mayer, Inc. v. Lee,*
    212 Cal. App. 2d 23 (2d Dist. 1963) ..................................................................................13

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
    227 F.3d 489 (5th Cir. 2000) .........................................................................................16, 17

*Qualitex Co. v. Jacobson Prods. Co.,*
    514 U.S. 159 (1995) .........................................................................................................2, 14

*RJ Mach. Co. v. Canada Pipeline Accessories Co.,*
    116 F. Supp. 3d 795 (W.D. Tex. 2015) ..............................................................................7, 8

*Sega Ents. Ltd. v. Accolade, Inc.,*
    977 F.2d 1510 (9th Cir. 1993) .............................................................................................14

*Serv. Merch. Co. v. Serv. Jewelry Stores, Inc.,*
    737 F. Supp. 983 (S.D. Tex. 1990) .....................................................................................12

*Shatel Corp. v. Mao Ta Lumber & Yacht Corp.,*
    697 F.2d 1352 (11th Cir. 1983) ...........................................................................................17

*Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners Inc.,*
    41 F.3d 223 (5th Cir. 1995) .................................................................................................11

*Soweco, Inc. v. Shell Oil Co.,*
    617 F.2d 1178 (5th Cir. 1980) .........................................................................................8, 12

*Stoller v. Sutech U.S.A., Inc.,*
    199 F. App'x 954 (Fed. Cir. 2006) ......................................................................................15

*Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.,*
    951 F.2d 684 (5th Cir. 1992) .................................................................................................7

*Thompson v. City of Waco*,
764 F.3d 500 (5th Cir. 2014) ...............................................................................5

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
532 U.S. 23 (2001) .............................................................................................14

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992) ..........................................................................................5, 6

*Union Nat. Bank of Texas, Laredo, Tex. V. Union Nat. Bank of Texas, Austin, Tex.*,
909 F.2d 839 (5th Cir. 1990) ...............................................................................7

*Valu Engineering, Inc. v. Rexnord Corp.*,
278 F.3d 1268 (Fed. Cir. 2002)..........................................................................14

*Vision Ctr. v. Opticks, Inc.*,
596 F.2d 111 (5th Cir. 1979) ...............................................................................7

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*,
698 F.2d 786 (5th Cir. 1983) .......................................................................7, 8, 9

**Rules and Statutes**

15 U.S.C. § 1115(a) .....................................................................................................1

15 U.S.C. § 1127 ..........................................................................................................5

Fed. R. Civ. P. 11 .........................................................................................................8

Fed. R. Civ. P. 12(b)(6) .........................................................................................5, 16

Lanham Act, 15 U.S.C. § 1051 et seq.................................................2, 3, 6, 16, 17, 18

**Other Authorities**

Gilson, *Trademark Protection & Practice,* § 8:12(13)(iii) (1979) ...............................17

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:4
(5th ed. 2021)...........................................................................................................6

*Trademark Manual of Examining Procedure* ........................................5, 6, 10, 11, 17

## I.    INTRODUCTION

Match Group's trademarks are not generic or functional, and Muzmatch fails to plausibly allege otherwise.  As shown herein, Muzmatch's Counterclaims One through Six fail to include basic factual allegations required to support them under the applicable pleading standard. Accordingly, the Court should dismiss Muzmatch's Counterclaims One through Five entirely, and partially dismiss Counterclaim Six—*i.e.*—to the extent it alleges genericness and/or functionality. Muzmatch fails to state a claim on which relief can be granted because it fails to allege sufficient facts to support these claims.

## II.    NATURE AND STATE OF THE PROCEEDINGS

Match Group filed its Complaint against Muzmatch on February 12, 2021.  Muzmatch filed its Counterclaims on April 8, 2021.

## III.    SUMMARY OF ARGUMENT

Match Group's federal trademark registrations constitute prima facie evidence of those trademarks' validity and Match Group's exclusive right to use them.  *See* 15 U.S.C. § 1115(a).  In addition, because Match Group's registration No. 4,666,847 is incontestable, it is *conclusive* proof of the match mark's validity and Match Group's exclusive right to use it.  *See id.* § 1115(b). While such registered marks are subject to challenge on narrow grounds, Muzmatch must at least adequately plead a viable challenge.  Muzmatch has not done so because it cannot.

Muzmatch's Counterclaims One through Four seek invalidation and cancellation of Match Group's trademark registrations for the marks SWIPE (U.S. Reg. No. 4,465,926) and match (U.S. Reg. No. 4,666,847) and a declaration that the term "match" is not protectable as a mark. Muzmatch alleges these trademarks are "generic and/or functional" for Match Group's goods and services.  *See* Dkt. No. 12, ¶ 178.  Muzmatch's Counterclaim Six challenges Match Group's

pending trademark applications on the same grounds. However, Muzmatch fails to allege sufficient facts to establish that the marks are remotely close to generic or functional.

The basic test for genericness is whether a term merely identifies the "genus," or class, of goods or services on which the trademark is applied. But Muzmatch fails to even identify the alleged genus for the challenged marks, which are applied to a wide range of goods and services. Moreover, Muzmatch fails to plead facts to support the genericness analysis in relation to the goods and services covered by Match Group's registrations or otherwise offered by Match Group.

Similarly, Muzmatch's counterclaims, as pleaded, demonstrate its fundamental misunderstanding of the functionality doctrine, which prohibits registration as a trademark of *a useful product feature. See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164-165 (1995). But the registrations Muzmatch challenges are for words and logos, not product features such as color or configuration. Moreover, Muzmatch fails to even allege any function of the challenged marks. Therefore, Muzmatch's genericness and functional counterclaims fail as a matter of law.

Muzmatch's Counterclaim Five alleges that Match Group's use of the ® symbol with the MATCH mark constitutes false advertising under the Lanham Act. But Muzmatch fails to plead sufficient facts to support all elements of such a claim. Specifically, Muzmatch has not pleaded sufficient facts to show that Match Group's use of the ® symbol is literally false, has deceived consumers, has had a material impact on consumer purchasing decisions, and has caused, or is likely to cause, injury to Muzmatch.

Therefore, the Court should entirely dismiss Muzmatch's Counterclaims One through Five with prejudice, and partially dismiss Counterclaim Six with prejudice insofar as it challenges Match Group's pending trademark applications on the basis of genericness and functionality.

## IV.  STATEMENT OF FACTS

Match Group filed this lawsuit alleging federal trademark infringement, patent infringement, false designation of origin, unfair competition, trade dress infringement, trademark dilution, and cyberpiracy, and Texas state trademark infringement, unfair competition, and dilution.  Muzmatch has filed its Counterclaims.  In Counterclaims One, Two, and Three, Muzmatch alleges that Match Group's registered SWIPE and match♥ marks, shown in the following chart, are generic and/or functional and seeks their invalidation and cancellation.  Dkt. No. 12, ¶¶ 113-136, 178(h).

| Mark | Status/Key Dates | Full Goods/Services |
|------|------------------|---------------------|
| MATCH and Design match♥ RN: 4,666,847 SN: 86/286,888 | Registered 8 & 15, April 6, 2021 First Use: April 23, 2014 Filed: May 20, 2014 Registered: January 6, 2015 | Int'l Class: 09 computer application software for use with mobile devices, namely, software for the purpose of accessing online dating services |
| SWIPE RN: 4,465,926 SN: 85/950,991 | Registered 8 Accepted, January 14, 2014 First Use: April 8, 2013 Filed: June 5, 2013 Registered: January 14, 2014 | Int'l Class: 09 computer application software for mobile devices, namely, software for social introduction and dating services |

In Counterclaim Four, Muzmatch alleges that MATCH is generic and/or functional.  It requests a declaratory judgment that MATCH is not a protectable mark.  *Id.* ¶¶ 137-143, 178(f).

In Counterclaim Five, Muzmatch alleges that Match Group has used MATCH® when MATCH is not registered in standard characters, and therefore, Match Group is liable for false advertising under the Lanham Act.  Muzmatch alleges that it is entitled to an injunction against Match Group's use of MATCH®.  *Id.* ¶¶ 144-154, 178(g).

In Counterclaim Six, Muzmatch seeks an injunction prohibiting Match Group from obtaining trademark registrations, and requiring it to expressly abandon, its applications for the

marks SWIPE, SWIPE LEFT, SWIPE RIGHT, and SWIPE UP shown in the chart below, on the grounds that the marks are generic, functional, and/or descriptive. *Id.* ¶¶ 155-176, 178(i).

| Mark | Status/Key Dates | Full Goods/Services |
|---|---|---|
| <u>SWIPE</u><br>SN: 86/680,914 | Pending - Suspended,<br>February 13, 2016<br>Filed: July 1, 2015 | Int'l Class: 45<br>dating services; internet-based social networking, introduction and dating services |
| <u>SWIPE LEFT</u><br>SN: 86/608,903 | Pending - Suspended,<br>August 29, 2016<br>Filed: April 24, 2015 | Int'l Class: 09<br>downloadable software in the nature of a mobile application for internet-based dating and matchmaking; downloadable software in the nature of a mobile application in the field of social media, namely, for sending status updates to subscribers of web feeds, uploading and downloading electronic files to share with others |
| <u>SWIPE LEFT</u><br>SN: 86/680,923 | Pending - Suspended,<br>February 13, 2016<br>Filed: July 1, 2015 | Int'l Class: 45<br>dating services; internet-based social networking, introduction and dating services |
| <u>SWIPE RIGHT</u><br>SN: 86/608,899 | Pending - Suspended,<br>August 29, 2016<br>Filed: April 24, 2015 | Int'l Class: 09<br>downloadable software in the nature of a mobile application for internet-based dating and matchmaking; downloadable software in the nature of a mobile application in the field of social media, namely, for sending status updates to subscribers of web feeds, uploading and downloading electronic files to share with others |
| <u>SWIPE RIGHT</u><br>SN: 86/680,927 | Pending - Suspended,<br>February 13, 2016<br>Int'l Class: 45<br>First Use: July, 2015<br>Filed: July 1, 2015 | Int'l Class: 45<br>Dating services; internet-based social networking, introduction and dating services |
| <u>SWIPE UP</u><br>SN: 86/751,974 | Pending - Suspended,<br>November 16, 2016<br>Filed: September 9, 2015 | Int'l Class: 09<br>downloadable software in the nature of a mobile application for internet-based dating and matchmaking; downloadable software in the nature of a mobile application in the field of social media, namely, for sending status updates to subscribers of web feeds, uploading and downloading electronic files to share with others |

These claims fail because Muzmatch does not sufficiently plead facts to support its claims of genericness, functionality, and false advertising.  Finally, Muzmatch seeks a denial of all relief requested by Match Group, an award of its attorneys' fees and costs, and a judgment against Match Group on its infringement claims relating to US Registration Nos. 4,465,926 and 4,666,847.  *Id.* ¶ 178(a-d).

## V.      RELEVANT LEGAL AUTHORITY

To survive a Rule 12(b)(6) motion, the claimant must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Fifth Circuit recently summarized the Rule 12(b)(6) standard:

> *We need not, however, accept the plaintiff's legal conclusions as true*.  To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Thompson v. City of Waco*, 764 F.3d 500, 502-03 (5th Cir. 2014) (emphasis added) (internal citations and quotations omitted).

## VI.     ARGUMENTS

### A.      Muzmatch Fails to State a Plausible Claim That SWIPE, the match♥ Mark, and MATCH Are Remotely Close to Generic.

A trademark is any word, name, symbol, or device used as an indicator of source for the particular goods or services to which it is applied.  15 U.S.C. § 1127.  Trademarks are generally divided into five categories indicating a range of strength from strongest to weakest: fanciful, arbitrary, suggestive, merely descriptive, and generic.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (approving of the "classic formulation set out by Judge Friendly" in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)); *see also* Trademark Manual of Examining Procedure, October 2018 ("TMEP") § 1209.01(a).  In each case

other than fanciful marks, a mark's strength must be judged in the context of the goods and services to which it is applied:

> A "fanciful" mark is a word that is coined for the express purpose of functioning as a trademark. It could also be any obscure or archaic term not familiar to buyers. An "arbitrary" mark is a word that is in common usage in the language, but is arbitrarily applied to the goods or services in question in such a way that it is does not even suggest some aspect of the goods or services. A word that suggests, but does not directly describe, some aspect of the goods or services falls into the "suggestive" category and is inherently distinctive.

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:4 (5th ed. 2021); *see also Two Pesos*, 505 U.S. at 768-69. Descriptive marks describe "an ingredient, quality, characteristic, function, feature, purpose, or use of the specified goods or services." TMEP § 1209.01(b) (citations omitted); *see also In re MBNA America Bank, N.A.*, 340 F.3d 1328, 1332 (Fed. Cir. 2003) ("A mark is merely descriptive if it immediately conveys information concerning a quality or characteristic of the product or service."). A mark is *merely* descriptive if it conveys no other meaning to consumers. *See Bell South Corp. v. Planum Tech Corp.*, 14 USPQ2d 1555, 1556 (TTAB 1990).

Fanciful, arbitrary, and suggestive terms are considered "inherently distinctive" and are afforded trademark protection automatically. *McCarthy* § 11:4. Terms that are merely descriptive are afforded trademark protection with a showing of "secondary meaning" or "acquired distinctiveness" (*i.e.*, via evidence of history of use and consumer recognition that the term functions as an indication of source). *See id.*; Lanham Act Section 2(f), 15 U.S.C. §1052(f). By way of example, coined or made-up terms like EXXON are fanciful; APPLE is arbitrary for computers but generic for certain fruit; COPPERTONE is suggestive for tanning oil; and BED & BREAKFAST REGISTRY is descriptive of lodging reservations services.

A generic term is "the name of a particular genus or class of which an individual article or service is but a member[ and] connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product." *Zatarains* 698 F.2d at 790 (quotations omitted); *see also Am. Auto. Ass'n Inc. v. AAA Ins. Agency, Inc.*, 618 F. Supp. 787, 792 (W.D. Tex. 1985) ("A 'generic' term is the common descriptive name for a type of product or service (e.g., 'car', 'bread', 'shoes', etc.) and is entitled to no trademark protection."). A term is only generic if it is the common name for the goods or services to which it is applied, and a generic term can never function as a trademark for those goods and services because it is incapable of indicating a unique source. *See Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790 (5th Cir. 1983), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004). However, a term that is generic for one class or genus of goods or services may be suggestive or arbitrary for another. As the Fifth Circuit has explained, "'Fish' is [an exemplary] generic term which applies with equal force to sole, haddock, perch, salmon, bass and carp." *Union Nat. Bank of Texas, Laredo, Tex. V. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 845 (5th Cir. 1990).

"The test for genericness is whether the public perceives the term primarily as the designation of the article." *RJ Mach. Co. v. Canada Pipeline Accessories Co.*, 116 F. Supp. 3d 795, 809 (W.D. Tex. 2015) (holding 50E is not generic for class of flow conditioners); *see also Zatarains*, 698 F.2d at 792 (affirming decision that FISH-FRI is not generic for a class of foodstuffs used to fry fish); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684 (5th Cir. 1992) (affirming decision that PIG SANDWICH is not generic for a dish of barbecued pig meat on a bun); *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 116 n.12 (5th Cir. 1979) (holding VISION CENTER is not generic because, while it describes "a business that deals in optical goods, we do

not think that it has become a common, recognized name of such establishments."). And relevant here, the issue of whether or not terms are generic can be decided as a matter of law on a motion to dismiss. *See, e.g.*, *Icon Health & Fitness, Inc. v. Kelly*, No. 1:17-CV-356-LY, 2018 WL 4323950, at *3-4 (W.D. Tex. Sept. 7, 2018), *report and recommendation adopted*, 2018 WL 6795853 (W.D. Tex. Oct. 3, 2018) (holding as a matter of law on a motion to dismiss that the trademarks IFIT and IFIT.com marks are not generic for fitness-related equipment and apps).

Under these principals, Muzmatch's Counterclaims One through Four fail as a matter of law. Indeed, Muzmatch fails to establish that Match Group's registered SWIPE and MATCH Logo, and the MATCH mark more broadly, are generic for anything, let alone mobile software for social introduction and dating services.

1. Muzmatch Fails to Allege the Most Basic Requirement for Genericness.

Muzmatch fails to allege that the consuming public perceives SWIPE, match♥, or MATCH primarily as the designation or common name for any good or service—as is expressly required for a showing of genericness. *See RJ Mach. Co.*, 116 F. Supp. 3d at 809. Nor could Muzmatch, consistent with Rule 11, make any such allegation in good faith. Muzmatch fails to allege any applicable genus or class for SWIPE, match♥, or MATCH.

This omission is critical because a term is not generic in all contexts—e.g., apple for the fruit is generic, APPLE for computers is arbitrary, and APPLE for brandy might be descriptive. *See Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183 (5th Cir. 1980) (noting "'ivory' is generic of elephant tusks but arbitrary as applied to soap.") (citing *Abercrombie & Fitch*, 537 F.2d at 9 n.6). Moreover, if a person said he was going to buy some aspirin, bread, or a car, a reasonable consumer would know exactly *what* the purchaser was going to buy but not from *whom*; thus these terms are generic. *See Zatarains*, 698 F.2d at 790; *Am. Auto. Ass'n Inc.*, 618 F. Supp. at 792. So,

a party claiming that a registered mark is generic must establish the claim with regard to the specific goods or services listed in the registration. But having *some relation* to the goods or services does not make a term generic. *It must be the common name* for the goods or services offered to consumers under the mark. *See, e.g., Zatarains*, 698 F.2d at 790.

In short, with respect to Counterclaims One through Four, Muzmatch fails to allege the specific articles or services that it claims are a "SWIPE" or "MATCH" in the minds of the consuming public. Consequently, Muzmatch fails to allege a plausible claim that Match Group's marks are generic.

<em>a.      Muzmatch Fails to Define any Genus for "SWIPE."</em>

Muzmatch uses a variety of terms to describe the meaning of "SWIPE," such as "a category of navigational gestures" and a "touchscreen gesture." *See* Dkt. No. 12, ¶¶ 66-71. It also claims the "generic meaning" of SWIPE is "the processing [*sic*] of going through touchscreen gestures of potential matches." *Id.* ¶ 72. It further asserts SWIPE is a "generic term to *describe* the touchscreen gesture." *Id.* ¶ 128. But a touchscreen gesture is not a good or service that Match Group offers to the public, nor is it listed on Match Group's trademark registration.

Muzmatch unfairly defines the term SWIPE in order to set up its genericness challenge. Even so, its argument still fails. Whether considered as a verb or noun, SWIPE could refer to other types of things or actions, *e.g.*, swiping a credit card through a card reader.

Had Muzmatch actually attempted to name the genus or class or article for which SWIPE is purportedly generic, the absurdity of its allegations would be made plain. Match Group's SWIPE registration covers "computer application software for mobile devices, namely, software for social introduction and dating services" in International Class 9. U.S. TM Reg. No. 4,465,926. "Gestures" are conspicuously absent from the identification of goods in the SWIPE registration. *See In re Cordua Rests., Inc.*, 823 F.3d 594, 602 (Fed. Cir. 2016) ("It is up to the applicant to

identify the genus of goods or services for which it seeks protection. . . . '[R]egistrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application.'" (internal citations omitted).

         *b.*    *Muzmatch Fails to Define any Genus for "MATCH" and/or a Heart Design.*

While Muzmatch alleges a heart combined with the word "match" is generic for "dating services," Dkt. No. 12, ¶ 89, it pleads no facts to support its conclusion that a heart or "match," individually or together, are used to name the genus of dating services. And it could not credibly do so. Further, Muzmatch must plead facts sufficient to show that match♥ is generic for "computer application software for use with mobile devices, namely, software for the purpose of accessing online dating services," which is what U.S. Reg. No. 4,666,847 covers. Properly defined, the genus of Match Group's goods in the registration might be "software for the purpose of accessing online dating services." Muzmatch fails to allege, let alone provide any factual support, that MATCH, a heart design, or match♥ are the common name for this type of software.

Match Group offers the oldest and most famous online dating service in the world. A consumer referring to "downloading Match," or "signing up for Match," is referring to using the dating service offered by Match Group under that name, not online dating generically. Muzmatch does not even contend that consumers refer to the entire category as "match." Nor could it because Muzmatch's own mark is a mere conflation of MUSLIM and MATCH. If MATCH is generic, then so is MUZMATCH.

Muzmatch alleges that MATCH has meanings *related to* dating generally, such as "a prospective partner in marriage," Dkt. No. 12, ¶ 102, and "a mutual romantic interest in dating," *id*. However, Match Group does not claim trademark rights in MATCH or match♥ for "a prospective partner in marriage" or "a mutual romantic interest in dating" as a good or service

offered to consumers, nor could it. A "service" for which one can claim trademark rights must be a real activity performed for the benefit of others. *See In re Canadian Pac. Ltd.*, 754 F.2d 992, 994 (Fed. Cir. 1985); *see also* TMEP §1301.01(a) (citing cases). Having some meaning in relation to the goods or services is not the standard for genericity.

2.    <u>Muzmatch's Own Allegations Negate Genericness</u>.

Muzmatch's own allegations show that Match Group's marks are distinctive because they are capable of multiple meanings. Marks that are susceptible of more than one meaning are not even merely descriptive, let alone generic. *See, e.g.*, *In Re Colonial Stores, Inc.*, 394 F.2d 549, 551 (C.C.P.A. 1968) (explaining that the mark SUGAR & SPICE was suggestive for bakery products because those terms could also call to the consumer's mind the nursery rhyme phrase "sugar and spice and everything nice," in addition to bakery ingredients). A mark requiring even a "modicum of imagination or thought before one is able to determine the nature of applicant's product" is inherently distinctive, not merely descriptive or generic. *Bell South Corp.*, 14 USPQ2d at 1556.

As recounted above, Muzmatch alleges multiple potential meanings for the terms SWIPE and MATCH. The Supreme Court has made clear that genericness is based on the "primary significance of the term in the minds of the consuming public" and whether such significance is in the product or the producer. *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938); *see Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners Inc.*, 41 F.3d 223, 227 (5th Cir. 1995) (citing *Kellogg* as test for genericness). Here, Muzmatch fails to identify the primary significance of SWIPE and MATCH in the minds of the consuming public, and therefore fails to put forth sufficient facts to support a claim that Match Group's marks are generic.

    3.    <u>Muzmatch Fails to Tie Alleged Genericness to Match Group's Goods and Services</u>.

Muzmatch also makes little effort to tie its allegations of genericness to the specific goods listed in Match Group's registrations, or to Match Group's goods and services generally. Match Group's registrations cover software goods. Muzmatch does not even attempt to allege that the SWIPE and match♥ marks are generic as to software. Nor does it provide any factual evidence that MATCH is generic for a marketable good or service. Indeed, in its Fourth Cause of Action, it alleges, "The primary significance of the term 'match' to the relevant public is understood to refer to 'a mutual romantic interest in dating,'" and not dating or social introduction services. Dkt. No. 12, ¶ 140.

As outlined above, a term can be generic for one thing and suggestive or arbitrary for another. *See, e.g.*, *Soweco*, 617 F.2d at 1183. Muzmatch fails to allege that SWIPE, match♥, or MATCH are the common name for any goods or services Match Group offers to consumers under the marks. Thus, Muzmatch's fails to plausibly state a claim that Match Group's marks are even remotely close to being generic. Accordingly, its First, Second, Third, and Fourth Counterclaims should be dismissed.

    4.    <u>Muzmatch Improperly Dissects the match♥ Mark</u>.

In determining whether a term is generic for trademark purposes, courts "must look to the totality of the phrase, not its component parts." *Serv. Merch. Co.*, 737 F. Supp. at 992-93 (citations omitted). Thus, multiple common terms or elements when joined together frequently form a mark that is distinctive as a whole. *See id.* The Fifth Circuit has emphasized that "[t]he whole, in trademark law, is often greater than the sum of its parts. Common words in which no one may acquire a trademark because they are descriptive or generic may, when used in combination, become a valid trademark." *Ass'n of Co-operative Members, Inc. v. Farmland Indus., Inc.*, 684

F.2d 1134, 1140 (5th Cir. 1982); *accord Metro-Goldwyn-Mayer, Inc. v. Lee*, 212 Cal. App. 2d 23, 31 (2d Dist. 1963) (explaining that the combination of even the most common words can be valid trademarks).

But Muzmatch dissects the match♥ registration and alleges that "the MATCH and Design Registration No. 4,666,847 is a composite mark of a generic word 'match' plus a generic heart design such that the composite mark overall is generic for dating services." This is improper. Muzmatch offers no factual support whatsoever for the contention that consumers, when viewing the mark as a whole, would interpret it as the generic or common name for "dating services" (which is not the description of goods and services in the registration it seeks to cancel).

Muzmatch merely concludes that match♥ is generic as a composite without (1) asserting or providing evidence that the mark *as a whole* is generic in the eyes of consumers, or (2) plausibly claiming the component parts are generic (as discussed above). For this reason alone, Counterclaims Two and Three fail as a matter of law and should be dismissed.

### B. Muzmatch Fails to State a Plausible Claim that SWIPE, the match♥ Mark, and MATCH Are Functional.

Muzmatch's erroneously asserts that Match Group's word marks should be cancelled because they are "functional." This wholly misconstrues the purpose, scope, and application of the functionality doctrine, and thus fails as a matter of law.

The functionality doctrine generally bars trademark protection for non-traditional marks like product colors, smells, shapes, sounds, and product configurations that are "essential to the use or purpose of the article or [that affect] the cost or quality of an article." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002). The functionality doctrine exists to "prevent[] trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product

feature." *Id.* (*quoting Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 164 (1995)). The doctrine addresses the fact that "[i]f a product's functional features could be used as trademarks, [] a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity)." *Qualitex*, 514 U.S. at 164. In other words, "if a product feature is the reason the device works, then the feature is functional." *Eppendorf*, 289 F.3d at 355. (quotations omitted). Courts evaluating functionality may consider that "a functional feature [may be] one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage." *Id.* (quotations omitted).

Examples of functional product features include: the shape of springs on a portable road construction sign, *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 35 (2001); the pentagonal shape of a loudspeaker enclosure, *In re Bose Corp.*, 772 F.2d 866, 872-74 (Fed. Cir. 1985); conveyor belt guide rail cross sections, *Valu Engineering, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1278–79 (Fed. Cir. 2002); and the configuration of a closure cap for blood collection tubes, *In re Becton, Dickinson and Co.*, 675 F.3d 1368, 1375 (Fed. Cir. 2012).

With very narrow exceptions not applicable here, word marks are not functional. Words or text have been found to be functional in limited circumstances like software code, when they perform a function other than mere source-identification. *See, e.g.*, *Sega Ents. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1532 (9th Cir. 1993) (finding the initialization code functional where it "serves the function of regulating access to the Genesis III" and was the only known means by which a video game cartridge could communicate with a video game console); *Compaq Comp. Corp. v. Procom Tech., Inc.*, 908 F. Supp. 1409, 1423 (S.D. Tex. 1995) ("The use of the word Compaq in the vendor ID position provides this compatibility.").

But communicating a message *about* a function (*i.e.*, describing or suggesting some function of the product or service) does not make a word "functional" under the doctrine because a mark is only functional if it performs some function *other than* communicating a message. *See Icon Health*, 2018 WL 4323950, at *5 (*citing Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 162 (4th Cir. 2012) (finding that "use of the words 'Rosetta Stone' is not essential for the functioning of its language-learning products, which would function no differently if Rosetta Stone had branded its product 'SPHINX' instead . . . ."); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 685 F. Supp. 2d 1001, 1008 (N.D. Cal. 2009) ("Indeed, it is not apparent how a word mark could be essential to the use or purpose of an article or affect its cost or quality . . . . [A] a *word* mark, unlike a physical product design, has no functionality dictated by manufacturing efficiencies or utilitarian advantages.")); *see also Stoller v. Sutech U.S.A., Inc.*, 199 F. App'x 954, 958 (Fed. Cir. 2006) ("While an applicant may not obtain trademark protection for structural features of a product or its packaging if those features are purely functional, that principle has no bearing on an application to register a word mark.").

Here, Match Group's word marks serve no "function" under the doctrine—nor does Muzmatch point to a function of the marks—aside from identifying or alluding to some aspect of the goods and services. *See, e.g.,* Dkt. No. 12 ¶ 129 ("[T]he purported SWIPE mark covered by Registration No. 4,465,926 that *communicates* functional characteristics of the computer application"). Even if functionality *could* apply to garden-variety word marks, Muzmatch does not plead the necessary facts to establish a plausible claim. Instead, it merely restates its allegations regarding genericness to claim the terms SWIPE and MATCH and heart designs are functional. Dkt. No. 12 ¶¶ 70-83, 111. It makes no allegation that Match Group's word marks are essential to the use of Match Group's goods and services, such as alleging that Match Group's application

software would not work without bearing the MATCH label.  *See id.*; s*ee also Icon Health*, 2018 WL 4323950 at *5 ("Nor does Kelley point to a function of the mark, aside from identifying the services.  *See* Dkt. No. 20 at 45 (stating that the term 'I' and 'Fit' were functional for '*articulating* the use' for which the services are offered). Instead, this argument seems to be an extension of Kelley's claim that the IFIT marks are generic, rather than a standalone claim . . . . Accordingly, this claim should be dismissed.").

It is clear Muzmatch asserts functionality because it is an exception to incontestability, but Muzmatch's supporting allegations fail to even amount to "a formulaic recitation of a cause of action's elements," and do not withstand Rule 12(b)(6) scrutiny.  *See Twombly*, 550 U.S. at 555. Rather, Muzmatch simply ties together its functionality claims with its genericness claims, throwing out the term "functional" as an alternative to "generic," without bothering to differentiate the two or provide sufficient facts for either.  Muzmatch's claims of functionality fail, as it has not pleaded facts sufficient to give rise to a plausible claim of functionality.

### C.    Muzmatch Fails to State a Plausible Claim for False Advertising.

Muzmatch fails to meet its burden to plead a plausible claim that Match Group's use of the ® symbol constitutes false advertising under the Lanham Act.  A false-advertising claimant must establish five elements to make out a *prima facie* case:

(1)    A false or misleading statement of fact about a product;

(2)    Such statement either deceived or had the capacity to deceive a substantial segment of potential consumers;

(3)    The deception was material, in that it is likely to influence the consumer's purchasing decision;

(4)    The product is in interstate commerce; and

(5)    The plaintiff has been or is likely to be injured as a result of the statement at issue.

*IQ Prods. Co. v. Pennzoil Prods. Co.,* 305 F.3d 368, 375 (5th Cir. 2002) (*citing Pizza Hut, Inc. v. Papa John's Int'l, Inc.,* 227 F.3d 489, 495 (5th Cir. 2000)).  "The failure to prove the existence of

any element of the prima facie case is fatal to the plaintiff's claim." *Pizza Hut*, 227 F.3d at 495.

Moreover, the Fifth Circuit has explained:

> In order to obtain monetary damages or equitable relief in the form of an injunction, a plaintiff must demonstrate that the commercial advertisement or promotion is *either literally false*, *or* that if the advertisement is not literally false, it is *likely to mislead and confuse consumers*. If the statement is shown to be misleading, the plaintiff *must also introduce evidence of the statement's impact on consumers*, referred to as materiality.

*Id.* (emphasis added; internal citations and quotations omitted).

For misleading statements to be actionable, there must be proof of actual deception, namely, evidence that consumers were actually deceived by the defendant's ambiguous or true-but-misleading statements. *Id.* (citing *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.,* 185 F.3d 606, 614 (6th Cir. 1999)) (quotations omitted). Further, inadvertent misuse of the ® symbol is common and should be met with leniency. *See*, *e.g.*, *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1355 (11th Cir. 1983) ("Because misunderstandings about the use of federal registration symbols are common, courts have been reluctant to find unclean hands where the misuse of the registration symbol was negligent or immaterial to the litigation.") (citing TMEP § 902.04 (1979); Gilson, *Trademark Protection & Practice,* § 8:12(13)(iii) (1979)).

Muzmatch failed to plead sufficient facts to give rise to a plausible claim for false advertising under the Lanham Act. Critically, Muzmatch fails to allege any actionable injury. The only harm Muzmatch alleges is that "'Match®' harms Muzmatch and others because it purports exclusive trademark rights to the standalone word MATCH, which is generic for 'dating.'" *See id.* ¶¶ 101, 144–154. It is beyond plausible that Muzmatch was harmed merely by the existence of '®' next to the word "Match" on the Match.com website, and Muzmatch pleads no facts to

show that it has been.  For this reason alone, its allegation of injury, and therefore its claim as a whole, fails.

Further, without conceding that Match Group's use of the ® was a "statement of fact about a product," Muzmatch has not met its burden in pleading that Match Group's use of ® is literally false.  *See*, *e.g., Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 452 (S.D.N.Y. 2016) (explaining that misuse of the ® symbol is not a ground for a false advertising claim under Lanham Act § 43(a)(1)(B) because it does not relate to an inherent quality or characteristic of the goods).  Neither has Muzmatch provided any factual support whatsoever that Match Group's use of the ® has deceived consumers, had a material impact on consumer purchasing decisions, or has caused or is likely to cause damage to Muzmatch.  Match Group has multiple trademark registrations for the match❤ mark (U.S. Reg. Nos. 4,666,847 and 4,805,047), which is minimally stylized, along with numerous other MATCH-formative marks.  Each of these registrations indicates that "MATCH" is the literal element of the mark, and Match Group was not required to disclaim the word "match" on any of these registrations.  See **Exhibit A**.  Accordingly, Match Group's use of the symbol is not categorically or literally false.  Each of Muzmatch's examples are places where insertion of the stylized logo was impracticable, and the '®' is used with the literal element of the registered marks.

Additionally, Muzmatch has proffered no evidence whatsoever that consumers are likely to be misled, or actually have been misled, by Match Group's use of the ®.  *Cf.* Dkt. No. 12 ¶¶ 95–101.  Even if Match Group's alleged misuse of the ® symbol was potentially misleading, Muzmatch fails to allege any facts that Match Group's use of the symbol was *material*—*i.e.*, that it influenced any consumer purchasing decisions.  *Cf.* Dkt. No. 12 ¶¶ 95–101.  Therefore, the Court should also dismiss Counterclaim Five.

### D. The Court Should Partially Dismiss Counterclaim Six.

#### 1. Muzmatch Fails to State a Plausible Claim of Genericness for Match Group's Pending Trademarks.

Muzmatch relies on its arguments that SWIPE is generic to also conclude that Match Group's other pending applications for SWIPE, SWIPE LEFT, SWIPE RIGHT, and SWIPE UP are generic and should not register. Muzmatch pleads no facts to support its allegation that these terms are generic for Match Group's claimed goods and services. At best, Muzmatch's pleads that "the terms 'swipe right' and 'swipe left' are recognized as generic terms for 'yes' and 'no,' respectively." *See* Dkt. No. 12 ¶¶ 77-78. But "yes" and "no" are not goods or services listed on any of these applications. Therefore Muzmatch has not plausibly pleaded that these trademarks are generic and the Court should dismiss that portion of Counterclaim Six.

#### 2. Muzmatch Fails to State a Plausible Claim of Functionality for Match Group's Pending Trademarks.

Muzmatch also relies on its arguments that SWIPE is functional to conclude that Match Group's other pending applications for SWIPE, SWIPE LEFT, SWIPE RIGHT, and SWIPE UP are functional and should not register. Muzmatch pleads no other facts to support its claims that these terms are functional. *See* Dkt. No. 12 ¶¶ 76-83. For all the reasons outlined above, the Court should dismiss Counterclaim Six to the extent it alleges that Match Group's SWIPE-formative marks are functional.

## VII. CONCLUSION

In view of the foregoing, the Court should entirely dismiss Muzmatch's Counterclaims One through Five and dismiss Counterclaim 6 to the extent it alleges the marks at issue are generic and/or functional.

Date:  April 29, 2021

Respectfully submitted,

*/s/ Robert Greeson*

Robert Greeson (*pro hac vice*)
Texas Bar No. 24045979
robert.greeson@nortonrosefulbright.com
Brett C. Govett
Texas Bar No. 08235900
brett.govett@nortonrosefulbright.com
James Stephen Renard
Texas Bar No. 16768500
james.renard@nortonrosefulbright.com
Jacqueline G. Baker
Texas Bar No. 24109609
jackie.baker@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile:  (214) 855-8200

Erik Janitens (*pro hac vice*)
Texas Bar No. 24097878
erik.janitens@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile:  (713) 651-5246

Stephanie Schmidt
Texas Bar No. 24106406
stephanie.schmidt@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 536-3051
Facsimile:  (512) 536-4598

**NORTON ROSE FULBRIGHT US LLP**

*Attorneys for Plaintiff/Counter Defendant Match Group, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 29, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

_/s/Robert Greeson_
Robert Greeson