# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **MATCH GROUP, LLC,** | § | |
| Plaintiff, | § | |
| v. | § | |
| **MUZMATCH LIMITED,** | § | |
| Defendant. | § | |
| | § | |
| **MUZMATCH LIMITED,** | § | **Case No. 6:21-CV-00147** |
| Counter-Plaintiff, | § | |
| v. | § | |
| **MATCH GROUP, LLC,** | § | |
| Counter-Defendant. | § | |

## <u>DEFENDANT'S FIRST AMENDED COUNTERCLAIMS</u>

Defendant/Counterclaimant Muzmatch Limited ("Counterclaimant" or "Muzmatch") brings counterclaims against Plaintiff/Counterclaim Defendant Match Group, LLC ("Counterclaim Defendant" or "Match") as follows:

## JURISDICTION

1.      This Court has subject-matter jurisdiction over Counterclaimant's claims under 28 U.S.C. §§ 1331 and 1338.  This action includes requests for declaratory-judgment relief under 28 U.S.C. §§ 2201 and 2202.

2.      This Court also has subject-matter jurisdiction over Counterclaimant's claims under 15 U.S.C. § 1121, since this action involves questions arising under the Trademark Laws

of the United States, Lanham Act § 43(a), 15 U.S.C. §§ 1119, 1125.

3.    This Court has personal jurisdiction over Counterclaim Defendant because Counterclaim Defendant transacts business in this District and has its principal place of business located at 8750 North Central Expressway, Suite 1400, Dallas, Texas.

4.    Venue is proper under 28 U.S.C. § 1391(c) because Counterclaim Defendant is subject to personal jurisdiction in this District and Counterclaim Defendant filed its Complaint in this District.

## PARTIES

5.    Defendant/Counterclaimant Muzmatch Limited is a company existing under the laws of the United Kingdom with a principal place of business of 249 Cranbrook Road, Ilford, England, IG1 4TG.

6.    Upon information and belief, Plaintiff/Counterclaim Defendant Match Group, LLC is a Delaware limited-liability company with a principal place of business at 8750 North Central Expressway, Suite 1400, Dallas, Texas.

## BACKGROUND

7.    Based in the United Kingdom, Muzmatch is a dating company dedicated to promoting marriage in the Muslim community.

8.    Muzmatch was born out of a desire to provide an alternative to mainstream dating services to members of the Muslim community, with an emphasis on empowering Muslim individuals in the search for a marriage partner and a focus on ensuring compatibility with Islamic values.

9.    Since April 2011, Muzmatch has provided online matchmaking services for members of the Muslim community in the UK who are looking for marriage, via the website at www.muzmatch.com (the "Muzmatch Website").

10. Since at least as early as June 2011, Muzmatch has continuously provided its dating services in the United States through the Muzmatch Website and in connection with the MUZMATCH trademark.

11. Since launching in 2011, the Muzmatch Website has received over 7 million global visits.

12. In April 2015, Muzmatch launched the Muzmatch dating app (the "Muzmatch App") that allowed users to meet potential mates via a downloadable app.

13. Since launching in April 2015, the Muzmatch App has been downloaded globally over 7.75 million times.

14. The Muzmatch App has over 3.8 million users registered worldwide.

15. The Muzmatch Website and Muzmatch App have continuously and exclusively used the MUZMATCH mark in connection with matchmaking and introduction services for members of the Muslim community who are looking for marriage, in accordance with Islamic values.

16. Muzmatch users have come to recognize the MUZMATCH mark as synonymous for matchmaking services within the Muslim community.

17. Since its inception, Muzmatch has focused on creating a dating service with specific features designed to better facilitate marriage within the Muslim community.

18. Many design features of the Muzmatch Website and Muzmatch App have been curated specifically for the Muslim community and to align with certain Islamic values.

19. For example, when a user sets up an account via either the Muzmatch Website or the Muzmatch App, the user is asked for detailed information regarding marital status, religion, ethnicity, and marriage plans.

20.     Muzmatch enables users to filter along religious, ethnicity, sect, and prayer lines.

21.     Muzmatch users can also include a chaperone in their search.  The chaperone receives a weekly transcript of all conversations made by the user.

22.     Muzmatch users are blocked if their profile reveals that they are looking for casual dating or where they are reported as looking for casual dating by others, and sexual conversations are prohibited.

23.     All Muzmatch users must agree to a religious oath of conduct before proceeding, which is designed to promote Muzmatch's values.

24.     As part of Muzmatch's App, from March 2015 to August 2016 and from January 2020 to the present, Muzmatch users swiped left to indicate "no" and swiped right to indicate "yes."

## THE PARTIES' HISTORY

25.     Upon information and belief, Counterclaim Defendant is the largest global online-dating company in the world, with a portfolio of online-dating services and mobile apps, including Tinder, Match.com, OkCupid, Hinge, and Plenty of Fish.

26.     Upon information and belief, Counterclaim Defendant has primarily achieved its market position through an aggressive acquisition strategy.

27.     Upon information and belief, Counterclaim Defendant's aggressive acquisition strategy also includes litigation as a strong-arm tactic.

28.     Upon information and belief, Counterclaim Defendant has a history of suing target dating companies after failed acquisition attempts.

29.     Due to Muzmatch's popularity and market position within the Muslim-dating space, Counterclaim Defendant initially contacted Muzmatch in 2016 alleging trademark infringement based on the use of the MUZMATCH mark.

30.     In 2017, Counterclaim Defendant approached Muzmatch attempting to acquire Muzmatch.

31.     For a few years, the parties were engaged in active acquisition discussions.

32.     During the entire course of acquisition discussions, Muzmatch continued to offer its matchmaking and dating services in connection with the MUZMATCH mark.

33.     In July 2018, the parties entered into a nondisclosure agreement ("NDA") to facilitate the sharing of confidential information to inform the ongoing acquisition discussions. The NDA had a one-year term and has expired.

34.     After execution of the NDA, Counterclaim Defendant made several offers to acquire Muzmatch.  Muzmatch rejected each offer.

35.     In January 2019, acquisition negotiations fell apart.

36.     During this time, Counterclaim Defendant launched a series of trademark oppositions in the EU and the UK against Muzmatch, despite years of knowing about Muzmatch and despite its attempt to acquire the company.

37.     In early 2021, Counterclaim Defendant filed this lawsuit in the U.S. as a counterpart to the other proceedings taking place globally, ostensibly either to coerce Muzmatch into accepting Counterclaim Defendant's previous offers or to entirely push Muzmatch out of the online-dating space.

38.     Upon information and belief, Counterclaim Defendant has a well-documented history of resorting to litigation after failed acquisition attempts.  *See Match Group LLC v. Bumble Trading Inc.*, No. W-18-CV-00080-ADA.

39.     Upon information and belief, Counterclaim Defendant famously attempted to acquire Bumble Inc. ("Bumble") and failed.  After which, Counterclaim Defendant sued Bumble

in this very Court for highly similar trademark- and patent-infringement claims.

**COUNTERCLAIM DEFENDANT'S**
**ALLEGED SWIPE-FORMATIVE TRADEMARKS**

40.     Counterclaim Defendant alleges rights to the SWIPE, SWIPE RIGHT, SWIPE LEFT, and other SWIPE-formative trademarks.

41.     Counterclaim Defendant filed a Complaint against Muzmatch alleging, among other things, infringement of Counterclaim Defendant's claimed trademark SWIPE and variations thereof.  Counterclaim Defendant uses the terms "swipe," "swipe right," "swipe left," and other variations of "swipe" as trademarks in connection with the Tinder app.

42.     Upon information and belief, on June 5, 2013, Counterclaim Defendant's predecessor in interest Chirpme, Inc. ("Chirpme") filed Application Serial No. 85/950,991 for the mark SWIPE in connection with "computer application software for mobile devices, namely, software for social introduction and dating services" in class 9 (the "SWIPE Application").

43.     Upon information and belief, at the time that the SWIPE Application was filed, Chirpme was using "SWIPE" as the name of a mobile application that enabled users to locate and chat with other nearby users.

44.     Upon information and belief, Chirpme's application functioned by showing users photographs of prospective nearby users and allowing users to swipe left to indicate disinterest or swipe right to indicate interest in the user.  SWIPE was used to refer to the touchscreen gesture of the app.

45.     Upon information and belief, on December 30, 2013, Chirpme assigned its trademark rights in "SWIPE," including the SWIPE Application, to SpeedDate.com, LLC.

46.     Upon information and belief, on January 14, 2014, the SWIPE Application matured to Registration No. 4,465,926 (the "Registration").

47.     Upon information and belief, on February 24, 2015, SpeedDate.com, LLC assigned the SWIPE mark and Registration to Tinder, Inc.

48.     Upon information and belief, on July 13, 2017, Tinder, Inc. merged with Match Group, Inc. and also on July 13, 2017, Match Group, Inc. assigned its trademark rights in "SWIPE," including the Registration, to Counterclaim Defendant.

49.     Upon information and belief, on or about April 24, 2015, Counterclaim Defendant filed trademark applications for SWIPE RIGHT (Serial No. 86/608,899) and SWIPE LEFT (Serial No. 86/608,903) in connection with "downloadable software in the nature of a mobile application for internet-based dating and matchmaking; downloadable software in the nature of a mobile application in the field of social media, namely, for sending status updates to subscribers of web feeds, uploading and downloading electronic files to share with others" in class 9.

50.     Upon information and belief, on July 1, 2015, Counterclaim Defendant filed trademark applications for SWIPE (Serial No. 86/680,914), SWIPE LEFT (Serial No. 86/680,923) and SWIPE RIGHT (Serial No. 86/680,927) in connection with "dating services; internet-based social networking, introduction and dating services" in class 45.

51.     Upon information and belief, on August 12, 2015, the United States Patent and Trademark Office ("USPTO") refused registration of the SWIPE RIGHT (Serial No. 86/608,899) and SWIPE LEFT (Serial No. 86/608,903) applications on the ground that SWIPE RIGHT and SWIPE LEFT merely describe a feature of the applied-for goods.  The USPTO also cited prior-filed Application Serial Nos. 86/363,987 and 86/363,993 for the mark JSWIPE, Serial No. 86/439,621 for the mark CHRISTIAN SWIPE, and Serial No. 86/366,708 for the mark SWIPEQ (collectively, the "Cited Applications"), all for dating-app-related services, as potential bars to registration because of a likelihood of confusion.  Counterclaim

Defendant requested suspension of the applications pending the registration or abandonment of the Cited Applications. On February 16, 2016, application Serial Nos. 86/608,899 and 86/608,903 were suspended.

52. Upon information and belief, on August 12, 2015, the SWIPE (Serial No. 86/680,914), SWIPE LEFT (Serial No. 86/680,923), and SWIPE RIGHT (Serial No. 86/680,927) applications were suspended pending the registration or abandonment of the Cited Applications.

53. Upon information and belief, on September 9, 2015, Counterclaim Defendant filed a trademark application for SWIPE UP (Serial No. 86/751,974) in connection with "downloadable software in the nature of a mobile application for internet-based dating and matchmaking; downloadable software in the nature of a mobile application in the field of social media, namely, for sending status updates to subscribers of web feeds, uploading and downloading electronic files to share with others" in class 9.

54. On information and belief, on October 15, 2015, the USPTO refused registration of the SWIPE UP mark on the grounds that SWIPE UP merely describes a feature of the applied-for goods. On April 15, 2016, Counterclaim Defendant responded to the merely descriptive refusal claiming that SWIPE UP is inherently distinctive. As part of its response, Counterclaim Defendant raised arguments based on its alleged trademark rights in the SWIPE mark (Registration No. 4,465,926). On May 4, 2016, the USPTO maintained its refusal to register the purported mark SWIPE UP on the ground that the term is merely descriptive. In addition, the USPTO raised the cited prior-pending Application Serial Nos. 86/363,987; 86/366,708; and 86/363,993 as potential bars to registration.

55. Upon information and belief, on October 18, 2018, Counterclaim Defendant filed

trademark applications for SWIPE SESSIONS (Serial No. 88/160,784) and SWIPE SESSIONS & Design (Serial No. 88/160,907) in connection with "entertainment services; educational and entertainment services, namely, programs accessible by means of Internet streaming, video on demand, web-based applications, mobile phone applications, computer networks, and other forms of transmission media; entertainment, namely, live music concerts, arranging and conducting of concerts" in class 41 and "Dating services; Internet-based dating, social introduction, and social networking services; providing a web site featuring information in the fields of personal relationships, dating, and fashion" in class 45.

56.     On information and belief, on November 21, 2018, Smooch Labs Inc., owner of the JSWIPE application, filed Cancellation No. 92070035 against Counterclaim Defendant's SWIPE registration at the Trademark Trial and Appeal Board ("TTAB"). Cancellation No. 92070035 is currently suspended at the TTAB.

57.     On information and belief, on January 17, 2019, the USPTO refused registration of the SWIPE SESSIONS mark on the grounds that SWIPE SESSIONS merely describes a feature of the applied-for services. The USPTO also raised the cited prior-pending Application Serial Nos. 87/119,447; 87/119,452; and 87/226,753 as potential bars to registration.

58.     On information and belief, on July 11, 2019, the SWIPE SESSIONS applications were suspended.

59.     Upon information and belief, on July 12, 2019, Counterclaim Defendant filed a trademark application for SWIPE NIGHT (Serial No. 88/511,870) in connection with "Dating services; Internet based social networking, introduction, and dating services" in class 45.

60.     Upon information and belief, on September 28, 2019, the USPTO issued a suspension notice against the SWIPE NIGHT application (Serial No. 88/511,870) citing prior-

pending Application Serial Nos. 86/363,987; 86/363,993; 86/983,877; 87/371,112; and 87/637,835 as potential bars to registration.

61.     Upon information and belief, on September 18, 2019, Counterclaim Defendant filed trademark applications for SWIPE NIGHT (Serial No. 88/621,842) in connection with "Downloadable computer application software, namely, interactive game software; interactive game software for use with mobile devices for the purpose of accessing online dating services; downloadable software in the nature of a mobile application for internet-based dating; downloadable computer software to enable uploading, posting, displaying of images, moving images, film, video recordings, sound recordings, multimedia recordings, animations, and other digital content via global computer and communication networks" in class 9; and SWIPE NIGHT (Serial No. 88/621862) in connection with "Entertainment services, namely, providing on-line non-downloadable interactive game software; entertainment services, namely, providing temporary use of non-downloadable interactive game software for use with personal computers and mobile devices for the purpose of accessing online dating services" in class 41.

62.     Upon information and belief, on December 21, 2019, the USPTO refused registration of SWIPE NIGHT (Serial Nos. 88/621,842 and 88/621,862), citing prior-pending Application Serial Nos. 86/983,877; 86/363,987; and 86/363,993 as potential bars to registration.

63.     Upon information and belief, on June 20, 2020, the SWIPE NIGHT applications (Serial Nos. 88/621,842 and 88/621,862) were suspended.

## GENERIC AND FUNCTIONAL USES OF SWIPE

64.     Upon information and belief, Counterclaim Defendant uses the term "swipe" to communicate functional information about its mobile-device software applications, namely how a user navigates the app.

65.     Upon information and belief, the term "swipe" has a common English definition

that users understand to mean the action of "mov[ing] your finger quickly across the screen of an electronic device such as a mobile phone or small computer in order to move text, pictures, etc. or give commands." *See* Ex. A for a definition of "swipe."

66. Upon information and belief, words can be functional when they perform a function. Here, Counterclaim Defendant's use of the word "swipe" performs the functional purpose of informing customers about the touchscreen gesture that is essential to operate its mobile app.

67. Upon information and belief, "swipe" refers to a functional touchscreen gesture design feature common to mobile applications.

68. Upon information and belief, Counterclaim Defendant is not the only entity that uses or is entitled to use the term "swipe" in a functional manner in connection with mobile software applications.

69. Upon information and belief, Google's Material Design System identifies "swipe" as a category of navigational gestures. *See* Ex. B.

70. Upon information and belief, Google's Material Design System manual indicates that a swiping gesture allows users to "slide elements to complete actions upon passing a threshold."

71. Upon information and belief, Apple Inc.'s developer guide indicates that "[a] swipe gesture occurs when the user moves one or more fingers across the screen in a specific horizontal or vertical direction." *See* Ex. C. The manual also provides code for the swipe gesture in apps as a category of gestures allowed for apps.

72. Upon information and belief, the iPhone User Guide lists "swipe" as a "basic gesture" that users use to interact with the iPhone. *See* Ex. D.

73.     Upon information and belief, Counterclaim Defendant and others use the word "swipe" in a functional manner with mobile applications to inform users about the touchscreen gesture that is essential to using the mobile application.  Some examples include:

Welcome to Tinder — you can be here for a good time, and a long time, too. With 30 billion matches to date, Tinder® is the top free dating app, making it the place to meet new people. Whether you're looking for love, need a date today, or just want to chat: We've got something for local singles everywhere, plus free features that give you the best dating experience possible. Like what? Glad you asked.

- Whether you're gay or bisexual, be proud of who you are with our Orientation feature
- Prove you're the real deal and verify your profile with Photo Verification
- Find out what you've got in common with your potential match with Interests
- Bring a plus one on all your dates for extra safety with Noonlight

Take us with you on your travels whether you're dating in Berlin or dating in Chicago — wherever you go, we'll be there. Some people call us their most dependable matchmaker, some people call us the world's most popular free dating app, but you can just call us when you want to meet up with singles.

While you're here — make a toast to the Tinder Gold™ life. Enjoy all of Tinder's premium features with our top-tier subscription.

- Likes You allows for you to see all your fans, saving you precious time
- Unlimited Likes for you to catch feelings for as many people as you want
- Rewind for you to undo your last Like or Nope
- Use Passport to go anywhere in the world to find friends online outside your zip code
- Boost your profile to the top for thirty minutes to get more attention
- 5 Super Likes per day because sometimes you really, really Like someone

There's a plus side for those not ready to commit to a relationship with a Tinder Gold™ subscription. With a Tinder Plus® subscription, you'll unlock features including Unlimited Likes, Passport, Rewind, Boost, and 5 Super Likes per day.

Tinder Basics:

Match. Chat. Date. That's our mantra. It's easy and fun to find people on Tinder. Make your profile stand out with your best pics and a little something about you to increase your match making potential. Swipe Right™ on a profile to Like someone, swipe left to pass. If someone Likes you back, It's a Match! And, there's no pressure: We invented the double opt-in which means two people have to show a mutual interest in order for there to be a match. How many dating apps can say that?



Tinder > A Guide To Tinder > Tinder Overview

# What is Tinder?

Tinder was introduced on a college campus in 2012 and is the world's most popular app for meeting new people. It's been downloaded more than 340 million times and is available in 190 countries and 40+ languages.

Tinder is a place built on a world of possibility. The possibility of forming connections that could lead to more. If you're here to meet new people, expand your social network, meet locals when you're traveling, or just live in the now, you've come to the right place.

Tinder is simple and fun—use the Swipe Right™ feature to Like someone, and if someone Likes you back, it's a Match! ™ Get ready to enter a world of endless possibilities.

Welcome to Tinder. Download the Tinder app for iOS and Android, or visit Tinder.com to use Tinder for Web.



Tinder > Troubleshooting > Trouble with Discovery (Swiping on Other Users)

Search

# Trouble with Discovery (Swiping on Other Users)

I'm not seeing profiles in Discovery

I'm seeing profiles I've already swiped on

The profiles I see are far away

Profiles don't match my gender or age preferences

I denied Tinder access to my location

Privacy    English (US) ⌄



**tinder**   Products   Learn   Support   ⊕ ENGLISH   **LOG IN**

IT'S A
**MATCH!**

**See What Happens When You Swipe Right®**

Swipe Right® to Like someone or Swipe Left™ to say Nope. We'll only let them know you're interested when the feeling is mutual.

---

bumble.com/en/help/troubleshooting

🐝 **bumble**   About   The Buzz   Ambassadors   **Download the app**   Sign in

**Matching & Messaging**

- My Backtrack isn't working, what can I do?
- Why has my match/message disappeared?
- Why can't I start a conversation with somebody I've swiped right on?
- I accidentally swiped left, can I undo it?
- Can I search for a specific person on Bumble?
- Why am I seeing people from an area outside of my own?
- How can I recover a deleted match?
- Why am I not receiving any matches?
- Does Bumble have a swipe limit?
- Why can't I see someone's location on their profile?
- Why did I run out of people to swipe on?

---

kb.theinnercircle.co/help/can-i-unlike-someone

Home / Features & Functionalities / How do I like / unlike someone?

# How do I like / unlike someone?

Updated on June 22, 2020

Feelings change – and sometimes you just tap the wrong thing – but unfortunately you can't undo a like or dislike.

(You can undo a match, though. Just swipe left on the match and click the red 'X' that appears.)

If you think you've accidentally disliked someone, get in touch on



74.     Upon information and belief, Counterclaim Defendant uses the term "swipe" in a functional sense to explicitly communicate functional information about navigating its mobile application, and not in a way to identify Counterclaim Defendant or its services.  Counterclaim Defendant's use of "swipe" does not function as a trademark.

75.     Upon information and belief, Counterclaim Defendant's purported trademark rights to "swipe" amount to a monopoly on a functional word that is essential for using a mobile application.  Counterclaim Defendant's exclusive rights to "swipe" for mobile applications would prevent competitors (and others in the mobile app space) from using the word "swipe" to refer to a functional and essential feature of a mobile application.  Further, there are no alternatives that effectively communicate the same functional information of a touchscreen

gesture that "swipe" does in connection with mobile applications. The lack of alternatives suggests the functional use of "swipe" in connection with mobile applications.

76. Upon information and belief, Counterclaim Defendant's allegations of Muzmatch's infringement of the purported "swipe" mark are based on Muzmatch's own functional uses of the word "swipe" in connection with the Muzmatch App. This is the same type of functional use of "swipe" that numerous third parties use in connection with their mobile applications to inform users about functional features of mobile applications. Specifically, Counterclaim Defendant alleges that Muzmatch infringes the purported "swipe" mark by stating "[i]t is always free to swipe, match, chat and marry on muzmatch." (*See* Dkt. 1 ¶ 52.) Match also alleges that Muzmatch's use of "swipe" within its "Help" (or Frequently Asked Questions) section is a basis for infringement with inquiries such as: (1) "[w]hy does a timer come up when I try to swipe someone"; "[w]hat is reset swipes (likes and passes)"; and "[h]ow do I see who liked me in Explore" and describing that Explore is split into "NEW and PREVIOUSLY SWIPED." (*See* Dkt. 1 ¶ 55.) Muzmatch's use of "swipe" is not trademark use. Muzmatch uses "swipe" to refer to a touchscreen gesture and inform users of an essential feature for using its mobile application – the same functional use Counterclaim Defendant relies on when using "swipe" in connection with its mobile app. Counterclaim Defendant's allegations otherwise highlight its anti-competitive efforts to prohibit competitors' use of the functional word "swipe."

77. Since the introduction of the iPhone to the public, swiping has been as ubiquitous as touchscreens, and the relevant purchasing pubic has come to understand "swipe" to identify the touchscreen gesture.

78. Upon information and belief, the relevant consumer understands the term "swipe" to be generic when used in connection with mobile applications, including dating apps, rather

than a source indicator.  These uses are ubiquitous in our day-to-day vocabulary.  Some examples
include:



# Swiping sucks and even the dating industry knows it

## 'Swiped' matches digital hookups with unforeseen consequences



Popsugar › Love › Online Dating › Ship Is the Dating App Where Your Friends Swipe For You

## Want to Let Your Friends Control Your Love Life? This Dating App Lets Them Swipe For You

February 29, 2020
*by* HOLLEE ACTMAN BECKER



# What Swipe Culture Has Done to Dating

 Acamea Deadwiler · Mar 2, 2019 · 3 min read ★

With great technology comes great challenges.

---

## Why Millennials Are Burnt Out on Swipe-Based Dating Apps

**More and more people are looking to find a date the old school way.**

 BY SOFIA BARRETT-IBARRIA · FEB 6, 2019

DISCOVER    VIDEO    NEWSLETTERS        

## How swipe-based dating apps are impacting your mental health

Online dating has evolved, but at what cost?

JAIMEE BELL   26 May, 2020



79.     Upon information and belief, there have been scientific studies conducted on swipe-based dating applications.  *See* Ex. E.

80.     Upon information and belief, swipe-based dating apps have been the basis of an HBO documentary, "Swiped: Hooking Up in the Digital Age."  *See* Ex. F.

81.     Upon information and belief, Counterclaim Defendant uses "swipe" in its generic and functional meaning of a touchscreen gesture within a mobile application.   Under the "troubleshooting" tab of the Tinder website, Counterclaim Defendant has a section titled "Trouble with Discovery (*Swiping* on Other Users)" and a specific section for "I'm seeing

profiles I've already *swiped* on." *See* Ex. G (emphases added).

82. Upon information and belief, Counterclaim Defendant uses the phrases "swipe right," "swipe left," and "swipe up" in their functional meanings to convey the navigational direction of a touchscreen gesture.

83. Upon information and belief, the phrases "swipe right" and "swipe left" have also become generic in the relevant purchasing public's mind for dating services based on the prolific uses of the phrases to refer to dating services. Examples include:



NOTED

# Beyond Swipe Right: The Pickup Line Gets a Makeover



## 'Love, Guaranteed' Review: Swiping Left on Online Dating

Rachael Leigh Cook stars in this rom-com about a lawyer and her charming new client who wants to sue a dating website for falsely promising love.

# Bustle

# I Swiped Right On Everyone For A Day



## bumble
About    The Buzz    Ambassadors

**Download the app**

Why am I seeing people outside the filters I set on Bumble?

What are Basic Info Badges?

Question Game

What are Reactions?

What is Private Detector and how does it work?

How does Bumble work?

How does messaging work on Bumble?

When do Bumble matches expire? And what happens once they do?

Can I get an expired match back?

### What's the difference between a match and an admirer?

Last updated 3 months ago  (Alice)

Imagine it: You're swiping along when you come across an amazing profile. You get a little excited, maybe you're already thinking about your first move. Holding your breath you slide them to the right only for that magical Boom! Screen to appear. Because both you and this other user have swiped to the right you two are now a match.

All of your most recent matches will appear right above your messages in your Match Queue. Once a conversation gets going, they'll move down into your messages.

Admirers are a bit different. These users have swiped to the right on your profile (because, duh, you're awesome) but you haven't swiped to the left or right on them yet. If you're a Bumble Premium subscriber you can actually take a peek at your admirers in the Beeline and decide from there if you want to swipe to the left or right.

**Remember:** Sometimes an admirer won't appear in your swipe deck because they don't fit your filters (e.g. distance, or advanced filters like astrological sign). We recommend switching up your filters from time to time, you never know who may surprise you!

---

kb.theinnercircle.co/help/can-i-unlike-someone

Home / Features & Functionalities / How do I like / unlike someone?

## How do I like / unlike someone?

Updated on June 22, 2020

Feelings change – and sometimes you just tap the wrong thing – but unfortunately you can't undo a like or dislike.

(You can undo a match, though. Just swipe left on the match and click the red 'X' that appears.)

If you think you've accidentally disliked someone, get in touch on

22







DONT SWIPE RIGHT









**Tawkify**
Sponsored · ⚙

Still believe some algorithm can find a soulmate? Let's be realistic.

We are a concierge dating service for serious, working professionals. Each match is hand-picked by a personal matchmaker who takes the time to meet with their clients, and knows exactly what they are looking for.

We set up their last first date.

Book an interview today!

STOP SWIPING.

TAWKIFY.COM
When You're Looking to Get Serious, Trust Tawkify

Book Now



**CAMPUS LIFE**   **DIVERSIONS**

# Here are five dating apps you should swipe right on

Audrey Decker    ·    January 30, 2020

 Share    Tweet    E-mail


## MARKETING.MEDIA.MONEY

**MARKETING.MEDIA.MONEY**

# 'Breadcrumbing' to 'obliga-swiping': These are the new dating terms you've never heard of

PUBLISHED THU, FEB 13 2020•8:31 AM EST

Lucy Handley
@LUCYHANDLEY

SHARE



84.     Upon information and belief, these articles and memes all use variations of "swipe" including the terms "swipe right" and "swipe left" to refer to dating services generally, rather than to Counterclaim Defendant's dating services specifically.  The uses demonstrate that the relevant purchasing public does not associate the terms "swipe left" and "swipe right" with any specific dating services provider, much less with Counterclaim Defendant.  The memes in

particular highlight the relevant purchasing public's understanding of the terms to be generic for dating services because even without a specific good or service explicitly referenced in the meme, the public understands that "swipe right" and "swipe left" refers to dating services.

85. Upon information and belief, the relevant purchasing public does not understand the terms "swipe right" and "swipe left" to be source indicators for a specific provider of dating services. Instead, the relevant public understands these terms refer to dating services generally.

86. Notwithstanding the common understanding and generic use of "swipe," Counterclaim Defendant maintains that the SWIPE Registration is valid, and that Counterclaim-Defendant owns exclusive rights to the terms "SWIPE," "SWIPE RIGHT," "SWIPE LEFT," and variations thereof, in connection with mobile applications and dating services.

87. Notwithstanding the common understanding and functional use of "swipe," Counterclaim Defendant maintains that the SWIPE Registration is valid, and that Counterclaim Defendant owns exclusive rights to the terms "SWIPE," "SWIPE RIGHT," "SWIPE LEFT," and variations thereof, in connection with mobile applications.

88. Upon information and belief, the term "swipe," and variations thereof, as used by Counterclaim Defendant and its predecessors in interest has never functioned as a trademark or source identifier.

89. Upon information and belief, "swipe" has been widely used as a generic term for mobile applications.

90. Upon information and belief, "swipe" is a term that refers to the essential functionality of a mobile application.

91. Upon information and belief, "swipe" and variations thereof are generic and/or functional terms for mobile applications.

92.     Upon information and belief, Counterclaim Defendant's alleged exclusive right to use the purported SWIPE mark harms Muzmatch and others in the mobile application industry by preventing the use of generic and functional uses of the words.

**COUNTERCLAIM DEFENDANT'S**
**PURPORTED MATCH TRADEMARK**

93.     Upon information and belief, Counterclaim Defendant has used several trademarks that incorporate different variations of the word "match" in connection with dating services.

94.     Upon information and belief, on May 20, 2014, Counterclaim Defendant filed a trademark application for MATCH and Design (Serial No. 86/286890), match♥, in class 45 in connection with "Dating services; Internet based social networking, introduction, and dating services." On September 1, 2015, the MATCH and Design application matured into Registration No. 4,805,047.

95.     Upon information and belief, the MATCH and Design Registration No. 4,805,047 describes the mark as "consist[ing] of the word 'match' in lowercase letters with a heart above it and to the right."

96.     Upon information and belief, a heart is a generic symbol for love. Upon information and belief, a heart is commonly used in connection with dating services.

97.     Upon information and belief, a heart is generic for dating services.

98.     Upon information and belief, the relevant purchasing public does not consider a heart design to be a source identifier for dating services.

99.     Upon information and belief, many third parties utilize a heart design for dating

services and the relevant purchasing public understands that many parties use a heart in connection with dating services, so the relevant purchasing public is less likely to associate a heart design with one source.

100.    Upon information and belief, the relevant purchasing public understands "match" to be generic for dating services based on the vast number of third parties who use the term in connection with dating services, its common dictionary definition, and media references.

101.    Upon information and belief, the MATCH and Design Registration No. 4,805,047 is a composite mark comprised of a generic word "match" plus a generic heart design such that the composite mark overall is generic for dating services.

102.    Upon information and belief, the relevant consumer understands the MATCH and Design composite mark is generic for dating services.

103.    Upon information and belief, Counterclaim Defendant purports to use the standalone word MATCH as a trademark.

104.    Upon information and belief, Counterclaim Defendant purports to assert common law trademark rights to the standalone word MATCH.

105.    Upon information and belief, the standalone word MATCH is not a federally registered trademark.

106.    Upon information and belief, even though the standalone word MATCH is not a federally registered trademark, Counterclaim Defendant falsely uses the registered symbol ® in connection with the standalone word MATCH.  Examples include:



**Ad** · http://www.match.com/ ▾

## Match.com  Match® - Official Site

Everyone Knows Someone Who's Met on **Match**. Start Now. -- Virtual Events. -- Dating
Experts. -- Personalized **Matches**. -- Video Dates. Types: Single Women, Single Men, Gay
Dating, Lesbian Dating, Christian Dating.

### Match.com

https://www.match.com ▾

Online Dating at Match.**com**. Every year, hundreds of thousands of people find love on Match.**com**.
Match.**com** pioneered the Internet dating industry, launching in 1995 and today serves millions of singles
in 24 countries.Match.**com** …

### Login

 Match® Login | The Leading Online Dating
Site for ...

### Gay Dating

Gay Dating Services — Match.com. If you're …

Boston · Michael

See more ∨

### Safety Center

Match® Safety Center | The Leading Online
Dating Site ...



107. Upon information and belief, Counterclaim Defendant also uses the registered symbol ® in connection with the standalone word MATCH in the Introduction section of its Complaint.

108. Upon information and belief, Counterclaim Defendant's use of "Match®" is false, because the ® symbol is reserved only for federally registered trademarks and the word MATCH alone is not a federally registered trademark. Counterclaim Defendant could have used the TM symbol for the standalone word MATCH, it could have not used any symbol with the standalone word MATCH, or it could have used MATCH (logo) ®, but it did not use any of these accurate alternatives.

109. Upon information and belief, Counterclaim Defendant's use of "Match®" is a misuse of the federal notice and constitutes false advertising.

110. Upon information and belief, Counterclaim Defendant's use of "Match®" harms

Muzmatch and others because it purports exclusive trademark rights to the standalone word MATCH, which is generic for dating services, and it is anticompetitive because it deprives Muzmatch and others from using the generic term to refer to their own competitive services.

111. Upon information and belief, Counterclaim Defendant's customers may erroneously presume that Counterclaim Defendant has exclusive rights to the generic word "match" for dating services as a result of Counterclaim Defendant's false use of "Match®," which may be material to and influence a purchaser's decision for purchasing Counterclaim Defendant's services because Counterclaim Defendant appears to have exclusive rights in the dating services space.

112. Upon information and belief, "match" is a commonly used word in the English language. It has a known dictionary definition: "a prospective partner in marriage." *See* Ex. H.

113. Upon information and belief, the word "match" is commonly used in connection with dating services.

114. Upon information and belief, many third parties use "match" in connection with dating services.

115. Upon information and belief, the relevant purchasing public understands "match" to be generic when used in connection with dating services.

116. Upon information and belief, the term "match" is not associated by the relevant purchasing public with any particular source, much less with Counterclaim Defendant.

117. Upon information and belief, various articles, blogs, and YouTube videos use the generic term "match" for dating services. Some examples include:



Psychology Today                    🌐 US

Marisa T. Cohen Ph.D., CPLC
Finding Love: The Scientific Take

# Meeting Your Match Online

The pros and cons of the digital world of dating.

Posted May 01, 2020

🔵 🔵 ✉️



Meet Your Match Speed Dating | Special Shoot Your Shot Edition

CULTURE

**We've Found The Dating App That Lets You Meet Your Match So You Can Stop Swiping And Start Connecting**

#SPONSORED

BY NICK DIMENGO 🐦 / JULY 16, 2020

 FACEBOOK    TWITTER    REDDIT    FLIPBOARD

Michael Tudda    148 Followers    About     Follow                    Sign in



Match or die.

## 5 Ways to Get More Matches On Dating Apps

Michael Tudda  Apr 13, 2017 · 8 min read                    

# How To Turn Your Dating App Match Into An Actual Date

ERIKA W. SMITH
LAST UPDATED OCTOBER 22, 2019, 1:46 PM

  

118.    Upon information and belief, Counterclaim Defendant is not the only entity that uses or is entitled to use the term "match" in connection with dating services and dating apps.

119.    Upon information and belief, many dating apps and companies use the term "match" in a generic fashion for dating services and dating applications, including:



Love Match Deluxe



Craft Match



Panion : Match, Chat & Meet
Up with New Friends Nearby
Oct 29, 2019



Are We a Love Match



SINGLE MATCH - FLIRT
DATING GAME BY LOVE
AFFINITY AND FACE MATCH



Asian Dating - Asian Match



Local Match



## Match Dating Online - Find & Meet People Online

**LishaMobile    Dating**

★ ★ ★ ★ ⯪ 1,631 👤

Ⓜ Mature 17+

⚠ You don't have any devices

🔖 Add to Wishlist

Install



## OE Match - Date, Chat & Meet Asian Singles

**OE International Dating    Dating**

★ ★ ★ ★ ★ 1,086 👤

Ⓜ Mature 17+

Offers in-app purchases

⚠ You don't have any devices



## MY Match - Chinese Dating App

**East Asian Dating App**   **Dating**

★ ★ ★ ★ ☆ 274 👤

Ⓜ Mature 17+

**Offers in-app purchases**
⚠ You don't have any devices

⊞ Add to Wishlist

Install



## Millionaire Match: Meet And Date The Rich Elite

**MillionaireMatch Inc**   **Dating**

★ ★ ★ ★ ★ 4,938 👤

Ⓜ Mature 17+

**Offers in-app purchases**
⚠ You don't have any devices

⊞ Add to Wishlist

Install



## W-Match: Video Dating App, Meet & Video Chat

**Waplog Dating Apps**   **Social**

★ ★ ★ ★ ★ 319,905 👤

Ⓜ Mature 17+

**Contains Ads · Offers in-app purchases**
⚠ You don't have any devices

⊞ Add to Wishlist

Install



## MT Match Chinese Dating

**MT Match Dating Group**   **Dating**

★ ★ ★ ★ ★ 473 👤

Ⓜ Mature 17+

Offers in-app purchases

⚠ You don't have any devices

⎘ Add to Wishlist

**Install**

## Age Match - Older Men Younger Women Dating App



**AgeMatch.com since 2002**   **Dating**

★ ★ ★ ★ ★ 554 👤

Ⓜ Mature 17+

Offers in-app purchases

⚠ You don't have any devices

⎘ Add to Wishlist

**Install**



## Senior Match: Mature Dating App for Silver Singles

**SeniorMatch.com since 2003**   **Dating**

★ ★ ★ ★ ★ 1,719 👤

Ⓜ Mature 17+

Offers in-app purchases

⚠ You don't have any devices

⎘ Add to Wishlist

**Install**



# ThaiMatch

**Geekee Company Limited**    **Dating**

★ ★ ★ ★ ★   881  👤

Ⓜ **Mature 17+**

**Contains Ads · Offers in-app purchases**

⚠ You don't have any devices

🔖 Add to Wishlist

**Install**



# MatchDate - Virtual Speed Dating Online Matches

**Wesapi**    **Dating**

Ⓜ **Mature 17+**

⚠ You don't have any devices

🔖 Add to Wishlist

**Install**



# meMatch - Free Dating App, Date Site Single Hookup

**The Dating Company, Flirt & Hookup Apps for Free!**    **Dating**

★ ★ ★ ★ ★   344  👤

Ⓜ **Mature 17+**

**Contains Ads · Offers in-app purchases**

⚠ You don't have any devices

🔖 Add to Wishlist

**Install**





120.    Upon information and belief, the relevant purchasing public understands the term "match" to be a generic term for dating services and dating apps.

121.    Upon information and belief, "match" is not a source identifier for dating services or dating apps.

122.    Upon information and belief, the relevant purchasing public does not associate

the term "match" with Counterclaim Defendant, or its services based on the vast number of competitors that use the word with dating services and dating apps and the media's uses of the word "match" for dating services and dating apps.

123.   Upon information and belief, the term "match" has been used widely as a generic term for dating services and dating apps.

124.   Upon information and belief, Counterclaim Defendant itself uses the term "match" in a generic manner.  Some examples include:





match.

Discover | Search | Likes | Matches | Events | Subscribe

What do you need help with? | Search

E.g. "reset password" or "cookies"

Account Settings | Billing & Subscription | Member Communication | Paid Features & Power-Ups | Profile & Photos | Searching & Matching | Technical Issues | Contact Us

What do you need help with? | Search

E.g. "reset password" or "cookies"

Account Settings | Billing & Subscription | Member Communication | Paid Features & Power-Ups | Profile & Photos | Searching & Matching | Technical Issues | Contact Us

### Searching & Matching

> Recommended - Top Picks
> Mutual Matches
> Do my matches receive me as well?
> Improving Matching Results
> Match.com by Mail
> Matches Not Following Preferences
> Searching on Match

> Removing Profiles From Search Results
> Reverse Matching
> Same Sex Dating
> Saved Search
> View Search Results
> Search Sorting Options
> Viewing your own profile

E.g. "reset password" or "cookies"

Account Settings | Billing & Subscription | Member Communication | Paid Features & Power-Ups | Profile & Photos | Searching & Matching | Technical Issues | Contact Us

### Do my matches receive me as well?

Members don't know when they have been sent to you as a match and won't automatically receive you as a match at the same time. This is because all of the matching we do on our site is member-specific, meaning that our evaluation process to find your matches happens separately from our process to find matches for other members.

Of course, with some features like Mutual Match that take both your criteria into account, there's a good chance that a match of yours will eventually receive you as a match, too.

43

A

125.     Upon   information   and   belief,   competitors   and   Counterclaim   Defendant's affiliated companies, such as Tinder, Hinge, OkCupid, and Plenty of Fish, prominently use the word "match" in a generic manner for dating services and dating apps.  Some examples include:





Tinder > A Guide To Tinder > Matching and Messaging

## Messaging a Match

Only once you've matched with someone on Tinder can you start to chat with that person. Send a Bitmoji message or add a GIF to liven up your first message!

This app is available only on the App Store for iPhone.



### Hinge: Dating & Relationships `17+`
Meet, Date & Find Love
Hinge, Inc.

#11 in Lifestyle
★★★★★ 4.5 • 427.3K Ratings

Free · Offers In-App Purchases

**iPhone Screenshots**








### **Inner Circle – Dating App** `17+`
Meet your match.
Circle Imperium B.V.
Designed for iPhone

★★★★☆ 4.2 • 7.4K Ratings

Free · Offers In-App Purchases

**Screenshots**   iPhone   Apple Watch







**OkCupid: Online Dating App** `17+`
Meet new people & find dates
OkCupid

#60 in Social Networking
★★★★☆ 4.3 • 195.6K Ratings

Free · Offers In-App Purchases

**iPhone Screenshots**



Get the best dating app for singles and find a match based on who you really are and what you love.

Better dates come from better connections – that's why OkCupid shows off who you are beyond just a photo. Online dating should focus on what makes you, well, you – because you deserve it.







126.     Upon information and belief, all these competitors use the term "match" similarly to identify their dating services process and these uses are persuasive evidence to show that the relevant purchasing public understands "match" to be generic for dating services and dating apps.

127.     Upon information and belief, "match" is a generic designation because it is

necessary for dating service providers to use the term "match" because it refers to an essential feature of dating services.

## FIRST CAUSE OF ACTION
### (Declaration of Invalidity of Registration No. 4,465,926)

128.  Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

129.  Registration No. 4,465,926 for the mark SWIPE registered on January 14, 2014, to Chirpme, Inc. in international class 9 for "computer application software for mobile devices, namely, software for social introduction and dating services."

130.  Registration No. 4,465,926 is invalid, as the described mark is generic and therefore does not constitute a protectable mark pursuant to 15 U.S.C. § 1064.

131.  Registration No. 4,465,926 is invalid, as the described mark is functional and therefore does not constitute a protectable mark pursuant to 15 U.S.C. § 1064.

132.  Upon information and belief, Muzmatch has been harmed and will continued to be harmed by the continued registration of the purported SWIPE mark in connection with the goods identified in SWIPE Reg. No. 4,465,926.

133.  Upon information and belief, the term "swipe" used by Counterclaim Defendant is generic, cannot function as a source identifier, and is not entitled to registration.

134.  Upon information and belief, "swipe" is generic for mobile applications.

135.  Upon information and belief, "swipe" is functional for mobile applications.

136.  Upon information and belief, the relevant purchasing public understands the word "swipe" to be generic for mobile applications.

137.  Upon information and belief, the term "swipe" is not associated by the relevant purchasing public with any particular source, much less with Counterclaim Defendant.

138.     Muzmatch is entitled to a declaration that United States Trademark Registration No. 4,465,926 is invalid.

## SECOND CAUSE OF ACTION
### (Declaration of Invalidity of Registration No. 4,805,047)

139.     Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

140.     Registration No. 4,805,047 for the mark MATCH and Design registered on September 1, 2015, to Match.com, L.L.C. in class 45 for "Dating services; Internet based social networking, introduction, and dating services."   On September 12, 2017, Match.com, L.L.C. assigned the MATCH and Design mark, including Registration No. 4,805,047, to Counterclaim Defendant.

141.     Registration No. 4,805,047 is invalid as the described mark is generic and therefore does not constitute a protectable mark pursuant to 15 U.S.C. § 1064.

142.     The relevant purchasing public understands the MATCH and Design mark as a whole to have primarily generic significance for dating services.

143.     The purported MATCH and Design mark does not function as a source identifier for dating services.

144.     Muzmatch is entitled to a declaration that United States Trademark Registration No. 4,805,047 is invalid.

## THIRD CAUSE OF ACTION
### (Cancellation of Registration Nos. 4,465,926 and 4,805,047)

145.     Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

146.     Pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, this Court may "determine the right to registration, order the cancelation of registrations, in whole or in part, . . .

and otherwise rectify the register with respect to the registrations of any party to the action."

147.  Counterclaim Defendant's alleged U.S. Registration No. 4,465,926 is invalid, as the term "swipe" is generic and/or functional pursuant to 15 U.S.C. § 1064.

148.  Further, because of the generic nature of the purported SWIPE mark covered by Registration No. 4,465,926, if competitors are precluded from using this generic term, then Counterclaim Defendant would obtain a significant non-reputation-related advantage over its competitors.

149.  Further, because of the functional nature of the purported SWIPE mark covered by Registration No. 4,465,926 that communicates functional characteristics of the mobile application, if competitors are precluded from using this functional term, then Counterclaim Defendant would obtain a significant non-reputation-related advantage over its competitors.

150.  Protection of Counterclaim Defendant's purported SWIPE mark under Registration No. 4,465,926 would significantly undermine Muzmatch's ability to compete in the market for mobile apps.

151.  The term "swipe" as used by Counterclaim Defendant is generic and/or functional and cannot function as a source identifier and, therefore, is not entitled to registration.

152.  Accordingly, Registration No. 4,465,926 should be canceled.

153.  Counterclaim Defendant's alleged U.S. Registration No. 4,805,047 is invalid, as the MATCH and Design mark is generic pursuant to 15 U.S.C. § 1064.

154.  Because of the generic nature of the purported MATCH and Design mark covered by Registration No. 4,805,047, if competitors are precluded from using this generic term and design for dating services, then Counterclaim Defendant would obtain a significant non-reputation-related advantage over its competitors.

155.    Protection of Counterclaim Defendant's purported MATCH and Design mark under Registration No. 4,805,047 would significantly undermine Muzmatch's ability to compete in the market for online-dating applications.

156.    Accordingly, Registration No. 4,805,047 should be canceled.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment That the Term "Match" Is Not Protectable)

157.    Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

158.    The word "match" alone is not a federally registered trademark.

159.    When used in its ordinary meaning, the term "match" alone is generic for dating services and dating apps.

160.    The term "match" is understood by the relevant purchasing public as a generic term for dating services and dating apps based on the prolific uses of "match" by many different dating service providers and the media.

161.    The primary significance of the term "match" to the relevant purchasing public is understood to refer to the fundamental dating process of finding a match within dating services rather than to Counterclaim Defendant or Counterclaim Defendant's dating services.

162.    The term "match" does not function as a source identifier for dating services or dating apps.

163.    Muzmatch and other third parties may freely use the term "match" in connection with dating services in its ordinary meaning.

164.    Accordingly, the term "match" is generic for dating services and dating apps.

## FIFTH CAUSE OF ACTION
### (False Advertising in Violation of Section 43(a) of the Lanham Act)

165.    Muzmatch incorporates and realleges the allegations in the preceding paragraphs

as if fully set forth herein.

166.     Counterclaim Defendant does not own a federal trademark registration for the standalone word MATCH.

167.     Despite not owning a federal trademark registration for the standalone trademark MATCH, Counterclaim Defendant uses the registered symbol ® in connection with the standalone word MATCH.

168.     Since MATCH alone is not a federally registered trademark, Counterclaim Defendant's use of "MATCH®" is literally false.

169.     Counterclaim Defendant has never owned a federal trademark registration for the word MATCH alone.

170.     Upon information and belief, Counterclaim Defendant's use of "MATCH®" played a substantial role in the decision of Counterclaim Defendant's customers to purchase its services.

171.     Upon information and belief, Counterclaim Defendant's deception is material and likely to influence purchasing decisions.

172.     As a direct and proximate result of Counterclaim Defendant's wrongful conduct, Counterclaim Defendant has caused Muzmatch irreparable harm and injury.

173.     Counterclaim Defendant's acts of false advertising are knowing and willful.

174.     Unless Counterclaim Defendant is enjoined from its wrongful conduct, Muzmatch will suffer further irreparable injury and harm, for which it has no adequate remedy at law.

175.     Counterclaim Defendant's conduct, as described herein, constitutes false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### SIXTH CAUSE OF ACTION
**(Denial of Registration for Application Serial Nos. 86/608,899; 86/608,903; 86/680,914;**

176.     Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

177.     Upon information and belief, all the goods and services covered by Application Serial Nos. 86/608,899; 86/608,903; 86/680,914; 86/680,923; 86/680,927; and 86/751,974 relate to dating apps that are expressly designed around the touchscreen gesture of moving one's finger across the screen.

178.     Upon information and belief, Application Serial Nos. 86/608,899; 86/608,903; 86/680,914; 86/680,923; 86/680,927; and 86/751,974 share a sufficient nexus to the SWIPE Registration (Registration No. 4,465,926).

179.     When used on or in connection with the applicable goods and services set forth in these applications, the purported trademarks SWIPE LEFT, SWIPE RIGHT, and SWIPE UP are understood by consumers to be generic and/or functional terms for mobile applications.

180.     When used on or in connection with the applicable goods and services set forth in these applications, the purported trademarks SWIPE LEFT and SWIPE RIGHT are understood by consumers to be generic for dating services.

181.     Upon information and belief, the purported trademarks SWIPE LEFT, SWIPE RIGHT, and SWIPE UP are not inherently distinctive and have not become distinctive of Counterclaim Defendant's goods and services.   Counterclaim Defendant has not acquired secondary meaning in the purported marks for its goods and services.

182.     Issuance of registrations in connection with Application Serial Nos. 86/608,899; 86/608,903; 86/680,914; 86/680,923; 86/680,927; and 86/751,974 will unfairly prejudice Muzmatch and other entities in the mobile-application industry from using common terms for touchscreen gestures.

183. Issuance of registrations in connection with Application Serial Nos. 86/608,899; 86/608,903; 86/680,914; 86/680,923; 86/680,927; and 86/751,974 would therefore violate 15 U.S.C. §§ 1052 and 1064 because the marks are generic, or at least merely descriptive, and/or functional of the goods and services covered by the applications.

### SEVENTH CAUSE OF ACTION
**(Denial of Registration for Application Serial Nos. 88/160,784 and 88/160,907)**

184. Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

185. Upon information and belief, Application Serial Nos. 88/160,784 and 88/160,907 cover online-dating services, entertainment services, and online-content services concerning dating apps that are expressly designed around the touchscreen gesture.

186. Upon information and belief, Application Serial Nos. 88/160,784 and 88/160,907 share a sufficient nexus to the SWIPE Registration (Registration No. 4,465,926).

187. Upon information and belief, the term SWIPE in SWIPE SESSIONS refers to the common touchscreen gesture of moving one's finger across the screen.

188. Upon information and belief, the term SESSIONS in SWIPE SESSIONS refers to a period of discussion about the Tinder app.

189. Counterclaim Defendant's combination of the generic term SWIPE with the descriptive term SESSIONS merely describes Counterclaim Defendant's online-dating services and entertainment services and online-content services.

190. Upon information and belief, the purported SWIPE SESSIONS mark is merely descriptive and has not become distinctive of Counterclaim Defendant's online-dating services, entertainment services, and online-content services. Upon information and belief, Counterclaim Defendant has not acquired secondary meaning in the purported mark for such services.

191.    Issuance of registrations in connection with Application Serial Nos. 88/160,784 and 88/160,907 would therefore violate 15 U.S.C. § 1052 because SWIPE SESSIONS is merely descriptive of the services covered by the applications.

**EIGHTH CAUSE OF ACTION**
**(Denial of Registration for Application Serial Nos. 88/511,870; 88/621,842; and 88/621,862)**

192.    Muzmatch incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

193.    Upon information and belief, Application Serial Nos. 88/511,870; 88/621,842; and 88/621862 cover online-dating services, entertainment services, and online-content services concerning dating apps that are expressly designed around the touchscreen gesture.

194.    Upon information and belief, Application Serial Nos. 88/511,870; 88/621,842; and 88/621,862 share a sufficient nexus to the SWIPE Registration (Registration No. 4,465,926).

195.    Upon information and belief, the term SWIPE in SWIPE NIGHT refers to the common touchscreen gesture of moving one's finger across the screen.

196.    Counterclaim Defendant's combination of the generic term SWIPE with the descriptive term NIGHT merely describes Counterclaim Defendant's online-dating services and entertainment services and online-content services.

197.    Upon information and belief, the purported SWIPE NIGHT mark is merely descriptive and has not become distinctive of Counterclaim Defendant's online-dating services, entertainment services, and online-content services.  Upon information and belief, Counterclaim Defendant has not acquired secondary meaning in the purported mark for such services.

198.    Issuance of registrations in connection with Application Serial Nos. 88/511,870; 88/621,842; and 88/621,862 would therefore violate 15 U.S.C. § 1052 because SWIPE NIGHT is merely descriptive of the services covered by the applications.

## DEMAND FOR JURY TRIAL

199. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Muzmatch hereby demands that the Counterclaims be tried by jury.

## PRAYER FOR RELIEF

WHEREFORE, Muzmatch respectfully requests that this Court:

a) deny any and all relief requested by Plaintiff;

b) award Defendant's attorneys' fees and costs incurred in the defense of this action;

c) award Defendant such further relief as the Court deems just and proper;

d) enter judgment against Plaintiff on all of its claims of infringement of U.S. Registration Nos. 4,465,926 and 4,805,047;

e) enter judgment in favor of Defendant and against Plaintiff on all of Defendant's Counterclaims;

f) enter declaratory judgment that the term "match" is not a protectable mark;

g) preliminarily and permanently enjoin Plaintiff's use of the registered symbol ® in connection with the standalone word MATCH;

h) direct the United States Patent and Trademark Office to cancel U.S. Registration Nos. 4,465,926 and 4,805,047 as invalid;

i) issue an injunction prohibiting Plaintiff from obtaining trademark registrations in connection with Application Serial Nos. 86/608,899; 86/608,903; 86/680,914; 86/680,923; 86/680,927; 86/751,974; 88/160,784; 88/160,907; 88/511,870; 88/621,842; and 88/621862 and order Plaintiff to expressly abandon the applications, in whole or in part, under 15 U.S.C. §§ 1052 and 1064; and

j) award Defendant's attorneys' fees and costs of suit in connection with the Counterclaims under the Lanham Act as an exceptional case.

Dated: May 13, 2021                      Respectfully submitted,

**WINSTON & STRAWN LLP**

By:   */s/ Rex A. Mann*
Thomas M. Melsheimer
State Bar No. 13922550
tmelsheimer@winston.com
Rex A. Mann
State Bar No. 24075509
rmann@winston.com
Ahtoosa A. Dale
State Bar No. 24101443
adale@winston.com
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
Facsimile: (214) 453-6400

Irina Lyapis *(pro hac vice forthcoming)*
CA Bar No. 298723
ILyapis@winston.com
101 California Street
San Francisco, CA 94111-5840
Phone: (415) 591-1000
Fax: (415) 591-1400

Michael Tomasulo *(Admitted PHV)*
CA Bar No. 179389
MTomasulo@winston.com
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Phone: (213) 615-1700
Fax: (213) 615-1750

*Attorneys for Defendant/Counterclaimant*
*Muzmatch Limited*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2021, a true and correct copy of the foregoing document was filed via ECF and served on all counsel of record registered to receive service through such means.

*/s/ Rex A. Mann*
Rex A. Mann